**21-14503**

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

*for the*

# 𝔈𝔩𝔢𝔳𝔢𝔫𝔱𝔥 ℭ𝔦𝔯𝔠𝔲𝔦𝔱

———————◆———————

ROBERT PONZIO, ALEX ACUNA, BRIAN MADSEN, VANESSA M. MONTGOMERY, ROBERT MULL, HADIYA NELTHROPE, SAMUEL SALGADO, FREDERICK J. PARKER, On behalf of themselves and all others similarly situated, Interested Parties,

*Interested Parties/Appellants,*

– v. –

EMILY PINON, GARY C. KLEIN, KIM BROWN, JOSHUA FRANKUM, TODD BRYAN, DINEZ WEBSTER,

*Plaintiffs/Appellees,*

EMILY PINON, GARY C. KLEIN, KIM BROWN, JOSHUA FRANKUM, TODD BRYAN, DINEZ WEBSTER,

*Defendants/Appellees,*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
CASE NO: 1:18-cv-03984-MHC
(Hon. Mark Howard Cohen)

## INITIAL BRIEF OF APPELLANTS

MARK J. DEARMAN
ALEXANDER C. COHEN
DOUG S. WILENS
ROBBINS GELLER RUDMAN &
 DOWD, LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
(561) 750-3000

JAMES E. CECCHI
CAROLINE F. BARTLETT
JAMES A. O'BRIEN III
CARELLA BYRNE CECCHI OLSTEIN
 BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

*Counsel for Objectors/Appellants*

CP COUNSEL PRESS • VA – (804) 648-3664

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Cir. R. 28-1(b) and Fed. R. App. P. 26.1, Objectors-Appellants declare that they are individuals and, as such, they are not subsidiaries or affiliates of publicly-owned corporations and there is no publicly-held corporation that owns ten percent or more of any stock issued by the Objectors-Appellants.

Pursuant to Eleventh Circuit Rule 26.1-1 and 26.1-2, counsel for Objectors-Appellants hereby certify, to the best of their knowledge, and reaffirming the disclosures already filed in the official forms, that the following trial judges, attorneys, persons, association of persons, firms, partnerships, and corporations are believed to have an interest in the outcome of this case or appeal:

1. Acuna, Alex (Objector-Class Member/Appellant)

2. Barlett, Taylor C. (Counsel for Plaintiffs/Appellees)

3. Blum, Joseph H. (Counsel for Defendants/Appellees)

4. Brown, Kim (Plaintiff/Appellee)

5. Bryan, Todd (Plaintiff/Appellee)

6. Calamusa, Steven G. (Counsel for Objectors-Class Members/Appellants)

7.  Caplan    Cobb    LLP    (Counsel    for    Objectors-Class Members/Appellants)

8.  Caplan,    Michael    A.    (Counsel    for    Objectors-Class Members/Appellants)

9.  Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. (Counsel for Objectors-Class Members/Appellants)

10. Carr, Scott Jefferson (Counsel for Defendants/Appellees)

11. Cecchi,    James    E.    (Counsel    for    Objectors-Class Members/Appellants)

12. Cohen,    Alexander    C.    (Counsel    for    Objectors-Class Members/Appellants)

13. The Honorable Mark H. Cohen, District Judge, United States District Court for the Northern District of Georgia

14. Daimler AG (Defendant/Appellee)

15. Davidson,    Stuart    A.    (Counsel    for    Objectors-Class Members/Appellants)

16. Dearman,    Mark    J.    (Counsel    for    Objectors-Class Members/Appellants)

17. Devereaux, Stephen B. (Counsel for Defendants/Appellees)

18. Dwoskin, Eric (Counsel for Objectors-Class Members/Appellants)

19. Earley, LaCresha (Plaintiff/Appellee)

20. Frankum, Joshua (Plaintiff/Appellee)

21. Garrison, W. Lewis, Jr. (Counsel for Plaintiffs/Appellees)

22. Gordon    &    Partners,    P.A.    (Counsel    for    Objectors-Class Members/Appellants)

23.   Gordon, Robert E. (Counsel for Objectors-Class Members/Appellants)

24.   Heninger Garrison Davis, LLC (Counsel for Plaintiffs/Appellees)

25.   Jackson & Tucker, PC (Counsel for Plaintiffs/Appellees)

26.   Jackson, K. Stephen (Counsel for Plaintiffs/Appellees)

27.   King & Spalding LLP (Counsel for Defendants/Appellees)

28.   Kitchens, Madison H. (Counsel for Defendants/Appellees)

29.   Klein, Gary C. (Plaintiff/Appellee)

30.   Knapp, Eric Jonathan (Counsel for Defendants/Appellees)

31.   Lynch, Travis E. (Counsel for Plaintiffs/Appellees)

32.   Lyons, John M. (Counsel for Defendants/Appellees)

33.   Madsen, Brian (Objector-Class Member/Appellant)

34.   Mann, Dara D. (Counsel for Defendants/Appellees)

35.   McDonough, James F. (Counsel for Plaintiffs/Appellees)

36.   Mercedes-Benz USA, LLC (Defendant/Appellee)

37.   Miller, Jonathan R. (Counsel for Plaintiffs/Appellees)

38.   Montgomery, Vanessa M. (Objector-Class Member/Appellant)

39.   Mull, Robert (Objector-Class Member/Appellant)

40.   Nelthrope, Hadiya (Objector-Class Member/Appellant)

41.   Parker, Frederick J. (Objector-Class Member/Appellant)

42.   Pearsall, Nancy (Plaintiff/Appellee)

43.   Pinon, Emily (Plaintiff/Appellee)

44.   Ponzio, Robert (Objector-Class Member/Appellant)

45.   Reinke, Adam (Counsel for Defendants/Appellees)

46.   Robbins Geller Rudman & Dowd LLP (Counsel for Objectors-Class Members/Appellants)

47.   Salgado, Samuel (Objector-Class Member/Appellant)

48.   Sawyer, Maxwell H. (Counsel for Objectors-Class Members/Appellants)

49.   Shook, Hardy & Bacon, L.L.P. (Counsel for Defendants/Appellees)

50.   Squire Patton Boggs (US) LLP (Counsel for Defendants/Appellees)

51.   Sullivan, Thomas J. (Counsel for Defendants/Appellees)

52.   Waddell, T. Brandon (Counsel for Objectors-Class Members/Appellants)

53.   Wilens, Douglas (Counsel for Objectors-Class Members/Appellants)

54.   Williams, Daniel G. (Counsel for Objectors-Class Members/Appellants)

55.   Yoshino, Troy Masami (Counsel for Defendants/Appellees)

## STATEMENT REGARDING ORAL ARGUMENT

In this appeal, the Court is asked to resolve important issues regarding the approval of a class action settlement, including (1) whether the United States District Court for the Northern District of Georgia ("district court") abused its discretion by granting final approval of the settlement notwithstanding that 80% of the class is excluded from any relief and required to release their claims for no consideration; (2) whether the district court abused its discretion in applying the relevant class action settlement approval factors; and (3) whether the district court abused its discretion by failing to apply heightened scrutiny to a settlement despite palpable signs of collusion, a reverse auction, and a coupon settlement.

Oral argument will be beneficial to facilitate the Court's understanding of these issues. Accordingly, Objectors-Appellants respectfully request oral argument.

i

## TABLE OF CONTENTS

Title                                                          Page(s)

TABLE OF AUTHORITIES ........................................................................ v

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ..................................................................... 1

STATEMENT REGARDING ORAL ARGUMENT ................................... i

SUBJECT MATTER AND APPELLATE JURISDICTION ................... xi

INTRODUCTION ....................................................................................... 1

STATEMENT OF ISSUES......................................................................... 2

STATEMENT OF THE CASE ................................................................... 2

I.     Nature of the Case ......................................................................... 2

II.    Course of the Proceedings and Dispositions Below ...................... 5

III.   Statement of Facts ......................................................................... 8

       A. The Mercedes Red Paint Defect ............................................... 8

       B. Pinon Plaintiffs' Four Complaints and Damages Claim............ 8

       C. Communications Between Pinon Counsel and Ponzio
          Counsel .................................................................................... 9

       D. The Rule 23(g) Applications for Appointment as Interim
          Class Counsel and Class Counsels' Negotiations.................... 10

       E. The Pinon Settlement Negotiations......................................... 12

       F. The Settlement Agreement ..................................................... 13

       G. Pinon Plaintiffs' Motion for Preliminary Approval of the
          Settlement .............................................................................. 16

       H. Pinon Counsel's Motion for Attorneys' Fees........................... 17

I.   Ponzio Objectors' Objections to the Settlement and Pinon Plaintiffs' Motion for Final Approval ........................................ 18

J.   The August 30, 2021 Fairness Hearing .................................... 20

K.  The Supplementary Post-Fairness Hearing Filings ................ 22

L.  The District Court's Final Approval Order ............................. 24

STANDARD OF REVIEW ................................................................... 276

SUMMARY OF ARGUMENT ................................................................ 27

ARGUMENT ........................................................................................ 28

I.   THE SETTLEMENT IS PER SE UNFAIR, INADEQUATE AND UNREASONABLE BECAUSE IT FAILS TO PROVIDE BENEFITS TO 80% OF THE CLASS ......................... 28

   A.  Settlement in Which Most Class Members Are Ineligible to Recover Any Relief But Must Release Their Claims is Per Se Unfair Under Settled Law ............................................ 28

   B.  The Settlement Requires a Release from All Class Members But 80% of the Class is Ineligible for Recovery ....... 30

II.  NUMEROUS RED FLAGS AND LEGAL ERRORS EXPLAIN HOW SUCH A DEFECTIVE SETTLEMENT WAS IMPROPERLY REACHED AND APPROVED .................... 37

   A.  The District Court Failed to Properly Address the *Bennett* Factors and Rule 23(e)(2) Criteria ........................................... 37

      1.  The District Court Failed to Adequately Address Objections as to the *Bennett* Factors ............................... 37

      2.  The District Court's Analysis Contains No Mention, Let Alone Analysis, of the Range of Possible Recovery or the Value of the Settlement .................................................... 38

iii

3. The District Court Improperly Conflated the First and Fourth *Bennett* Factors, and Provides No Careful Scrutiny of These Factors and the *Sixth* Bennett Factor 41

4. The District Court Failed to Properly Address the Remaining Rule 23(e)(2) Factors ....................................... 44

   a. Class Members Are Not Treated Equitably Relative to Each Other ................................................ 44

   b. The Terms of the Proposed Attorneys' Fee ................ 45

B. The Settlement Has the Hallmarks of Inadequacy of Counsel ........................................................................................ 46

C. The Class Representatives Had a Conflict of Interest and Could Not Adequately Represent the Class ............................ 57

D. The Settlement is a Disfavored "Coupon" Settlement That Required, But Did Not Receive, Heightened Scrutiny .......... 62

III. THIS FUNDAMENTALLY UNFAIR SETTLEMENT CANNOT BE FINE-TUNED BUT SHOULD BE OVERTURNED IN ITS ENTIRETY ............................................. 64

CONCLUSION ........................................................................................ 66

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Trans Union, LLC,*
  243 F.R.D. 377 (C.D. Cal. 2007) ........................................................ 29

*Allapattah Servs., Inc. v. Exxon Corp.,*
  454 F. Supp. 2d 1185 (S.D. Fla. 2006)................................................ 12

*Amchem Prod., Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................ 50, 61, 65

*Amin v. Mercedes-Benz USA, LLC,*
  No. 17-CV-1701-AT, 2020 WL 5510730 (N.D. Ga. Sept. 11,
  2020) ........................................................................................ *passim*

*Bennett v. Behring Corp.,*
  737 F.2d 982 (11th Cir. 1984)........................................................ *passim*

*In re Bluetooth Headset Prods. Liab. Litig.,*
  654 F.3d 935 (9th Cir. 2011).............................................................. 46

*Borup v. CJS Sols. Grp.,*
  LLC, No. CV 18-1647, 2019 WL 2137369 (D. Minn. May
  16, 2019) .......................................................................................... 56

*Carriuolo v. Gen. Motors Co.,*
  823 F.3d 977 (11th Cir. 2016).............................................................. 35

*Charron v. Wiener,*
  731 F.3d 241 (2d Cir. 2013) ........................................................ 34, 50

*In re Corrugated Container Antitrust Litig.,*
  643 F.2d 195 (5th Cir. 1981).................................................... 40, 43, 44

*Cotton v. Hinton,*
  559 F.2d 1326 (5th Cir. 1977)...................................................... 39, 40

v

*Cunha v. Chico Produce, Inc.*,
 No. 17-CV-00597-JST, 2019 WL 12875982 (N.D. Cal. June
 25, 2019) ................................................................................ 45

*Day v. Persels & Assocs., LLC*,
 729 F.3d 1309 (11th Cir. 2013) .......................................... 26

*Devlin v. Scardelletti*,
 536 U.S. 1 (2002) ...................................................................... x

*Dewey v. Volkswagen Aktiengesellschafte*,
 681 F.3d 170 (3d Cir. 2012) .............................. 48, 58, 59, 61

*In re Easysaver Rewards Litig.*,
 906 F.3d 747 (9th Cir. 2018) ............................................... 62

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
 999 F.3d 1247 (11th Cir. 2021) .................................... *passim*

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
 No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar.
 17, 2020), *aff'd,* 999 F.3d 1247 (11th Cir.), *cert. denied*,
 142 S. Ct. 431 (2021) ............................................................. 35

*Faught v. Am. Home Shield Corp.*,
 668 F.3d 1233 (11th Cir. 2011) .......................................... 26

*Ferrington v. McAfee, Inc.*,
 No. 10-CV-01455-LHK, 2012 WL 1156399 (N.D. Cal. Apr.
 6, 2012) ................................................................................... 29

*Figueroa v. Sharper Image Corp.*,
 517 F. Supp. 2d 1292 (S.D. Fla. 2007) ................. 39, 55, 62, 64

*Foos v. Ann, Inc.*,
 No. 11cv2794 L MDD, 2013 WL 5352969 (S.D. Cal. Sept.
 24, 2013) ................................................................................. 62

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod.*
 *Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) .......................... 46, 59

*Holmes v. Cont'l Can Co.*,
    706 F.2d 1144 (11th Cir. 1983).....................................................*passim*

*Johnson v. NPAS Sols., LLC*,
    975 F.3d 1244 (11th Cir. 2020).....................................................*passim*

*Juris v. Inamed Corp.*,
    685 F.3d 1294 (11th Cir. 2012)............................................... 65

*In re Literary Works in Elec. Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011) ................................................... 48, 50, 59

*Litty v. Merrill Lynch & Co.*,
    No. CV 14-0425 PA, 2015 WL 4698475 (C.D. Cal. Apr. 27,
    2015) ................................................................................... 56

*In re: Lumber Liquidators Chinese-Manufactured Flooring*
    *Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    952 F.3d 471 (4th Cir. 2020).................................................. 64

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
    2018 WL 1617696 (D.N.J. Apr. 3, 2018) ............................. 34

*Martin v. Cargill, Inc.*,
    295 F.R.D. 380 (D. Minn. 2013)............................................ 56

*McKinney-Drobnis v. Oreshack*,
    16 F.4th 594 (9th Cir. 2021) ................................................. 52, 63

*Med. & Chiropractic Clinic, Inc. v. Oppenheim*,
    981 F.3d 983 (11th Cir. 2020)............................................... 27, 48

*Mirfasihi v. Fleet Mortg. Corp.*,
    356 F.3d 781 (7th Cir. 2004)................................................. 29

*Mirfasihi v. Fleet Mortg. Corp.*,
    450 F.3d 745 (7th Cir. 2006)................................................. 29, 31

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003)................................................. 29, 48

vii

*Nguyen v. Nissan N. Am., Inc.*,
    932 F.3d 811 (9th Cir. 2019)............................................................ 35

*In re Nissan Radiator/Transmission Cooler Litigation.*,
    No. 10 CV 7493 VB, 2013 WL 4080948 (S.D.N.Y. May 30,
    2013) ................................................................................................ 34

*In re Oil Spill by Oil Rig Deepwater Horizon*,
    295 F.R.D. 112 (E.D. La. 2013)....................................................... 34

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)................................................................... 48, 65

*Parker v. Time Warner Entm't Co.*,
    239 F.R.D. 318 (E.D.N.Y. 2007) ..................................................... 29

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014)............................................................ 36

*Petruzzi's, Inc. v. Darling-Delaware Co.*,
    880 F. Supp. 292 (M.D. Pa. 1995)................................................ 1, 30

*Piambino v. Bailey*,
    757 F.2d 1112 (11th Cir. 1985)........................................................ 47

*Ponzio. Olmstead v. Humana, Inc.*,
    154 F. App'x 800 (11th Cir. 2005) ..................................................... 5

*Ponzio v. Mercedes-Benz, USA, LLC, & Daimler AG*,
    No. 18-civ-12544 (D.N.J. filed Aug. 8, 2018)............................. *passim*

*Ponzio v. Mercedes-Benz USA, LLC*,
    447 F. Supp. 3d 194 (D.N.J. 2020) .................................................. 11

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002)....................................................... 51, 54

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
    825 F.3d 299 (6th Cir. 2016)...................................................... 40, 42

*Sharp Farms v. Speaks*,
    917 F.3d 276 (4th Cir. 2019).................................................. 55, 57, 61

*Smith v. Costa Del Mar, Inc.*,
  2021 WL 4295282 (M.D. Fla. Sept. 21, 2021) .................................... 64

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ............................................................ 64

*In re Syngenta AG Mir162 Corn Litig.*,
  No. 2:14-MD-02591-JWL-JPO, 2018 WL 7254709 (D. Kan.
  Nov. 21, 2018)................................................................................. 12

*U.S. Parole Comm'n v. Geraghty*,
  445 U.S. 388 (1980) .......................................................................... 65

*Wilson v. DirectBuy, Inc.*,
  No. 3:09-CV-590JCH, 2011 WL 2050537 (D. Conn. May
  16, 2011) ................................................................................... 40, 42

**Statutes**

28 U.S.C. § 1291............................................................................... x

28 U.S.C. § 1331............................................................................... x

28 U.S.C. § 1332(d) ........................................................................... x

Class Action Fairness Act, 28 U.S.C. § 1712.................................... 62, 63

**Rules**

11th Cir. R. 28-1(b) ........................................................................... 1

11th Cir. R. 26.1-1 ............................................................................. 1

11th Cir. R. 26.1-2 ............................................................................. 1

Fed. R. App. P. 26.1 .......................................................................... 1

Fed. R. Civ. P. 23 ................................................................. 1, 4, 17, 19

Fed. R. Civ. P. 23(a)........................................................................... x

Fed. R. Civ. P. 23(a)(4) ................................................................. 64, 65

ix

Fed. R. Civ. P. 23(b)............................................................... 50

Fed. R. Civ. P. 23(b)(3) ............................................................ x

Fed. R. Civ. P. 23(e) ....................................................... 1, 2, 50

Fed. R. Civ. P. 23(e)(2)................................................... *passim*

Fed. R. Civ. P. 23(g).......................................................... *passim*

Fed. R. Civ. P. 23(g)(4) ......................................................... 46

Fed. R. Civ. P. 24(a)............................................................. 51

## Other Authorities

Jonathan R. Macey & Geoffrey P. Miller, *Judicial Review of
Class Action Settlements* ........................................................ 55

4 William B. Rubenstein, Newberg on Class Actions (5th
ed. 2021) ............................................................................. 39

S. Rep. No. 109-14, 2005 WL 627977 (2005),
*reprinted in* 2005 U.S.C.C.A.N. 3 .......................................... 63

## SUBJECT MATTER AND APPELLATE JURISDICTION

This action was commenced as a Rule 23(b)(3), Fed. R. Civ. P., putative class action in the district court. The district court had subject-matter jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1332(d). This Court has appellate jurisdiction because this is an appeal following entry of a final judgment. 28 U.S.C. § 1291.

The district court entered its Order Granting Final Approval of Settlement, Certifying Settlement Class And Awarding Attorney's Fees, Expenses And Service Awards and its Final Order and Judgment on November 30, 2021. [D.E.125,126]. Objectors-Appellants filed a timely notice of appeal on December 28, 2021. [D.E.127]. As class members who objected to the final approval of a class action settlement, Objectors-Appellants have standing to appeal without intervening as class members who are bound by the judgment. *See Devlin v. Scardelletti*, 536 U.S. 1 (2002).

## INTRODUCTION

In 1995, an astute federal district judge stated: "Independent research has not disclosed a case that sanctions a settlement that provides direct economic benefit to 50% of the class in exchange for release from 100% of the class." *Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 299 (M.D. Pa. 1995). That state of the law remained until November 30, 2021, when the court below rendered an unprecedented decision approving a settlement that releases the claims of 100% of the class *even though a whopping 80% are entitled to no benefits under the settlement.* A settlement that deprives 80% of class members of any benefits yet mandates the release of their claims is indefensible. It violates Fed. R. Civ. P. 23 and fundamental fairness.

The district court never confronted the precise contours of this unfair settlement—which benefits class counsel, the class representatives, and the defendants, but sells out the vast majority of the class. Far from ensuring that the class was protected, the district court failed to properly apply the *Bennett* and Rule 23(e) factors; failed to address the inadequacy of class counsel and the class representatives (who stand to benefit from the settlement, unlike most of those they

1

represent); and failed to act in the face of clear signs of collusion between class counsel and defendants. This Court should overturn the settlement.

## STATEMENT OF ISSUES

1.    Did the district court abuse its discretion in granting final approval of the class action settlement where 80% of the class members are required to release their claims in exchange for no relief?

2.    Did the district court abuse its discretion in failing to properly assess the Rule 23(e)(2) and *Bennett* factors?

3.    Did the district court abuse its discretion in approving a settlement brokered by class representatives and class counsel who did not fairly and adequately represent the class?

4.    Did the district court abuse its discretion in approving a class settlement where there was indicia of collusion, a reverse auction, and a coupon settlement?

## STATEMENT OF THE CASE

### I.    Nature of the Case

This appeal involves the district court's approval of a nationwide settlement of a class action alleging that Mercedes-Benz, USA, LLC

2

("MBUSA"), and Daimler AG ("Daimler") (collectively, "Defendants"), deceptively sold thousands of vehicles that had an inherent paint defect. [D.E.125]. This case was filed two weeks after another class action raising similar claims against the same Defendants for the same defect was filed in the United States District Court for the District of New Jersey. *Ponzio v. Mercedes-Benz, USA, LLC, & Daimler AG*, No. 18-civ-12544, D.E.1 (D.N.J. filed Aug. 8, 2018) ("*Ponzio*"). Counsel in the first-filed *Ponzio* case—who represent the objectors here ("*Ponzio* objectors")—were first appointed interim class counsel under Rule 23(g) to represent plaintiffs and class members in *Ponzio*. Five weeks later, the district court in *Pinon* granted *Pinon* counsel's application for appointment as interim class counsel, but the scope of its order (based on representations made by *Pinon* counsel) included subclasses for which *Ponzio* counsel had already been appointed to represent as interim class counsel. Given the overlapping nature of the two cases, and upon *Pinon* counsel's promise that they would "happily coordinate" with *Ponzio* counsel, the district court's order directed that *Pinon* counsel "coordinate" with *Ponzio* counsel. That never happened.

3

Rather, the *Pinon* parties kept *Ponzio* counsel in the dark about covert negotiations that ultimately resulted in a settlement that left 80% of the class members with zero relief, rewarded most of the *Pinon* class representatives with eligibility for  the maximum amount of the settlement benefits, and awarded *Pinon* counsel attorneys' fees of $4,750,000.[1] Although the 2018 amendments to Rule 23 require a robust preliminary approval determination, the district court granted preliminary approval based on no evidence other than *Pinon* counsel's conclusory representations that the settlement was fair and reasonable.

*Ponzio* plaintiffs filed a joint objection to final approval of the settlement on various grounds, including that the settlement was unfair because it deprived 80% of the class members of any relief yet required them to relinquish their claims for no consideration, and because the *Pinon* class representatives and *Pinon* counsel were inadequate representatives due to fundamental conflicts of interest.  The district court nonetheless granted final approval of the settlement without

---

[1] The settlement also provided for incentive payments of $5,000 each, although such payments are not permitted in this Circuit.  *See Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020) (rehearing *en banc* pending).

relying on any evidence (other than a declaration of *Pinon* counsel) to support the grossly disparate allocation of benefits that favors the class representatives and disfavors the majority of class members. The court's approval order held, in a single sentence, that the settlement was not inadequate merely because "some" class members were excluded from relief. But the court's order fails to substantively wrestle with the central question of how the release of the claims of 80% of the class members for no consideration is fair and adequate.

## II.    Course of the Proceedings and Dispositions Below

Counsel in *Ponzio* filed the first class action complaint challenging a latent paint defect in the cars sold by MBUSA and Daimler, on August 8, 2018, in the District of New Jersey. *Ponzio*, D.E.1.[2] Two weeks later, *Pinon* Plaintiffs filed a class action complaint raising similar claims against the same Defendants in the North District of Georgia. D.E.1.

*Ponzio* counsel was also the first to seek and obtain interim class counsel appointment under Rule 23(g). [D.E.48-1/3; D.E.72-1/6-7; *Ponzio*, D.E.53]. *Pinon* counsel subsequently sought and obtained an

---

[2] This Court may take judicial notice of documents filed in *Ponzio*. *Olmstead v. Humana, Inc.*, 154 F. App'x 800, 803 n.3 (11th Cir. 2005).

appointment as interim lead class counsel in *Pinon* and appointment of the *Pinon* plaintiffs as class representatives. [D.E.48; D.E.49].

On November 9, 2020, the *Pinon* parties agreed upon a settlement in a mediation. [D.E.70-3/2-3]. Despite their promise to cooperate with *Ponzio* class counsel [D.E.48/16/22], class counsel in *Pinon* did not even inform *Ponzio* counsel that negotiations were underway [D.E.81-3/3; D.E.121-1/11/13]. On December 21, 2020, *Pinon* class representatives filed a motion for preliminary approval of a nationwide class action settlement [D.E.70], and Defendants filed a motion to stay in *Ponzio. Ponzio* [D.E.119]. On March 29, 2021, the district court denied *Ponzio* plaintiffs' motion to intervene [D.E.89], and granted *Pinon* plaintiffs' motion for preliminary approval and certification of a proposed class action settlement for a nationwide class [D.E.90, 91]. The district court's order enjoined the *Ponzio* case. [D.E.90/14].

On April 28, 2021, *Pinon* counsel filed a motion for a $4,750,000 attorneys' fee, reimbursement of $75,671.38 for expenses, and $5,000 service awards for each of the six named plaintiffs. [D.E.92]. Notice of the class action was mailed to 168,996 putative Class Members on May 28, 2021. [D.E.100-1/4]. The record shows that the settlement

6

administrator received only 1,532 claim forms seeking reimbursements. [D.E.100-1/9].

Objections to final approval of the settlement were filed by eleven class members, three by individual objectors [D.E.97-99], and a single, joint objection by eight *Ponzio* plaintiffs [D.E.96], the latter of which was supported by declarations from two damages experts and two professors of law.  [D.E.96-10; D.E.96-11; D.E.96-12; D.E.96-13].  On July 30, 2021, *Pinon* plaintiffs filed a motion for final approval of the settlement. [D.E.100].

The district court held a fairness hearing on August 30, 2021.  [D.E. 119].  On November 30, 2021, the district court entered an order and granting final approval of the class action settlement, confirming appointment of *Pinon* interim lead class counsel as "Class Counsel" and appointment of the class representatives, awarding attorney's fees of $4,750,000, reimbursement of expenses of $75,671.38, and  incentive payments of $5,000 per class representative   [D.E.125, 126].   On December 28, 2021, the *Ponzio* objectors filed a timely notice of appeal.

## III.    Statement of Facts

### A.    The Mercedes Red Paint Defect

Mercedes sold and leased to consumers vehicles painted with "590 Mars Red paint." [D.E.55/2/32-35]. 590 Mars Red is unique because it gives the car a luxurious look that other colors cannot replicate. [*Id.*]. The paint, however, was inherently defective: it had a propensity to bubble, flake, peel, and blister. [*Id.*]. Many Mercedes dealerships acknowledged there was an issue with the paint but did not provide reasonable relief. Several class representatives were informed of the cost to repaint their vehicles: one was told by a Mercedes dealer that it would cost $11,300, [D.E.55/30]; another received a $7,000 estimate [D.E.55/11]; and another received a $2,200 estimate [D.E.55/31].

The class was comprised of over 72,500 vehicles ("Subject Vehicles") and encompassed both current and former owners and lessees who purchased or leased a Subject Vehicle. [D.E.70-5/7-8; D.E./100-1/4].

### B.    *Pinon* Plaintiffs' Four Complaints and Damages Claim

Despite the already-pending *Ponzio* action, *Pinon* counsel filed a complaint on August 21, 2018, on behalf of a single plaintiff. [D.E.1]. Three subsequent complaints expanded the *Pinon* claims with each

filing, and copied allegations from the *Ponzio* complaint.  [D.E.7, D.E.16 D.E.55;  D.E.72-1/2-3; D.E.76-3/8/13].

The Third Amended Complaint ("TAC") alleged that *Pinon* plaintiffs and the putative class suffered economic harm by purchasing Class Vehicles that contained an inherent defect.  [D.E.55/63].  *Pinon* plaintiffs alleged that they paid a premium for their vehicles as a result of Mercedes' representations regarding the brand, quality, durability, and value of the Subject Vehicles, did not receive the benefit of their bargain, and suffered diminution in value and economic harm. [D.E.55/63-65].

### C.   Communications Between *Pinon* Counsel and *Ponzio* Counsel

On January 15, 2019, *Pinon* counsel contacted *Ponzio* counsel in an effort to persuade *Ponzio* counsel to dismiss *Ponzio* and refile it in the district court below.  [D.E.121-1/11-12; D.E.72-1/3; D.E.81-1/13].  That request coincided with Defendants' then-pending and ultimately unsuccessful motions to transfer the *Ponzio* case to the district court. [*Ponzio*, D.E. 22-1, 37].  *Ponzio* counsel, who had filed the first case raising the red paint defect, declined *Pinon* counsel's invitation. [D.E.121-1/11-12; D.E. 81-1/13].

9

Unbeknownst to *Ponzio* counsel, the next month, February 2020, *Pinon* counsel broached settlement unsuccessfully with Defendants, two months *before Pinon* counsel was appointed interim class counsel. [D.E.70-5/9; D.E.121-1/12].

### D.    The Rule 23(g) Applications for Appointment as Interim Class Counsel and Class Counsels' Negotiations

On March 23, 2020, two weeks after *Ponzio* counsel was appointed interim class counsel in *Ponzio*, *Pinon* counsel filed a Rule 23(g) application in the district court.  [D.E.48-1].  *Pinon* counsel stressed that its appointment as interim class counsel was urgent due to *Ponzio* counsel's communications and their purported failure to coordinate with *Ponzio* counsel.  [D.E.48-1/2/4/13].[3]  But *Pinon* counsel's focus was on attempting to persuade *Ponzio* counsel to dismiss *Ponzio* and refile it in the district court below.  [D.E.121-1/11-12].

*Pinon* counsel's Rule 23(g) application also sought representation of putative state subclasses for which it told the court "the *Ponzio* Action lacks standing or representation."  [D.E.48-1/3/11-12].  Yet, in another

---

[3] *Pinon* counsel also represented that *Ponzio* "was administratively terminated in May of 2019" [D.E.48-1/2/6-7], but that was not true, either.  [*Ponzio*, D.E.44].

10

part of *Pinon* counsel's Rule 23(g) application, *Pinon* counsel requested appointment as interim class counsel for two consumer protection state subclasses (Florida and North Carolina) that were already represented by *Ponzio* counsel. [D.E.48-1/5/6/11-12]. *Pinon* counsel also stated in their Rule 23(g) application that the *Ponzio* court had dismissed all of nationwide claims in *Ponzio*. [D.E.48-1/11]. In fact, the *Ponzio* court had sustained two nationwide fraudulent concealment claims under New Jersey and New York law. *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 223 (D.N.J. 2020).

*Pinon* counsel's Rule 23(g) application further professed that it "will stay dedicated . . . to organizing and building relationships," and "will happily coordinate efforts with," *Ponzi*o counsel. [D.E.48-1/4/16]. In its order granting the Rule 23(g) application, the court directed that *Pinon* counsel "shall be charged with coordinating with" *Ponzi*o counsel. [D.E.49/5]. That did not happen.

On April 16, 2020, *Ponzio* counsel reached out to *Pinon* counsel to discuss the two lawsuits. [D.E.81-3/2/10]. *Pinon* counsel responded on April 27, 2020, expressing interest in coordinating with *Ponzio* counsel on discovery, and requesting a proposal on "fee sharing." [D.E.81-3/2-

3/7]. In response, *Ponzio* counsel proposed: (1) an initial fee sharing agreement; (2) that *Pinon* counsel be added as a co-lead in *Ponzio*; (3) that "the NJ leadership group would be responsible for the overall management and direction of both litigations"; and (4) that *Pinon* dismiss its case and add the *Pinon* plaintiffs to an amended *Ponzio* complaint. [D.E.81-3/7].[4] *Ponzio* counsel requested *Pinon* counsel's input, but *Pinon* counsel never responded. [D.E.81-3/3/7].

### E.    The *Pinon* Settlement Negotiations

Several months later, in September 2020, after suffering significant losses on discovery-related motions in *Ponzio* [*Ponzio*, D.E.71-72; D.E.75-79; D.E.81-82], Defendants contacted *Pinon* counsel about settlement [D.E.77/12]. Unbeknownst to *Ponzio* counsel, a mediation session between Defendants and *Pinon* counsel took place on November 9, 2020, before the Honorable James F. Holderman, U.S.D.J. (ret.). [D.E.70-3/2-3; D.E.81-3/4; D.E.121-1/2/10-11/13]. The *Pinon* parties reached an agreement in principle on a nationwide settlement; a

---

[4] Such fee sharing agreements are common in class actions, and their terms and fee allocations are subject to judicial approval. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1224-27 (S.D. Fla. 2006); *In re Syngenta AG Mir162 Corn Litig.*, No. 2:14-MD-02591-JWL-JPO, 2018 WL 7254709, at *28 (D. Kan. Nov. 21, 2018).

second mediation on November 12, 2020, resulted in an agreement on attorneys' fees for $4,750,000.  [D.E.70-3/2-3; D.E.92/14].

### F.    The Settlement Agreement

The settlement agreed to by the *Pinon* parties failed to provide any relief for the majority (80%) of class members.  [D.E.121-2/4/6/9].  While the settlement class is defined to include all current and former owners and lessees of the Subject Vehicles [D.E.70-1/9], excluded from any benefits are former owners and lessees of Subject Vehicles who did not previously pay for a paint repair [D.E.121-2/6], and class members whose Subject Vehicles exceed 15 years in service or 150,000 miles [D.E.121-2/8].[5]  *Pinon* plaintiffs, by contrast, are eligible under the settlement for the maximum relief available.  [D.E.55/8/16/23/24/27/31; D.E.70-1/13/15].

The settlement provides reimbursement for past repairs and discounts for future repairs. [D.E.70-1/8/14-15/17/34].  Future repainting must be performed by Authorized Mercedes Service Centers.  [D.E.70-

_____

[5]  Out of 168,817 class members, 99,702 are ineligible for future repainting because they are former owners and lessees who no longer possess their Subject Vehicles, and another 35,397 are ineligible due to the age and mileage restrictions of the sliding scale.  [D.E.121-2/7].  Combined, 135,099 out of 168,817 class members (80.03%) are left behind with nothing.  [D.E.121-2/9].

13

1/5/8/14-17/34]. The settlement also releases all claims by class members that were made or could have been made in the case. [D.E.70-1/20-23]. Finally, the Settlement entitles *Pinon* counsel to request, with no objection from Defendants, attorney fees of $4,750,000 and expenses of up to $100,000, and it requests incentive awards of $5,000 for each of the six *Pinon* plaintiffs. [D.E.70-1/17-18].

The relief available to the 20% of class members who are potentially eligible is as follows. As to past repairs, for Subject Vehicles that received a qualified past repair less than seven years and less than 105,000 miles from the vehicle's in-service date, class members would receive 100% reimbursement of the repair cost. [D.E.70-1/12-13]. For Subject Vehicles that received a qualified past repair more than seven years or more than 105,000 miles from the vehicle's in-service date, but fewer than ten years and fewer than 150,000 miles from the vehicle's in-service date, class members would receive 50% reimbursement of the repair cost. [*Id*.] For those that received a qualified past repair more than 10 years but fewer than fifteen years and 150,000 miles from the in-service date, Class members would receive 25% reimbursement of the repair cost. [D.E.70-1/13-14]. Class members that paid for a past repair more than fifteen

14

years or 150,000 miles from their Subject Vehicle's in-service date receive nothing, even though they are part of the class and must release their claims.  [*Id*.]  Reimbursement for qualifying repairs by independent repair shops cannot exceed 10% of what it would have cost if performed by an Authorized Mercedes Service Center.   [*Id*.].

As to future repainting, the same sliding scale applies, except that class members would receive discounts on future repainting, rather than cash reimbursements for past repainting.  [D.E.70-1/14-17].  The one difference is that for Subject Vehicles that need repainting more than 15 years or 150,000 miles from the in-service date, the class member gets nothing unless evidence is presented that they presented their vehicle for repair to an Authorized Mercedes Service Center before the 15 year/150,000 mile limit was reached but were denied coverage.  [D.E.70-1/15-16].

Although the settlement covers all former owners and lessees, the settlement provides no relief to these class members unless they previously had their Subject Vehicles repainted before selling it or returning it to the lessor.  [D.E.121-2/6].

15

On December 29, 2020, the *Ponzio* court urged Defendants to re-open settlement negotiations to include *Ponzio* plaintiffs and to address their objections.  [D.E.72-1/9; D.E.81-3/4-5].  Defendants declined the request.  [*Id.*].

### G.  *Pinon* Plaintiffs' Motion for Preliminary Approval of the Settlement

*Pinon* Plaintiffs' motion for preliminary approval of the settlement omitted relevant information, in contravention of the 2018 amendments to Rule 23(e)(2).  [D.E.70].  Citing standards repudiated by the 2018 amendments, *Pinon* counsel falsely told the district court that their burden at the preliminary approval stage was "low." [D.E.70/31-32].  The motion falsely represented that the settlement "provides direct benefits to current and former owners and lessees of over 72,500 Subject Vehicles . . . which will likely include over one hundred thousand individuals." [D.E.70/9/51].  A declaration of the proposed settlement administrator also stated that class notice would be mailed to "approximately 100,000 potential Class Members."  [D.E.70-7/8].

Left unaddressed, however, was important, relevant information, including that the settlement excludes from any benefits 80% of the class members, whose claims are released without any compensation; and they

16

failed to demonstrate the range of potential recovery of the claims and failed to offer accurate assessments of the value of the settlement. The motion also failed to acknowledge the many thousands of class members who were ineligible to recover even a penny. Ineligible class members included former owners and lessees who had not previously paid to repaint their Subject Vehicles—a substantial portion of the class ultimately amounting to approximately 100,000 of the 168,817 Class Members. [D.E.121-2/6-7]. The only evidence concerning the settlement value and range of possible recovery was a declaration from *Pinon*'s counsel, which did not provide any such factual information. [D.E.70-5].

Despite its shortcomings, the district court granted the motion for preliminary approval. [D.E.90]. The court's order largely embodied the proposed order filed by the *Pinon* plaintiffs [D.E.70-8], and provided no analysis of the relevant Rule 23 settlement approval factors, as required by the 2018 amendments to Rule 23. [D.E.90/4-5]. It also enjoined the *Ponzio* case, as *Pinon* counsel had requested. [D.E.90/14].

## H.   *Pinon* Counsel's Motion for Attorneys' Fees

In support of their motion for attorney fees, *Pinon* counsel included a declaration from Lee Bowron, an actuary, who estimated the value of

17

the relief provided to class members at between $32.12M and $56.01M, a number that is wildly inflated. [D.E.92-2/4]. *Pinon* counsel calculated its $4,750,000 fee request as amounting to 12.85% of a constructive fund. The fee motion requested service awards of $5,000 for each of the six class representatives. [D.E.92/14-15/28-30].

## I.  *Ponzio* Objectors' Objections to the Settlement and *Pinon* Plaintiffs' Motion for Final Approval

*Ponzio* objectors filed a joint objection, which highlighted that the settlement provided no relief for the vast majority of the class members. [D.E.96; D.E.96-10/24/29/31-40/46/47]. The objection emphasized that former owners and former lessees who did not previously pay out of pocket for a repair were excluded from relief and forced to release their claims for no consideration; owners of model year 2014 or older vehicles, which consisted of 92% of the subject vehicles, would be eligible for at most a 50% discount coupon on a paint repair; and class members who drove more than average would be ineligible benefits. [D.E.96/23-36].

18

The objection also argued that the settlement failed to satisfy the Rule 23(e)(2) and *Bennett* factors[6]; that the disproportionate award of benefits to the *Pinon* class representatives—and the millions in attorneys' fees sought in the face of a weak settlement—rendered the class representatives and class counsel inadequate; that the settlement was a troublesome "coupon" settlement that required class members to pay money to a Mercedes affiliate in order to receive a discount; that the exclusion of *Ponzio* counsel from negotiations raised concerns about whether the settlement was negotiated at arm's length; and that excluding *Ponzio* counsel from the settlement negotiations bore the hallmarks of collusion and a reverse auction. [D.E.96-10/23-25/37-64]. *Ponzio* objectors submitted declarations from two class action experts, Professors Robert H. Klonoff and Brian T. Fitzpatrick [D.E.96-10; D.E.96-11], as well as declarations from two experts in classwide damages, Richard J. Eichmann and Garrett Glasgow, PhD, who addressed the relief provided by the settlement [D.E.96-12; D.E. 96:13].

---

[6]  *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (establishing six-factor balancing test to determine if proposed class action settlement is fair, reasonable, and adequate under Rule 23).

19

*Pinon* plaintiffs filed a motion for final approval of the settlement on July 30, 2021.  D.E.100.  Other than the settlement administrator's declaration, no evidence was included.

## J.    The August 30, 2021 Fairness Hearing

At the fairness hearing, *Pinon* plaintiffs presented no evidence or live testimony from witnesses, but offered only oral argument.  *Ponzio* counsel argued that the majority of class members are being forced to give up their claims in exchange for no relief, including "former vehicle owners, former lessees, those whose vehicles are more than 15 years old, and those whose vehicles have more than 150,000 miles on them." [D.E.116/40-42/44/101-02].    The district court did not engage the substance of those arguments, calling them mere "puffing."  [D.E.116/27-28/39-40/51/135].

*Ponzio* counsel also pointed out that *Pinon* plaintiffs had failed to provide the court with accurate estimates of the settlement value. [D.E.116/68].  Whereas the *Pinon* plaintiffs had estimated the value of the future repairs component at $37.3 million to $55.9 million, the *Ponzio* objectors estimated that value at $5.3 to $8 million.  [D.E.116/68-70/79]. And, whereas *Pinon* plaintiffs estimated the value of the past repair

component at $10.5 million, *Ponzio* objectors proved—based on claims data from the settlement administrator—that value was only about $3.9 million—substantially *less* than even the fees awarded to counsel. [D.E.116/68/79].  With no analysis, the district court said that it did not "think much of [objectors'] numbers."  [D.E.116/69].  The district court further criticized as "flawed" and "worthless" the opinions of the *Ponzio* objectors' damages experts, finding that they mistakenly based their estimate values on a full repainting of the entire vehicles, rather than only the affected body panel.  [D.E.116/53-54].  *Ponzio* counsel responded that whether a full or partial repainting is used as a basis for their estimate, the settlement was still irrational.  [D.E.116/53-55/65-66/81-82].

The district court, however, did disagree with the *Pinon* plaintiffs' estimate of the settlement value of future repairs because it was inflated. [D.E.116/121].  The estimate was improperly based on the cost to Mercedes of a hypothetical extended warranty, and included items such as marketing and administrative costs that did not exist.  [*Id*.].  The district court requested that *Pinon* counsel submit a revised estimate of the value of the future repairs component consistent with the estimate

21

that was performed in *Amin v. Mercedes-Benz USA, LLC*, No. 17-CV-1701-AT, 2020 WL 5510730 (N.D. Ga. Sept. 11, 2020), in which a purportedly similar settlement "was entered . . . based on both payment for past repairs and extending the warranty for future repairs." [D.E.116/8]. The district court opined that the expert in *Amin* had properly estimated the value of the future repair costs. [D.E.116/8/15-20].

### K. The Supplementary Post-Fairness Hearing Filings

*Pinon* counsel's post-Fairness Hearing submission did not address any flaws in the Settlement that were raised at the fairness hearing. Instead, it consisted solely of a supplement to their motion for attorneys' fees. [D.E.117]. *Pinon* counsel submitted nothing to support any of the settlement approval factors. Nor did they update the number of class members who had filed settlement claims. *Pinon* counsel did submit a revised declaration from Mr. Bowron, which, for purposes of attorneys' fees, substantially lowered his estimate of the value of settlement to between $16.2M and $17.7M (down from $32.12M and $56.01M). [D.E.117-2/11; D.E.121-2/5/14-16].

22

The *Ponzio* objectors responded with a supplementary declaration from Richard Eichmann. [D.E.121-2]. Eichmann pointed to numerous deficiencies in Bowron's analysis. [*Id*.]. Eichmann opined that, properly calculated, the actual future value of the settlement was between $3.1M (using Bowron's hyper-inflated expected claims rates) and less than $1M (using his own expected claims rates based on class members being economically rational [D.E.121-2/5/14-16&n.27]. Eichmann also calculated that, based on *Pinon* parties' own data, 80% of the class members receive nothing. [D.E.121-2/4/6-9].

The *Ponzio* objectors also pointed out that Bowron's analysis failed to provide adequate information as to the true value of the settlement, the likelihood of success at trial, and possible range of recovery for class members' claims, and the point on or below the range of possible recovery at which the settlement is fair. [D.E.121/11/13-29]. The *Ponzio* objectors noted that Bowron's revised analysis confirmed that the vast majority of class members receive nothing under the settlement. [D.E.121/18-23]. Specifically, 99,702 former owners and lessees, plus 35,397 of current owners and lessees whose Subject Vehicles are too old or have too many

23

miles (for a total of 135,099), or 80% of the class, were ineligible for future repainting. [*Id.*].

## L.    The District Court's Final Approval Order

The district court's final approval order "reaffirm[ed] [the district court's] findings in its Preliminary Approval Order." [D.E.125/14/15]. But that order had no findings, only a rubber stamp of *Pinon* counsel's inaccurate statements. [D.E.78; D.E.90/3/6]. And the approval section of the final approval order similarly set forth only a conclusory analysis of settlement approval factors. [D.E.125/14-26]. The court failed to address the critical issue of what the class members had given up in exchange for settlement—including the fact that 80% of the class would get no benefits in exchange for releasing their claims—let alone why that tradeoff was fair or supportable under the case law.

The district court noted merely that the *Ponzio* objector's argument was based on the "significantly flawed premise—that every Subject Vehicle presented for repair *will have to be repainted in its entirety*." [D.E.125/31-32 & nn.12-13 (emphasis in original)]. The district court noted that under the settlement, the repairs would be limited to refinishing affected areas only. [D.E.125/32-33]. As such, the court

24

concluded that *Ponzio* objectors' "statements about most Class Members receiving 'nothing' can[not] be seriously considered." [D.E.125/33]. The court's analysis, however, completely fails to address the fact that 80% of the class members—including the many former owners and lessees who have no vehicle to repaint—get *nothing* despite having to release their claims. Other than observing that "some" class members are ineligible for relief [D.E.125/34], the court simply ignored this argument—the main thrust of the *Ponzio* objectors.

The district court's analysis of the adequacy of relief and range of possible recovery factors further omits key information as to dollar amounts that reflect the value of the settlement and the range of possibly recovery on the claims at issue. [D.E.125/22-24]. The court found that a better outcome than the settlement provided was "far from guaranteed," and docket congestion weighed in favor of approval. [D.E.125/18 & n.7]. The court did not explain how any outcome could be worse than *no* recovery or why docket congestion justified releasing class members' claims for no compensation.

In rejecting arguments over the value of the settlement, the district court relied upon the revised Bowron declaration. [D.E.125/38-40].

25

Without any analysis, the district court summarily held that, even if it credited Eichmann's estimate of the settlement value—which the court mistakenly stated was $9.4M—$10.9M—it would "find that the relief" was adequate. D.E.125/40 & n.16.

## STANDARD OF REVIEW

"This court reviews a district court's confirmation of a class action settlement agreement for an abuse of discretion." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011). A judge "abuse[s] his discretion when he approve[s] [a] settlement based on a clearly erroneous factual finding." *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1327 (11th Cir. 2013).

"Before approving a class-action settlement, a district court must 'determine that it [is] fair, adequate, reasonable, and not the product of collusion.'" *Johnson*, 975 F.3d at 1262. "Proponents of class action settlements bear the burden of developing a record demonstrating that the settlement distribution is fair, reasonable and adequate." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983). "Class counsel owes a duty to the class as a whole and not to any individual member of the

class." *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 991 (11th Cir. 2020) (footnote omitted).

## SUMMARY OF ARGUMENT

The district court approved a settlement that confers on the class representatives the highest levels of relief available, and millions in attorneys' fees for class counsel, but provides 80% of the class members not a single penny in recovery, even though all class members must release their claims. No court has ever previously approved such a settlement; to the contrary, numerous cases around the country condemn settlements that exclude a significant portion of the class from any recovery.

The district court also neglected to apply the "careful scrutiny" this Court has mandated for class action settlements, and failed to require *Pinon* plaintiffs to meet their burden of presenting evidence showing the fairness and adequacy of the settlement. Numerous red flags raised by *Ponzio* objectors reinforced the inadequacy of the settlement, including fundamental conflicts of interest, the failure to satisfy the *Bennett* and Rule 23(e)(2) factors, evidence of collusion and a reverse auction, and a low value, disfavored "coupon" remedy.

27

Rule 23(e) requires the district court to take on "a type of fiduciary role for the class," and accordingly "[this] Court directs district judges to exercise 'careful scrutiny' in order to 'guard against settlements that may benefit the class representatives or their attorneys at the expense of absent class members.'" *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1265 (11th Cir. 2021) (quoting *Holmes*, 706 F.2d at 1147).

## ARGUMENT

## THE DISTRICT COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN GRANTING APPROVAL OF THE CLASS SETTLEMENT

The settlement is fatally flawed because it releases claims for 100% of the class even though 80% are ineligible for any benefits.   No justification has been—or can be—offered to defend such a settlement.

## I.   THE SETTLEMENT IS PER SE UNFAIR, INADEQUATE AND UNREASONABLE BECAUSE IT FAILS TO PROVIDE BENEFITS TO 80% OF THE CLASS

### A.   Settlement in Which Most Class Members Are Ineligible to Recover Any Relief But Must Release Their Claims is Per Se Unfair Under Settled Law

It is settled law that a settlement that releases an entire class and makes the vast majority ineligible for benefits is fundamentally flawed.

28

As the Ninth Circuit has noted, settlements that "release[] almost all of the absent class members' claims with little or no compensation . . . [are] unfair and [do] not adequately protect the interests of the absent class members." *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003). Likewise, in *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 783-85 (7th Cir. 2004), the Seventh Circuit rejected a class settlement where a large percentage of claimants were forced to release "colorable legal claims [that] are not worthless" for no consideration. *See also Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 747 (7th Cir. 2006) ("core concern . . . is that . . . an entire class [will] receiv[e] a 'big fat zero' in the settlement"). Countless other authorities support this fundamental principle, and (other than the decision below) no court has ever approved a settlement in which the vast majority of class members are excluded from any recovery but must release their claims[7]

---

[7] *See, e.g., Holmes*, 706 F.2d at 1148 ("Courts have refused to approve settlements on the ground that a disparity in benefits evidenced either substantive unfairness or inadequate representation."); *Parker v. Time Warner Entm't Co.*, 239 F.R.D. 318, 337 (E.D.N.Y. 2007) ("[A] total lack of value exchanged for a release of claims is a strong indicator that a settlement is unfair"); *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2012 WL 1156399, at *8-10 (N.D. Cal. Apr. 6, 2012) (same; significant subclass received no benefit); *Acosta v. Trans Union, LLC*, 243 F.R.D.

## B.    The Settlement Requires a Release from All Class Members But 80% of the Class is Ineligible for Recovery

In this case, most of *Pinon* class representatives are eligible for 100% reimbursement for past paint repairs and 100% coverage towards future repairs.  In contrast, the overwhelming majority of class members will receive no benefits under the settlement.  *Pinon* plaintiffs estimate 168,817 class members will be bound by the settlement.  [D.E.121-2/6].  Of these 168,817 class members, 99,702 (or 59%) are former owners or former lessees,[8] who are obviously ineligible for future repainting benefits because they no longer possess their Subject Vehicles.[9]

---

377, 388 (C.D. Cal. 2007) ("Court is aware of no case in which a settlement was allowed that partitioned a class so as to provide relief to one segment and to deny it completely to another"); *Petruzzi's, Inc.*, 880 F. Supp. at 299 (quoted on page 1, *supra*).

[8]  It is easy to understand why such a large percentage of the class consists of former owners and lessees.  *See* D.E.96-10/18n.19 (citing authorities showing vehicles are turned over an average of every 6 years).

[9] Conceivably, there may be a tiny fraction of former owners or lessees who paid to repaint their vehicles while still in possession of them, and who filed a claim for reimbursement.  But this is all speculation:  class counsel provided no indication that it would be anything but a trivial number of class members, and this figure would be at most 1,532 if 100% of all claims were made by former owners and lessees.  Realistically, who would undertake the expense to paint a leased vehicle or one that the owner plans to promptly sell?

30

[D.E.121-2/7]. And for the remaining 69,115 class members who are current owners and lessees, *Pinon* Plaintiffs' estimates reveal 35,397 are ineligible due to the settlement's age and mileage restrictions. [*Id.*]. Thus, taken together, roughly 135,099 of the 168,817 Class Members (80.03%) are ineligible for future benefits under the settlement approved by the district court. [D.E.121-2/9]. Neither *Pinon* counsel nor the district court ever refuted these numbers.

As for the other form of relief the settlement purports to provide, reimbursement for qualifying past repairs, only 1,532 claims were filed (representing less than 1% of the class members assuming all 1,532 are accepted), and the time to file for reimbursement has ended. Because there is no way to go back in time and make a past repair, or to roll back the mileage or years of the Subject Vehicles, about 79.2% of class members are *guaranteed* to receive nothing under this settlement, with no steps they can affirmatively make to partake in any of the benefits of the settlement.[10] Yet, the settlement requires these 79.2% to release

---

[10] In addition, of the 33,718 (19.9%) class members who are eligible for future benefits, 29,144 (86.4% of the 19.9%) are ineligible for free repainting and must pay a Mercedes Authorized Service Center either 50% or 75% of the retail cost of repainting to participate in the settlement.

their claims even though Defendants are not required to pay them one penny under the settlement.

Despite being repeatedly presented with this argument in *Ponzio* Plaintiffs' objections, the district court failed to "closely review" that objection. *Equifax*, 999 F.3d at 1257. Instead, the court rejected the suggestion of any impropriety, finding that *Ponzio* Plaintiffs' objections were based on a "flawed premise" that "every Subject Vehicle *will have to be repainted in its entirety*." [D.E.125/31] (emphasis in original). But whether Subject Vehicle must be painted "in its entirety" or just partially repainted has no bearing on the fact that, according to *Pinon* plaintiffs' own data, over 80% of class members are *ineligible for any future repainting at all*. Put another way, a class member who no longer possesses their Subject Vehicle (i.e., a former owner or lessee, of which there are approximately 100,000 of these class members), or whose Subject Vehicle has exceeded the age or mileage restrictions of the settlement (of which there are approximately 35,000 of these class members), cannot receive either a full *or* a partial repainting at all. In short, the court's purported refutation is a straw man because it does not focus on class members who receive *nothing* but instead on the one-fifth

of the class who are eligible for some sort of future partial painting remedy.

In any event, the court's criticism of objectors for not recognizing that the settlement allows for partial repainting is undercut by the record. *Ponzio* Plaintiffs and their experts did not simply "presume" that Subject Vehicles be repainted fully [*see* D.E.125/31-32]; the *Pinon* Plaintiffs alleged in their complaint that partial repainting was inadequate, and provided full repainting cost estimates in defending the settlement. [D.E.55/11/24/27/30/46/47/50/59-60/203; D.E.76/27]. After all, the crux of this action is that the 590 Mars Red paint used by Mercedes on the Subject Vehicles was wholly defective [D.E.55/11/47/57-60], making it somewhat peculiar that the settlement would require repeated, partial repairs, and only after the defect manifested. Also, because the defect occurred at production and impacted the whole vehicle body [*see id.*], the court's comparison to partial repainting of a "vehicle damaged in an accident" is particularly inapt. [D.E.125/33]. Not surprisingly, no class representative asked for only a partial repainting in the complaint.

Contrary to the district court's suggestion [D.E.34, 36-37], the *Ponzio* objectors do not object in general to the usage of age or mileage restrictions—or any other tiered approach—that allocate settlement benefits to class members based on the perceived strength of their claims. *See*, *e.g.*, *Amin*, 17-cv-01701-AT, D.E.63/18-19/21-22; D.E.112/11-13. What *Ponzio* objectors challenge, however, is the application of age and mileage restrictions to *exclude* a large majority of class members from receiving any future benefits at all, even though they must release their claims. *See Majdipour v. Jaguar Land Rover N. Am., LLC*, 2018 WL 1617696, at *5 (D.N.J. Apr. 3, 2018) (rejecting preliminary approval of class settlement where "Class Members outside of the year and mileage requirements would receive nothing"). The simple answer is not to release class members who are ineligible for any benefits; rather, the *answer is to exclude such individuals from the class definition* so they preserve whatever claims they have and release nothing. [11] Thus, older,

---

[11] *See Charron v. Wiener*, 731 F.3d 241, 251-52 (2d Cir. 2013) (settlement not unfair where terms do not release or extinguish claims that are excluded from any relief); *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 158 (E.D. La. 2013) (same); *In re Nissan Radiator/Transmission Cooler Litigation.*, No. 10 CV 7493 VB, 2013 WL 4080948, at *11 (S.D.N.Y. May 30, 2013) (settlement deemed fair where

34

high mileage vehicles could be excluded as could former owners or lessees. Alternatively, the settlement could have been written to ensure that every class member received at least *some* benefit in exchange for releasing their claims, including diminution in market value[12] or some fixed cash amount. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) (settlement provided either free credit reporting or modest cash payment), *aff'd in relevant part,* 999 F.3d 1247 (11th Cir.), *cert. denied*, 142 S. Ct. 431, 765 (2021). The point is that the settlement needed to offer *some* consideration to class members in exchange for releasing their claims. No legitimate rationale exists for a settlement that gives 80% of the class zero for releasing their claims. The only rationale is that

---

it did not release claims of "Class members with more than 100,000 miles on their vehicles").

[12] Such damages have been widely approved by this Court and elsewhere. *See*, *e.g.*, *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 819-22 & n.7 (9th Cir. 2019); *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986-89 (11th Cir. 2016) ("'benefit of the bargain' model [including payment of price premium] provides a standardized class-wide damages figure"). This damages theory, that a Subject Vehicle with non-defective paint was worth more than one with defective paint at the time of sale, was the theory alleged in the complaint. [D.E.55/63-65]. And it was supported by *Ponzio* plaintiffs' expert, Dr. Glasgow. [D.E.96-13/24-26].

35

defendants wanted to spend a limited amount of money to settle, and class counsel wanted to ensure that most of that money went to their fees, not to the class. *See, e.g., Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) ("'Defendants are interested only in the total costs of the settlement to them . . . . We thus have 'remarked on the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judges approve a settlement involving a meager recovery for the class but generous compensation for the lawyers'") (citations omitted).

Moreover, to make matters even worse, only a small number of those who were actually potentially eligible for reimbursement filed claims—a total of only 1,532 (less than 1% of the class). Yet, class counsel stand to make $4,750,000 in fees, Defendants get releases from tens of thousands of class members who are ineligible to recover, and the class representatives are eligible for the maximum benefits (and, depending on possible en banc review in *Johnson*, they could recover an additional $5,000 each). Such a settlement is simply indefensible, and does not comport with Rule 23(e)(2)'s requirement that a settlement be fair, reasonable, and adequate, and that the relief granted be adequate.

36

## II.    NUMEROUS RED FLAGS AND LEGAL ERRORS EXPLAIN HOW SUCH A DEFECTIVE SETTLEMENT WAS IMPROPERLY REACHED AND APPROVED

### A.    The District Court Failed to Properly Address the *Bennett* Factors and Rule 23(e)(2) Criteria

The district court made multiple legal and factual errors in applying the relevant *Bennett* and Rule 23(e)(2) factors, including ignoring the *Ponzio* objections, ignoring the value of both the settlement and the claims, and making various factual findings that have no basis in the record on subjects never argued.

#### 1.    The District Court Failed to Adequately Address Objections as to the *Bennett* Factors

While a district court's orders overruling objections to a proposed class action settlement or approving a proposed class action settlement are reviewed for abuse of discretion, such orders nevertheless must provide this Court with a basis for judging the exercise of that discretion, including reasoned responses to objections.  *See Johnson*, 975 F.3d at 1262-63; *Holmes*, 706 F.2d at 1147.  And, as noted, the *Pinon* Plaintiffs had a "substantial burden . . . to demonstrate and document [the settlement's] fairness." *Holmes*, 706 F.2d at 1147

37

Here, although the *Ponzio* objectors presented detailed objections as to the *Bennett* factors, including two separate objections, oral argument, and a PowerPoint presentation [D.E.96/59-64; D.E.116/40-41/56-59/67-68; D.E.121/13-29, 30-32/43-49], the court summarily rejected them in a single sentence [D.E.125/43-44], and thus "made no findings or conclusions that might facilitate appellate review; instead, it offered only rote, boilerplate pronouncements." *Johnson*, 975 F.3d at 1248-49. That error is by itself a basis for reversal. *See id*. at 1262 (court must . . . "'set forth on the record a reasoned response to the objections including findings of fact and conclusions of law'"); *id*. ("trial judge [must] undertake an analysis of the facts and the law . . . . A mere boiler-plate approval . . . will not suffice'") (citations and internal quotation marks omitted omitted).

### 2.    The District Court's Analysis Contains No Mention, Let Alone Analysis, of the Range of Possible Recovery or the Value of the Settlement

In determining whether the relief provided by a settlement was adequate, the district court failed to address the range of possible recovery for the *Pinon* Plaintiffs' claims and the point on or below the range of possible recovery at which the settlement is fair, adequate and

reasonable. *Bennett*, 737 F.2d at 986; [D.E.125/23-24]. This comparison of the potential value of the claims with the estimated value of the settlement is crucial because the fiduciary responsibilities of the district court require it to "assure[] that the settlement secures an adequate recovery for the class in return for the surrender of the class members' rights to litigate against the defendants." 4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13:51 & n.10 (5th ed. 2021) (citing authority). The *Bennett* factors, by their very nature, necessarily required the district court to conduct at least some amount of estimation and comparison of the potential value of the claims and the settlement in light of the likelihood of success proceeding forward. *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("The settlement terms should be compared with the likely rewards the class would have received following a successful trial of the case."); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007) ("'court should . . . insist[]'" that parties present evidence that enables possible outcomes to be estimated) (citation omitted).

Here, as to the second and third *Bennett* factors, other than general observations, the district court did not conduct any sort of analysis to

39

determine whether the relief provided in the settlement is adequate in comparison to the value of the claims alleged in the TAC, nor did it even discuss or evaluate the values of the settlement's relief or the possible recovery for the class members' claims, which included compensatory, treble and punitive damages, and attorney fees. [D.E.121/25-27 & nn.12-14; D.E.125/23]. *See Cotton*, 559 F.2d at 1330 ("The relief sought in the complaint may be helpful to establish a benchmark by which to compare the settlement terms."); *see also Wilson v. DirectBuy, Inc.*, No. 3:09-CV-590JCH, 2011 WL 2050537, at *14 (D. Conn. May 16, 2011) (rejecting settlement that substantially undervalued state consumer protection claims in part on ground that claims were not "weak"). The district court merely listed the purported benefits allegedly provided by the settlement, which is not a consideration under *Bennett* factors two and three, and it set forth boilerplate law that settlements can still be fair "even where plaintiffs have not received optimal relief." [D.E.125/23-24]. That sort of analysis does not qualify as the requisite "careful scrutiny." *See Johnson*, 975 F.3d at 1262-63; *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309-10 (6th Cir. 2016) (court cannot make "conclusory" statements in addressing settlement factors); *In re*

40

*Corrugated Container Antitrust Litig.*, 643 F.2d 195, 218 (5th Cir. 1981) (court's findings "were not detailed enough for us to review"). For their part, the *Pinon* Plaintiffs failed to ascribe any value to the range of recovery of these claims or the point within that range at which the settlement would be fair—let alone present any evidence on these issues—and the court improperly ignored that failure.[13]

### 3. The District Court Improperly Conflated the First and Fourth *Bennett* Factors, and Provides No Careful Scrutiny of These Factors and the *Sixth* Bennett Factor

The district court's analysis of the first and fourth *Bennett* factors, the likelihood of success at trial and the complexity, expense, and duration of the litigation, *see Bennett*, 737 F.2d at 986, fares no better. The district court improperly lumped together these factors, along with the  second factor. The court stated that it "consider[ed] the first and fourth *Bennett* factors together," [D.E.125/21/22-23], and then opined that the "questionable likelihood of success" (the first *Bennett* factor)

---

[13] The *Pinon* Plaintiffs appeared to grudgingly recognize the value of their claims could be $639,000,000 for fully body paint repairs. [D.E.107/62 n.35]. Even assuming that this accurately captures the maximum recovery for the claims, *Ponzio* objectors' expert's valuation of the settlement at between $1M and $3.1M shows the gross inadequacy of the settlement relief.

41

"affects the possible range of recovery," [D.E.125/22], the second *Bennett* factor, [D.E.125/21-24]. No precedent supports such an approach; whether a claim is likely to succeed at trial should have no bearing on the maximum recovery available if successful at trial. But even assuming that this conflated approach were proper, the district court failed to substantively analyze these factors, merely setting forth conclusory statements. *See Johnson*, 975 F.3d at 1262-63; *Shane Grp., Inc.*, 825 F.3d at 309 (court cannot "offer up platitudes about the risks of litigation generally").

For example, for the likelihood of success at trial factor, the district court stated that "[i]t is entirely possible that Plaintiffs would not prevail on establishing liability on the part of Defendants, either on summary judgment or after a trial on the merits." [D.E.125/22]. But that "possibility" is true in all cases, and such a rote, conclusory examination of the class members' claims falls short of a meaningful scrutiny of the likelihood of success factor. *See Johnson*, 975 F.3d at 1262-63; *Wilson*, 2011 WL 2050537, at *10-13 (rejecting settlement, in part, because of failure to account for strength of state consumer protection claims).

42

With respect to the fourth *Bennett* factor, the complexity, expense, and duration of the case, the court offered little other than generalities and did not indicate how this affected the reasonableness of the settlement. The court made only the conclusory statements that "[t]his case was complex, expensive, and time-consuming," that it would "take significant time" to proceed to trial, and would "undergo a protracted appellate process." [D.E.125/22]. In any event, there is no explanation of why the court believed this case to be more complex, expensive, or time-consuming than any other class action lawsuit. As this Court has stated in analogous circumstances:

> [V]irtually all class actions will result in long, complex and expensive trials. The question is whether the likelihood of an especially long and complex trial is enough in a particular case to warrant a substantial reduction in what the class might otherwise receive in settlement. The district court, however, said nothing to indicate why the prospect of a long trial had a particular impact on this case.

*Corrugated Container*, 643 F.2d at 217.

The district court's analysis of the sixth *Bennett* factor, the stage of the proceedings, consists of the same type of conclusory observations, such as "[t]he settlement was not reached until after a ruling on a motion to dismiss and both sides had engaged in extensive discovery."

[D.E.125/25]. No reasoning is provided (and *Pinon* plaintiffs offered none) as to how these events informed the negotiations, or exactly what discovery enabled the *Pinon* Plaintiffs to agree to the settlement. In fact, after negotiation of the settlement, *Pinon* Plaintiffs said they needed follow-up information from Defendants to confirm its adequacy (information that was never later identified). Put another way, "the record points unmistakably toward the conclusion that the settlement was the product of uneducated guesswork." *Corrugated Container*, 643 F.2d at 211.

### 4. The District Court Failed to Properly Address the Remaining Rule 23(e)(2) Factors

#### a. Class Members Are Not Treated Equitably Relative to Each Other

Contrary to the district court's conclusion D.E.125/129], class members are not treated equitably relative to each other. Eighty percent receive nothing; a tiny minority filed claims for reimbursement of a portion of the cost of past repairs (less than 1% of the class), and a small minority (20% or less) are eligible for a coupon discount off a future repair. The court relied upon *Amin* and other unpublished lower court decisions that have upheld settlements involving age and mileage

limitations, [D.E.125/19-20]; but in *Amin*, 66% of the class was eligible for future relief (as opposed to 20% here), 2020 WL 5510730, at *2, and nearly 20,000 claims for reimbursement of past repairs were filed (as opposed to 1,532 here). The remaining decisions did not involve settlements where the vast majority of class members was ineligible for relief—and all were all decided before the 2018 amendments (which adopted the equitable treatment requirement). It is per se inequitable to exclude a large portion of the class from any recovery.[14]

### b.    The Terms of the Proposed Attorneys' Fee

The district court brushed aside any concerns about the proposed $4,750,000 attorney's fee on the ground that the settlement is not a "coupon" settlement nor one under which "most of the Class Members receive nothing." [D.E.125/41]. But even assuming class counsel are correct that this is not a coupon settlement (they are not), a settlement that benefits class counsel to the tune of millions of dollars while shutting out most class members from receiving anything is flawed. Courts have raised concerns about the fairness of such settlements in which class

---

[14]  *See, e.g.*, *Cunha v. Chico Produce, Inc.*, No. 17-CV-00597-JST, 2019 WL 12875982, at *5 (N.D. Cal. June 25, 2019) (criticizing settlement that contained "gross disparit[ies]" that lacked sufficient justification).

counsel receive disproportionate fees. *See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) ("pre-certification settlement agreement . . . warning sign[] [of possible collusion included fact that] . . . settlement's provision for attorneys' fees is apparently disproportionate to the class reward, which includes no monetary distribution"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 803-04, 810, 820 (3d Cir. 1995) ("divergence in financial incentives present here creates the 'danger . . . that the lawyers might urge a class settlement at a low figure . . . in exchange for red-carpet treatment for fees'") (citation omitted).

Because the district court failed to grapple with and properly address the Rule 23(e)(2) and *Bennett* factors, it abused its discretion in approving the settlement.

**B.    The Settlement Has the Hallmarks of Inadequacy of Counsel**

**1.    The Record Reveals Unfair and Inadequate Protection of Class Members' Interests and Fundamental Conflicts of Interest**

*Pinon* counsel did not fairly and adequately protect the interests of the class, Fed. R. Civ. P. 23(g)(4), and operated under fundamental conflicts of interest.  Class counsel bears "a heavy fiduciary responsibility

46

to their clients—*especially those who are absent* and those in the minority whose interests are at odds with the named plaintiffs and their group." *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985) (emphasis added).

The district court opined that class counsel was adequate because "[a]ll Class Members who owned or leased a Subject Vehicle during the applicable time periods are treated the same based upon the age or mileage of the vehicle when placed in service." [D.E.125/41]. But that analysis (adopted from *Pinon* Plaintiffs' brief) ignores that the class representatives receive significantly better treatment than the majority of class members who suffered the same damages from identical conduct. It also fails to address the 80% of the class members who are ineligible for any benefits. This scenario clearly reflects unduly preferential treatment, and that there are divergent economic interests and objectives, resulting in inadequate representation. *See Equifax*, 999 F.3d at 1275 (fundamental conflict exists "where the economic interests and objectives of the named representatives differ significantly from the

47

economic interests and objectives of unnamed class members").[15]    A

conflict can exist where there is a "risk that . . . members of the class will

have their ability to get settlement benefits reduced to zero because some

other members got more relief from the settlement," and "all class

members are [not] entitled to the same class benefits." *Equifax*, 999 F.3d

at 1277.    Furthermore, failure of class counsel to obtain relief for a

significant majority of class members conflicts with its "duty to the class

as a whole," rather than any "particular duty to . . . class representatives"

that class counsel "does not owe." *Med. & Chiropractic Clinic,* 981 F.3d

at 991.    No competent counsel or class representative, tasked with

representing the 80% who receive nothing, would ever have agreed to

such a settlement.

---

[15] *See also Dewey v. Volkswagen Aktiengesellschafte*, 681 F.3d 170, 187
(3d Cir. 2012) ("The structure of the settlement agreement itself, which
divides a single class into two groups of plaintiffs that receive different
benefits, supports the inference that the representative plaintiffs are
inadequate."); *In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242, 253 (2d Cir. 2011) ("The Supreme Court counseled
in *Ortiz* that subclasses may be necessary when categories of claims have
different settlement values.    The rationale is simple: how can the value
of any subgroup of claims be properly assessed without independent
counsel pressing its most compelling case?"); *Molski*, 318 F.3d at 955
(representation   held   inadequate   because   "the   consent
decree released almost all of the absent class members' claims with little
or no compensation").

The district court found that the disparate circumstances in *Holmes*, where the settlement was held facially unfair because the eight named plaintiffs received half of a $43,000 back pay award and the remaining 118 class members shared the rest of it, was absent in this case. D.E.125/42. But that analysis is flawed; it ignores that 80% of the class members here are not entitled to any relief under the settlement, while most of the class representatives are eligible for 100% reimbursement and/or coverage for paint repairs. [D.E.55/8/16/23/24/27/31; D.E.70-1/13/15]. Indeed, in *Holmes*, every class member was eligible to receive some form of relief from the settlement. *See* 706 F.2d at 1146. Moreover, *Holmes* emphasized the need for "careful judicial scrutiny into whether the settlement allocation is fair to the absent members of the class" where, as here, "a disparate distribution favor[s] the named plaintiffs." *Id.* at 1148. That language is fully applicable here.

The district court conducted no such "careful judicial scrutiny," sidestepping *Holmes*' holding that the "inference of unfairness" from a disparate allocation "may be rebutted by a factual showing that the higher allocations to certain parties are rationally based on legitimate

considerations." *Id*. The basis for the court's approval of the settlement's allocation was not any "factual showing" but only the word of *Pinon* counsel [D.E.100; D.E.107; D.E.107-1], which is "an insufficient basis upon which to approve the disproportionate and facially unfair allocation," *Holmes*, 706 F.2d at 1150.

The district court also improperly conflated the adequacy-of-representation element with the fairness-of-the-settlement requirement. [D.E.125/36/42]. The court refers back to its discussion on diminution in value damages and adequacy of relief to find counsel adequate. *Id*. But adequacy of relief and adequacy of counsel are separate issues. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 621-22 (1997) (court may not substitute fairness inquiry of Rule 23(e) for certification requirements of Rule 23(a) and (b)); *Charron*, 731 F.3d at 249 ("Adequacy of representation must be determined independently of the fairness of the settlement.") (citing *Amchem,* 521 U.S. at 622; *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 858 (1999)); *Literary Works*, 654 F.3d at 254 (court cannot "conflate" the two issues).

50

### 2. The Settlement Reflects Collusion, Reverse Auction, and Absence of an Arms-Length Negotiation

The district court brushed aside arguments of collusion and a reverse auction,[16] relying upon its analysis of these issues in its earlier denial of *Ponzio* objectors' motion to intervene. [D.E.125/43]. The court abused its discretion because (1) unlike the district court's review of the motion to intervene, final approval of the *Pinon* settlement required careful, heightened scrutiny; (2) the *Ponzio* objectors submitted a record below that was substantially more developed on the collusion/reverse auction issue than the record underlying their motion for intervention [D.E.121-1; D.E.121/33-39; D.E.96/40-48; D.E.96-10/48-55; D.E.96-11]; (3) unlike in the Rule 24(a) intervention context, where there is a presumption of adequacy and the burden was on the *Ponzio* intervenors to rebut it, *Pinon* had the burden of developing a record that supported

---

[16] A reverse auction is "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement," knowing that those lawyers will not advocate forcefully for the class. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002).

approval of the settlement; and (4) the record reflects indicia of collusion and a reverse auction, *see infra* at 58-63.

The district court did not even mention any of the new developments, new facts, or new arguments, and its reliance on its order denying intervention cannot provide a competent basis for rejecting arguments that were not made on intervention, or facts that were not previously presented. By failing to address the collusion and reverse action issues with the requisite careful scrutiny at this stage, the district court abused its discretion. *See Johnson*, 975 F.3d at 1262-63. [17]

Had the court addressed the reverse auction arguments and evidence in a serious way, it would have understood that there were significant indicia of collusion and a reverse auction which warranted applying heightened scrutiny. Such review would have revealed that:

- the *Pinon* parties and *Ponzio* counsel were involved in parallel, competing class actions that resulted in reverse

---

[17] *See McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607-08 (9th Cir. 2021) (where settlement precedes certification, court must apply "'even higher level of scrutiny'" for evidence of collusion or other conflicts of interest) (citation omitted); D.E.66-11 (Declaration of Professor Brian T. Fitzpatrick) (court must apply heightened scrutiny where signs of collusion and reverse auction exist).

auction pressure to reach a settlement, due to rivalrous competition rather than cooperation [D.E.66-11/4-14];

- *Pinon* parties were well aware that *Ponzio* counsel had been appointed to represent classes that substantially overlapped with the classes and allegations in *Pinon*;

- *Pinon* counsel secured appointment as class counsel based on a Rule 23(g) application that contained misrepresentations regarding the basis for the application, the scope of *Ponzio* counsel's representation, and promises to "coordinate" (that went unfulfilled);

- *Pinon* counsel pressured *Ponzio* counsel to dismiss *Ponzio* and refile it in the *Pinon* court;

- *Pinon* counsel abruptly ceased communications with *Ponzio* counsel over a fee sharing proposal, following which the *Pinon* parties negotiated a settlement and failed to notify *Ponzio* counsel about, or include them in, the mediation in *Pinon,* despite the district court's order to "coordinate";

- the settlement negotiations occurred just after Defendants suffered significant losses on discovery-related motions in *Ponzio*;

- *Pinon* counsel invoked a protective order as barring disclosure of the settlement negotiations, even though the order did no such thing and concerned only discovery;

- *Pinon* counsel took only class certification-related discovery; filed no dispositive motions; took no depositions; agreed to relevancy redactions of discovery under the European General Data Protection Regulation (redactions that courts have uniformly rejected); and agreed to inadequate relief, including a lack of relief for a significant percentage of Class Members, no compensation for the benefit of the bargain damages sought in the complaint, and a low value "coupon" settlement—relief that *Pinon* counsel traded for the certainty of its own substantial fee award.

Courts have held that such circumstances constitute indicia of collusion and a reverse auction that warrant applying a heightened scrutiny that the district court failed to apply. *See, e.g.*, *Reynolds*, 288

54

F.3d at 282-86 (district court abused discretion where it brushed aside "suspicious circumstances" that settlement may have involved collusive reverse auction, and court made no effort to quantify net expected value of continued litigation); *Figueroa*, 517 F. Supp. 2d at 1322-27 (denying approval where objectors argued reverse auction and that settlement was well below range of recovery that would be fair); Jonathan R. Macey & Geoffrey P. Miller, *Judicial Review of Class Action Settlements*, 1 J Legal Anal. 167, 191, 194 (2009) ("Markers of a reverse auction include . . . presence of overlapping class actions involving similar claims against same defendant; "settlement bargaining limited to one of the competing groups of plaintiffs' attorneys"; "settlement with the group of attorneys who present a less substantial threat of carrying the case forward to trial"; agreements that promote "award of lucrative and potentially justified attorneys' fees"; and "sudden expansion of scope of the settled case" (*i.e.*, a broadening of claims alleged in initial complaint)).

Courts have also held in analogous circumstances that failure to adequately consider evidence that the exclusion of class counsel from settlement negotiations may have resulted from collusion or a reverse auction warrants denial of settlement approval. *See, e.g., Sharp Farms*

55

*v. Speaks*, 917 F.3d 276, 290-94 (4th Cir. 2019) (district court "abused its discretion in certifying the class . . . [where court failed to consider that class] "counsel . . . colluded to exclude . . . class counsel [in parallel class action] from participating in the settlement mediation"); *Engine Interchange Litig.*, 594 F.2d at 1126 (exclusion of counsel from settlement negotiations "should weigh heavily against approval of the settlement," where he "might well have improved the settlement terms").[18]

Additionally, the district court abused its discretion in holding that the *Pinon* parties did not improperly exclude *Ponzio* counsel from the settlement negotiations because a protective order made those negotiations confidential. [D.E.125/42]. The protective order governed discovery and did not bar *Pinon* counsel from bringing *Ponzio* counsel to the table. [D.E.121-1/2-6/10-11]. In fact, the *Ponzio* Rule 23(g) order

---

[18] *See also Borup v. CJS Sols. Grp.*, LLC, No. CV 18-1647 (PAM/DTS), 2019 WL 2137369, at *1 (D. Minn. May 16, 2019) ("indicia of a reverse auction" includes "'the fact that [defendant] took steps to cabin off these litigations from each other'"); *Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *10 (C.D. Cal. Apr. 27, 2015) (collusive negotiations warranted denial of settlement where it swept in "two separate cases without involving plaintiffs' counsel in those cases"); *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 388 (D. Minn. 2013) (settlement approval denied where plaintiff and court in previously-filed class action "were kept in the dark" about settlement negotiations).

conferred on *Ponzio* counsel the authority to negotiate for the *Ponzio* classes.  [*Ponzio*, D.E.57/1].  Even assuming that it arguably did, *Pinon* counsel could have obtained the district court's permission to involve *Ponzio* counsel.  [D.E.121-1/4-5/10-11].

The district court also abused its discretion in holding that the presence of a mediator rendered the negotiations arms-length. [D.E.125/17].  This "erroneously assumes that the mediator had all the relevant information on the collusion allegations at the time he presided over and facilitated the mediation." *Sharp Farms*, 917 F.3d 291-92.  No evidence was submitted showing that the mediator was aware of the *Ponzio* case, the overlapping nature of the two cases, or of the district court's order that *Pinon* counsel "coordinate" with *Ponzio* counsel.  Nor does the mere presence of a mediator remedy the inadequate representation.  *See id.* (citing cases).

### C.   The Class Representatives Had a Conflict of Interest and Could Not Adequately Represent the Class

The district court incorrectly evaluated whether the class representatives adequately represented the absent class members and overlooked their fundamental conflicts of interest.

57

The court summarily opined that "the interests of the Class Representatives are aligned . . . because they owned or leased one of the Subject Vehicles that were painted with 590 Mars Red paint and had no interest antagonistic to any Class Member." [D.E.125/16]. This is the same type of finding that was overturned in *Dewey*. *See* 681 F.3d at 178-79, 187-90 (finding disabling conflicts of interest notwithstanding that "[t]he named plaintiffs are in the same position as the class members because each of them owned or leased the subject vehicles that contained the allegedly defective plenum or sunroof drain system").

"This Court has . . . recognized that a class action 'cannot be certified when its members have opposing interests' or 'where the economic interests and objectives of the named representatives differ significantly from the economic interests and objectives of unnamed class members.'" *Equifax*, 999 F.3d at 1275); *see* D.E.96-10/40-43.

The court did not address whether such fundamental conflicts existed or whether the class representatives adequately protected the interests of all class members. In fact, the record reflects that class members were treated disproportionately without a legitimate reason—with a limited number getting genuine benefits but with the vast

58

majority getting nothing. The court concluded that the class representatives do not receive more benefits than most of the other Class Members and that "most of the other Class Members" do not recover "nothing." [D.E.125/42-43]. That ignores the preferential treatment accorded to the class representatives, as discussed above.

As such, "[t]he structure of the settlement agreement itself, which divides a single class into [different] groups of plaintiffs that receive different benefits, supports the inference that the representative plaintiffs are inadequate." *Dewey*, 681 F.3d at 187; *see also Fuel Tank Prod. Liab. Litig.,* 55 F.3d at 801 (court "ignore[d] the conspicuous evidence of . . . intra-class conflict" where "dubious value" of relief "does little to reduce the disparity in the prospective value to the different sections of the class").

And even if the claims of those excluded from relief or of those eligible for less than the class representatives were weaker or worth less than some other claims, as argued by *Pinon* counsel, "[t]he problem, of course, is that [the district court] ha[d] no basis for assessing whether the [difference in relief] appropriately reflects that weakness." *Literary Works*, 654 F.3d at 253. The only basis for the district court's approval

of the settlement's allocation of benefits was the word of *Pinon* counsel. But "the attorney's opinion is an insufficient basis upon which to approve the disproportionate and facially unfair allocation of this" settlement. *Holmes*, 706 F.3d at 1150.

In short, the economic interests of substantial portions of the Class Members are in substantial conflict.[19]   The interests of the *Pinon* class representatives are not aligned with, and are actually antagonistic to, the interests of a majority of Class Members—those who are not eligible for any relief and those eligible for less relief than the class representatives for no legitimate reason.

"Courts have refused to approve settlements on the ground that a disparity in benefits evidenced . . . inadequate representation." *Holmes*, 706 F.2d at 1148.   "A conflict concerning the allocation of remedies remedies amongst class members with competing interests can be

---

[19] Incorrectly placing the burden onto *Ponzio* objectors, *see Holmes*, 706 F.3d at 1144, 1148, the district court stated that "*Ponzio* objectors provide no authority to support their assertion that the Settlement Agreement is inadequate merely become some of the potential Class Members will not be eligible." D.E.125/34.  The court cited *Amin*, 2020 WL 5510730, at *3-4.  But as discussed above, in *Amin* 66% of the class was eligible for future benefits, *see id*. at *2, whereas here 80% receive nothing in terms of past *or* future benefits.

fundamental and can thus render a representative plaintiff inadequate." *Dewey,* 681 F.3d at 184; *see also Sharp Farms*, 917 F.3d at 295 (fundamental conflict existed where, because of divergent legal theories, the settlement "would provide broader relief to [part of] the settlement class at the expense of [other] class members"). The district court's decision fails to address the absence of *any* relief under the settlement to compensate for the release of claims belonging to a significant percentage of class members. "This is precisely the type of allocative conflict of interest that exacerbated the misalignment of interests in *Amchem,* 521 U.S. at 626-27." *Dewey*, 681 F.3d at 188.

As in *Amchem*, *Dewey*, and *Holmes*, "[t]he fundamental intra-class conflict here is allocative in nature, . . . and concerns the representative plaintiffs' incentive to shift the dividing line between . . . groups in order to maximize their own recovery, at the expense of other members of the class who lacked a representative to protect their interests." *Id*. at 187 n.15. The class representatives and class members plainly have fundamental conflicts and "opposing interests" or "economic interests and objectives that differ significantly." *Equifax*, 999 F.3d at 1275; *see id*. at 1277; *Holmes*, 706 F.2d at 1147-48. The class representatives and

class counsel were willing to sacrifice the claims of the vast majority of class members to ensure their own personal recovery of compensation and millions in fees.

### D. The Settlement is a Disfavored "Coupon" Settlement That Required, But Did Not Receive, Heightened Scrutiny

The district court erroneously held that no "coupon" settlement exists because it involves "direct cash payments to those Class Members who previously paid for repairs or coverage for future repairs." [D.E.125/37]. The settlement is a "coupon" settlement[20] that courts and Congress strongly disfavor. *See In re Easysaver Rewards Litig.*, 906 F.3d 747, 754-55 (9th Cir. 2018) (Congress targeted coupon settlements for "heightened scrutiny" under CAFA as they are used to inflate attorney fee awards; coupon settlement exists where class members must hand over more of their own money to take advantage of a credit; credit is valid only for select products or services, and is not freely transferrable); *Figueroa*, 517 F. Supp. 2d at 1321 ("coupon settlements have been

---

[20]    "A coupon requires a class member to purchase a product or services and pay the difference between the full price and the coupon discount." *Foos v. Ann, Inc.*, No. 11cv2794 L MDD, 2013 WL 5352969, at *2 (S.D. Cal. Sept. 24, 2013).

severely criticized by commentators in the field, . . . and . . . are strongly disfavored"); *see also McKinney-Drobnis*, 16 F.4th at 611 (district court must "'substantively grapple' . . . with the ways in which the red-flag provisions and specific [coupon] characteristics work together to present 'multiple indicia of possible implicit collusion'"); S. Rep. No. 109-14, 2005 WL 627977, at *35 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, **34 (Congress enacted CAFA in part to "provide a check against inequitable settlements" and to "deter collusion between class counsel and defendants to craft settlements that do not benefit the injured parties.").

The 20% of class members eligible for relief receive no cash for possible future repairs, contrary to the court's suggestion; and this 20% is merely eligible for discounts on possible future repairs at an Authorized Mercedes Service Center.[21] Thus, the settlement requires the small percentage of eligible class members to spend money in order to

---

[21] The district court's conclusion also ignores that only 1532 claims were submitted for past repainting, meaning that only 0.9 percent of the 168,996 Class Members will get cash reimbursements of 100%, 50% or 25%.  Even out of this pool, those eligible for reimbursement of 50% or 25% towards a past paint repair had to have paid the other 50% or 75%; and if they used an independent repair shop, they were only entitled to up to 10% of the repair cost charged by a Mercedes service center. [D.E.70-71/14].

receive in-kind relief (a 50% or 25% discount on a potential partial painting repair). "'[I]n-kind relief is worth less than cash of the same nominal value.'" *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006). The discount is valid only for a potential repair by a Mercedes-authorized Service Center, is not redeemable for cash, and is not freely transferrable. Hence, it is a coupon settlement.[22] The district court failed to apply the heightened scrutiny necessitated by "coupon" settlements, scrutiny that shows this settlement is unfair and warrants disapproval. *See Figueroa*, 517 F. Supp. 2d at 1301-04, 1308-09, 1320-29 (denying approval of "coupon" settlement involving highly undesirable terms and no arms-length negotiation).

## III.   THIS FUNDAMENTALLY UNFAIR SETTLEMENT CANNOT BE FINE-TUNED BUT SHOULD BE OVERTURNED IN ITS ENTIRETY

This case should not be permitted to proceed with the current counsel and class representatives. Rules 23(a)(4), 23(e)(2), and 23(g)

---

[22] *See In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 488-91 & n.13 (4th Cir. 2020) (overturning as abuse of discretion approval of coupon settlement, and noting that such settlements include "mixed settlements involving cash and 'coupon' relief"); *Smith v. Costa Del Mar, Inc.*, 2021 WL 4295282, at *13-14 (M.D. Fla. Sept. 21, 2021) (applying "heightened scrutiny" to determine if settlement had disfavored "coupon" features).

require that the class representatives and class counsel fairly and adequately protect the interests of the class. The Supreme Court has stated that a court can re-examine a class representative's ability to represent the class, and if it is "found wanting, the court may seek a substitute representative." *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 416 n.8 (1980). As such, in the event the Court holds that the district court abused its discretion in approving the settlement, the settlement should be overturned in its entirety, and the district court should be directed to (1) replace *Pinon* counsel and the *Pinon* class representatives with adequate counsel and representatives, and (2) consider the creation of subclasses with separate class representatives and separate counsel to ensure adequate structural protection of the interests of absent class members. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1323 (11th Cir. 2012) ("*Amchem* and *Ortiz* appear to hold that Rule 23(a)(4) calls for *some type* of adequate structural protection, which would include, but may not necessarily require, formally designated subclasses.") (emphasis in original).

65

## CONCLUSION

The judgment of the district court granting approval of the settlement should be reversed.

Dated:  March 9, 2022

Respectfully submitted,

*/s/ James E. Cecchi*
James E. Cecchi
James A. O'Brien III
**CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, P.C.**
5 Becker Farm Rd.
Roseland, New Jersey  07068
Telephone:   (973) 994-1700
jcecchi@carellabyrne.com
jobrien@carellabyrne.com

Mark Dearman
Alexander C. Cohen
Douglas Wilens
**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Rd. Suite 500
Boca Raton, FL  33432
Telephone: (561) 750-3000
mdearman@rgrdlaw.com
acohen@rgrdlaw.com
dwilens@rgrdlaw.com

Steven G. Calamusa
**GORDON & PARTNERS, P.A.**

66

4114 Northlake Blvd., Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 799-5070
scalamusa@fortheinjured.com

*Attorneys for Objectors-Appellants*

67

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 12,796 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Century Schoolbook font.


*/s/ James E. Cecchi*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 9, 2022 a copy of the brief was served on all counsel of record via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

*/s/ James E. Cecchi*