No. 21-14503

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

ROBERT PONZIO, ALEX ACUNA, BRIAN MADSEN, VANESSA M.
MONTGOMERY, ROBERT MULL, HADIYA NELTHROPE,
SAMUEL SALGADO, FREDERICK J. PARKER,

Interested Parties/Appellants,

v.

EMILY PINON, GARY C. KLEIN, KIM BROWN,
JOSHUA FRANKUM, TODD BRYAN, DINEZ WEBSTER,

Plaintiffs/Appellees,

DAIMLER AG, MERCEDES-BENZ USA, LLC,

Defendants/Appellees.

---

On Appeal from the United States District Court for the
Northern District of Georgia, Case No. 1:18-cv-03984-MHC
Hon. Mark Howard Cohen, U.S. District Judge

---

## BRIEF OF APPELLEES
## MERCEDES-BENZ USA, LLC AND DAIMLER AG

---

Stephen B. Devereaux
Madison H. Kitchens
J. Franklin Sacha, Jr.
KING & SPALDING LLP
1180 Peachtree Street N.E.
Suite 1600
Atlanta, Georgia  30309
(404) 572-4600

Troy Masami Yoshino
SQUIRE PATTON BOGGS (US) LLP
275 Battery Street
Suite 2600
San Francisco, California  94111
(415) 954-0200

Counsel for Appellees Daimler AG and Mercedes-Benz USA, LLC

*Emily Pinon v. Robert Ponzio*, No. 21-14503

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1 and 28-1(b), counsel for Defendants-Appellees Mercedes-Benz USA, LLC and Daimler AG (now known as Mercedes-Benz Group AG) hereby certifies that the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case on appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. Acuna, Alex, Interested Party-Appellant

2. Bartlett, Caroline F., Counsel for Interested Parties-Appellants

3. Bartlett, Taylor C., Counsel for Plaintiffs-Appellees

4. Brown, Kim, Plaintiff-Appellee

5. Bryan, Todd, Plaintiff-Appellee

6. Calamusa, Steven G., Counsel for Interested Parties-Appellants

7. Caplan Cobb LLP, Counsel for Interested Parties-Appellants

8. Caplan, Michael A., Counsel for Interested Parties-Appellants

9. Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C., Counsel for Interested Parties-Appellants

10. Cecchi, James E., Counsel for Interested Parties-Appellants

*Emily Pinon v. Robert Ponzio*, No. 21-14503

11. Cohen, Alexander C., Counsel for Interested Parties-Appellants

12. Cohen, The Honorable Mark H., District Judge, United States District Court for the Northern District of Georgia

13. Daimler AG (now known as Mercedes-Benz Group AG), Defendant-Appellee

14. Davidson, Stuart A., Counsel for Interested Parties-Appellants

15. Dearman, Mark J., Counsel for Interested Parties-Appellants

16. Devereaux, Stephen B., Counsel for Defendants-Appellees

17. Dwoskin, Eric, Counsel for Interested Parties-Appellants

18. Frankum, Joshua, Plaintiff-Appellee

19. Garrison, W. Lewis, Jr., Counsel for Plaintiffs-Appellees

20. Gordon & Partners, P.A., Counsel for Interested Parties-Appellants

21. Gordon, Robert E., Counsel for Interested Parties-Appellants

22. Grossi, Prof. Simona, *Amicus Curiae*

23. Heninger Garrison Davis, LLC, Counsel for Plaintiffs-Appellees

24. Jackson & Tucker, PC, Counsel for Plaintiffs-Appellees

25. Jackson, Stephen K., Counsel for Plaintiffs-Appellees

26. King & Spalding LLP, Counsel for Defendants-Appellees

27. Kitchens, Madison H., Counsel for Defendants-Appellees

28. Klein, Gary C., Plaintiff-Appellee

*Emily Pinon v. Robert Ponzio*, No. 21-14503

29. Knapp, Eric Jonathan, Counsel for Defendants-Appellees

30. Lynch, Travis E., Counsel for Plaintiffs-Appellees

31. Madsen, Brian, Interested Party-Appellant

32. Mann, Dara D., Counsel for Defendants-Appellees

33. McDonough, James F., Counsel for Plaintiffs-Appellees

34. Mercedes-Benz USA, LLC, Defendant-Appellee

35. Miller, Jonathan R., Counsel for Plaintiffs-Appellees

36. Montgomery, Vanessa M., Interested Party-Appellant

37. Mull, Robert, Interested Party-Appellant

38. Nelthrope, Hadiya, Interested Party-Appellant

39. O'Brien, James A., Counsel for Interested Parties-Appellants

40. Parker, Frederick J., Interested Party-Appellant

41. Pearsall, Nancy, Plaintiff-Appellee

42. Pinon, Emily, Plaintiff-Appellee

43. Ponzio, Robert, Interested Party-Appellant

44. Reinke, Adam, Counsel for Defendants-Appellees

45. Rice, David M., Counsel for Defendants-Appellees

46. Robbins Geller Rudman & Dowd LLP, Counsel for Interested Parties-
    Appellants

47. Sacha, J. Franklin, Jr., Counsel for Defendants-Appellees

*Emily Pinon v. Robert Ponzio*, No. 21-14503

48. Salgado, Samuel, Interested Party-Appellant

49. Sawyer, Maxwell H., Counsel for Interested Parties-Appellants

50. Sobol, Thomas M., Counsel for *Amicus Curiae* Professor Simona Grossi

51. Squire Patton Boggs (US) LLP, Counsel for Defendants-Appellees

52. Waddell, T. Brandon, Counsel for Interested Parties-Appellants

53. Wilens, Douglas, Counsel for Interested Parties-Appellants

54. Williams, Daniel G., Counsel for Interested Parties-Appellants

55. Yoshino, Troy Masami, Counsel for Defendants-Appellees

Defendant and Appellee Mercedes-Benz USA, LLC is a Delaware limited liability company whose sole member is Daimler North America Corp., a subsidiary of Mercedes-Benz Capital Nederland B.V., a Dutch Company, whose parent company is Mercedes-Benz Group AG, a publicly held German Aktiengesellschaft.

Defendant and Appellee Daimler AG has now changed its name to Mercedes-Benz Group AG.  Mercedes-Benz Group AG (f/k/a Daimler AG) is a publicly held German Aktiengesellschaft traded on the Frankfurt Stock Exchange with stock symbol "MBG."  Mercedes-Benz Group AG does not have a parent corporation, and no publicly held corporation owns 10% or more of Mercedes-Benz Group AG's stock.

*Emily Pinon v. Robert Ponzio*, No. 21-14503

Dated:  May 9, 2022

Respectfully submitted,


/s/ Troy Masami Yoshino
Troy Masami Yoshino

*Counsel for Appellees*
*Daimler AG and Mercedes-Benz USA, LLC*

## STATEMENT REGARDING ORAL ARGUMENT

Appellants are challenging a type of class action settlement that has been approved for decades by district courts across the country, including in this Circuit, in cases alleging consumer product defects, especially for motor vehicles. In such settlements, the Class is typically offered an extended warranty that covers repairs for manifestation of the alleged issue, usually with age and use/mileage restrictions that reduce warranty coverage over time until it ultimately expires. If the Court is inclined to question the legality of these ubiquitous settlements, or whether the district court abused its discretion in approving this particular such settlement, Defendants would ask for the opportunity to orally address any concerns the Court might have.

# TABLE OF CONTENTS

**Page**

SUBJECT MATTER AND APPELLATE JURISDICTION ............................ viii

I. INTRODUCTION ................................................................................1

II. STATEMENT OF ISSUE PRESENTED ...................................................3

III. STATEMENT OF THE CASE ..............................................................3

    A. The Class Action Complaints................................................3

    B. The Settlement Negotiations and Agreement-in-Principle .................5

    C. The Ponzio Objectors' Involvement .....................................8

    D. Preliminary Approval, Class Notice, and Claims for Reimbursement............................................................9

    E. The Fairness Hearing, Final Order, and Judgment ...........................10

    F. This Appeal .....................................................................11

IV. STANDARD OF REVIEW....................................................................12

V. SUMMARY OF ARGUMENT................................................................13

VI. ARGUMENT........................................................................................16

    A. Objectors' Concession Leaves Them with Little to Argue on Appeal............................................................................16

    B. Objectors' Core Argument That Most of the Class "Received Nothing" Misunderstands the Nature of Extended Warranty Settlements ....................................................................18

        1. An Extended Warranty Is a Benefit.........................................18

        2. Courts Regularly Approve Similar Class Action Settlements That Provide Extended Warranties for Consumer Product Defect Claims.............................................26

        3. Plaintiffs' Legal Authority Is Distinguishable.........................28

ii

## TABLE OF CONTENTS
### (continued)

**Page**

4.    The District Court Did Not Abuse Its Discretion in Rejecting Objectors' Argument That This Settlement Had to Provide for Alleged Diminution-in-Value ..................30

5.    The District Court Correctly Pointed Out That Class Members Who Truly Thought They Could Do Better Than This Well-Received Settlement Could Opt Out ............34

C.    Objectors' Remaining Arguments Fall with Their Argument That the Settlement Was Inadequate ....................................................37

1.    The District Court Engaged in the Analysis Required to Determine That This Settlement Was Fair, Reasonable, and Adequate..............................................................................37

2.    The District Court Did Not Abuse Its Discretion in Rejecting Objectors' Arguments That There Were Indicia of Collusion and Reverse Auction ...........................................43

3.    The District Court Did Not Abuse Its Discretion in Finding No Fundamental Conflicts of Interest ........................45

4.    The Settlement Is Not a "Coupon Settlement" ........................51

VII.    CONCLUSION .......................................................................52

# TABLE OF AUTHORITIES[*]

**Page(s)**

**Cases**

*Aarons v. BMW of N. Am., LLC*,
    2014 U.S. Dist. LEXIS 118442 (C.D. Cal. Apr. 29, 2014) ................................23

*Alin v. Honda Motor Co.*,
    2012 U.S. Dist. LEXIS 188223 (D.N.J. Apr. 12, 2012) ........................23, 27, 52

*Amchem Prod. Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................51

*Amin v. Mercedes-Benz USA, LLC*,
    2020 U.S. Dist. LEXIS 167395 (N.D. Ga. Sept. 11, 2020) ..............17, 18, 26, 27

*Asghari v. Volkswagen Group of Am., Inc.*,
    2015 U.S. Dist. LEXIS 188824 (C.D. Cal. May 29, 2015) ................................33

*Ault v. Walt Disney World Co.*,
    692 F.3d 1212 (11th Cir. 2012) ....................................................................46, 47

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ................................................................15, 31, 38

*Berman v. GM LLC*,
    2019 U.S. Dist. LEXIS 200947 (S.D. Fla. Nov. 15, 2019) ..........................21, 26

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ..........................................................................................21

*Bonner v. City of Prichard*,
    661 F.2d 1206 (11th Cir. 1981) (en banc) ........................................................24

*Carter v. Forjas Taurus, S.A.*,
    701 Fed. Appx. 759 (11th Cir. 2017) ...........................................................19, 24

*Cotton v. United States Pipe & Foundry Co. Code By-Products Plant*,
    559 F.2d 1326 (5th Cir. 1977) ..........................................................................24

---

[*] Authorities upon which we chiefly rely are marked by asterisks.

iv

## TABLE OF AUTHORITIES
(continued)

Page(s)

*In re CP Ships Ltd. Sec. Litig.*,
   578 F.3d 1306 (11th Cir. 2009) ...................................................31, 35

*Day v. Persels & Assocs.*
   729 F.3d 1309 (11th Cir. 2013) ...........................................................24

*Dewey v. Volkswagen Aktiengesellschaft,*
   681 F.3d 170 (3d Cir. 2012) ..........................................................48, 49

*Eisen v. Porsche Cars N. Am, Inc.*,
   2014 U.S. Dist. LEXIS 14301 (C.D. Cal. Jan. 30, 2014).......................26, 32, 35

*In re Equifax Inc. Customer Data Security Breach*,
   999 F.3d 1247 (11th Cir. 2021) .............................................12, 31, 46

*Faught v. American Home Shield Corp.*,
   668 F.3d 1233 (11th Cir. 2012) ...........................................................35

*Figueroa v. Sharper Image Corp.*,
   517 F. Supp. 2d 1292 (S.D. Fla. 2007) .................................................52

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ...................................................................50

*Greco v. Ginn Development Co.*,
   2015 Fed. Appx. 628 (11th Cir. 2015)...................................................36

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................................31

*Henderson v. Volvo Cars of N. Am., LLC*,
   2013 U.S. Dist. LEXIS 46291 (D.N.J. Mar. 22, 2013) .....................26

*Holmes v. Continental Can Co.*,
   706 F.2d 1144 (11th Cir. 1983) ..............................................27, 50, 51

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Johnson v. NPAS Solutions, Inc.*,
  975 F.3d 1244 (11th Cir. 2020) ...................................................................11, 40

*Keil v. Lopez*,
  862 F.3d 685 (8th Cir. 2017) ..........................................................................26

*Kincade v. General Tire & Rubber Co.*,
  635 F.2d 501 (11th Cir. 1981) ....................................................................24, 34

*Marshall v. National Football League*,
  787 F.3d 502 (8th Cir. 2015) .....................................................................21, 24

*Milligan v. Toyota Motor Sales, USA, Inc.*,
  2012 U.S. Dist. LEXIS 189782 (N.D. Cal. Jan. 6, 2012)............................26, 32

*Mirfasihi v. Fleet Mortgage Corp.*,
  356 F.3d 781 (7th Cir. 2004) .....................................................................29, 30

*Mirfasihi v. Fleet Mortgage Corp.*,
  450 F.3d 745 (7th Cir. 2006) .....................................................................29, 30

*Molski v. Gleich*,
  318 F.3d 937 (9th Cir. 2003) ...............................................................28, 29, 30

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)........................................................................................50

*Ponzio v. Mercedes-Benz USA, LLC*,
  No. 1:18-CV-12544 (D.N.J.) ....................................................................*passim*

*Prado-Steiman v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) .......................................................................46

*In re Prudential Ins. Litig.*,
  148 F.3d 283 (3d Cir. 1998) ............................................................................36

# TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. &*
  *Prod. Liab. Litig.*,
  997 F.3d 1077 (10th Cir. 2021) ...................................................20, 24

*Sapuppo v. Allstate Floridian Ins. Co.*,
  739 F.3d 678 (11th Cir. 2014) .........................................................17

*Shafer v. Timmons*,
  283 So. 2d 609 (Ala. Civ. App. 1973) ..............................................20

*Sharp Farms v. Speaks*,
  917 F.3d 276 (4th Cir. 2019) ...........................................................50

*Sterling v. Stewart*,
  158 F.3d 1199 (11th Cir. 1998) ...................................................39, 45

*Thomas v. Cooper Lighting, Inc.*,
  506 F.3d 1361 (11th Cir. 2007) ........................................................42

*Thompson v. Metro. Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) ........................................................31

*Vaughn v. Am. Honda Motor Co.*,
  627 F. Supp. 2d 738 (E.D. Tex. 2007)..............................................32

*In re Volkswagen & Audi Warranty Extension Litig.*,
  89 F. Supp. 3d 155 (D. Mass. 2015)............................................20, 42

*Warner v. Toyota Motor Sales, U.S.A., Inc.*,
  2017 U.S. Dist. LEXIS 77576 (C.D. Cal. May 21, 2017)..................33

## Other Authorities

Federal Rules of Civil Procedure
  Rule 12(b)(6)......................................................................................4
  Rule 23 .......................................................................................*passim*
  Rule 54(b) .......................................................................................11

## SUBJECT MATTER AND APPELLATE JURISDICTION

Appellees agree with the statement regarding Subject Matter and Appellate Jurisdiction set forth on page xi of the Initial Brief of Appellants with the following clarification. Because the district court "retains continuing jurisdiction over all matters relating to the administration, enforcement, and interpretation of the Settlement Agreement, the payment of attorney's fee and expenses, and of the Final Order and Judgment," that court, finding "no just reason for delay," instructed the clerk to immediately enter the Judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. *See* D.E.126/3-4.

## I.     INTRODUCTION

This appeal arises from a fair and reasonable class action settlement of hotly disputed allegations that certain Mercedes-Benz vehicles have paint issues. Defendants Daimler AG and Mercedes-Benz USA, LLC denied the existence of a defect and defeated many of Plaintiffs' claims for relief by motion.  Nevertheless, following two years of active litigation and mediation before a retired federal judge, Defendants agreed to settle the claims of the Class by providing what was effectively an extended warranty covering paint issues for up to 15 years or 150,000 miles on every Class Vehicle.

Importantly, and what Objectors largely ignore, while conventional warranties only cover future repairs, this warranty also reimburses for past repairs and even for past claims that were denied, all in the same 15-year/150,000-mile time period.  Hence, every Class Member who ever owned a Class Vehicle within the extended warranty period received warranty coverage.  This includes those who no longer own or lease their Class Vehicles, those whose paint was never damaged, and those who chose not to repair any such damage.  The district court did not abuse its discretion when it approved this generous settlement of contested paint allegations as fair, reasonable, and adequate.

Of 168,817 potential Class Members sent notice of the Settlement, only 10 chose to opt out, and there were just 10 timely Objectors, most of whom are

Appellants here.  The Objectors are all represented by the same law firms that filed a parallel class action in New Jersey.  Clearly frustrated they were not lead counsel for both lawsuits, these counsel claim they could have secured a better settlement for the Class by demanding recovery for alleged diminution-in-value, even though the vast majority of Class Vehicles have experienced no paint damage.  The district court properly concluded that class settlements are neither unreasonable nor unfair merely because they release speculative claims for diminished value, noting that courts overwhelmingly approve such class settlements.

Although Objectors purport to raise four issues on appeal, most of their arguments circle back to their false contention that "80% [of the Class] are entitled to no benefits under the settlement."  Initial Brief of Appellants (IAB) at 1.  Rejecting that contention, the district court properly considered the factors set out in Rule 23 and by this Circuit to conclude that the named plaintiffs and their counsel negotiated a Settlement that benefitted the Class as a whole.

The district court followed numerous courts across the country approving similar extended warranty settlements in automotive and other consumer product class actions because they represent a fair and reasonable way to handle what are essentially claims that a product should have lasted longer than it did.  The district court did not abuse its discretion in doing so, and its judgment approving this Settlement should be affirmed.

## II.    STATEMENT OF ISSUE PRESENTED

Did the district court abuse its discretion in approving a settlement resolving claims involving motor vehicle paint where defendants agreed to extended warranty-type coverage for the alleged issue for every Class Vehicle, covering both past and future repairs, with the percentage of Defendants' payment for repairs reduced, and eventually ending, as the Vehicles age?

## III.    STATEMENT OF THE CASE

### A.    The Class Action Complaints

The district court's Final Order sets out the relevant factual and procedural background for this appeal.  *See* D.E.125/2-13.[1]  Defendants will therefore only summarize it here.

On August 21, 2018, Plaintiff Emily Pinon filed her initial class action complaint in the district court alleging that Mercedes-Benz vehicles painted with 590 Mars Red paint (Class Vehicles) had a latent defect that could cause the paint to "microblister, peel, or bubble," or simply "fade."  D.E.125/4-5; D.E.1.  Defendants, Appellees here, are Daimler AG,[2] the manufacturer of the vehicles at issue, and

---

[1] Defendants will follow Appellants' form for record citations, with "D.E." referring to Docket Entry, followed by the Docket Entry number and, where appropriate, a backslash followed by page numbers within that document.

[2] As stated in the Corporate Disclosure Statement, Daimler AG is now known as Mercedes-Benz Group AG.  Because this company was known as Daimler AG throughout the district court proceedings below, to avoid confusion it will continue to refer to itself as Daimler AG for purposes of this appeal.

Mercedes-Benz USA, LLC, the U.S. distributor of those vehicles. D.E.125/2; D.E.1. The complaints were amended three times, adding additional plaintiffs and claims. D.E.125/3-4; D.E.7; D.E.16; D.E.55. The complaints consistently sought to certify a nationwide class as well as alternative sub-classes for certain individual states. D.E.125/3-4; D.E.1/26; D.E.7/30; D.E.16/69; D.E.55/70-71.

Defendants denied the Vehicles were defective, and filed a Rule 12(b)(6) motion to dismiss all of the claims for relief in the Second Amended Complaint. D.E.125/4; D.E.18; D.E.70-1/10. On November 4, 2019, the district court issued a lengthy order in which it granted much of Defendants' motion, but left some claims standing. D.E.125/4; D.E.25. Plaintiffs then filed a Third Amended Complaint. D.E.125/5; D.E.55.

Plaintiffs and Defendants engaged in active discovery and put their experts to work inspecting vehicles and developing opinions during the roughly one-year period between denial of the motion to dismiss and Plaintiffs initiating settlement discussions in September 2020. D.E.125/5; D.E.14; D.E.34; D.E.35; D.E.48-1/8-10; D.E.70/15-20; D.E.70-5/5-9. As Defendants made clear in the meantime, in their motion practice and answering Plaintiffs' complaints, they were prepared to litigate their strong defenses to Plaintiffs' claims, including, among other things, that the paint damage at issue is caused by environmental factors rather than a defect, that Plaintiffs have no valid claims under common law or various consumer protection

statutes, and that Plaintiffs have no plausible claim to recover diminution-in-value in the vast majority of individualized circumstances, *e.g.*, where Class Vehicles never exhibited paint damage or were too old, or where the alleged risk of future paint damage was too remote at the time of purchase to have a material impact on the vehicle's value.  D.E.18; D.E.57; D.E.58; D.E.116/32-33.  They also maintained that certification of this class for trial, whether on behalf of a nationwide class or state subclasses, would not be possible given the inherently individualized nature of the paint damage claims, including complex issues of causation and damages. D.E.57; D.E.58; D.E.116/33-34.

## B.      The Settlement Negotiations and Agreement-in-Principle

Nevertheless, when Class Plaintiffs eventually proposed discussing settlement, Defendants were willing to look for an acceptable compromise. D.E.70/20; D.E.116/25.  After two months of negotiations, the parties mediated the dispute for three days with former United States District Court Judge James F. Holderman in November 2020.  D.E.125/5; D.E.70-3.  The result was an agreement-in-principle to settle the dispute on a nationwide basis (the Settlement).  D.E.125/6; D.E.70-1.  Objectors accurately describe the terms of the Settlement (IAB at 13-15); what they misunderstand, and therefore mischaracterize, are its benefits.

Under the Settlement – which the district court also accurately summarized in its Final Order – every Class Vehicle acquires a 15-year or 150,000-mile (whichever

comes first) warranty applicable to its paint.    D.E.125/6-10; D.E.70-1/12-17.

Otherwise, the Vehicles have only the standard 4-year/50,000-mile warranty.

D.E.18-2/3/23; D.E.18-4/3/18; D.E.18-5/3/18; D.E.19-1/3/19/22; D.E.116/31.  That

standard warranty will not cover most paint damage because paint damage within

the warranty period ordinarily is caused by environmental factors, such as sap, bird

droppings, road debris, and the like.  *Id.*  Under the extended warranty, however,

Defendants agree to pay all or a portion – depending on the Vehicle's age and

mileage – of the cost of repairing any paint damage, defined as "peeling, flaking,

bubbling, fading, discoloration, and/or poor adhesion" unless it "is clearly unrelated

to the alleged 590 Mars Red Paint Defect."  D.E.70-1/9/31; D.E.125/7-9.

It is important to understand that, while motor vehicle warranties normally

cover only future repairs, the extended warranty offered by the Settlement also

provides reimbursement for past repairs.  D.E.125/7-8; D.E.70-1/12-14.  In addition,

the Settlement provides compensation even for Vehicles beyond the extended

warranty period if the owner sought to have the Vehicle repaired by an authorized

service center during that period and was denied.  D.E.125/10; D.E.70-1/15-16.

Every Class Member who ever owned a Class Vehicle with fewer than 15

years or 150,000 miles on it received this extended warranty.  Objectors did not

prove there is any Class Member who did not receive the extended warranty.  Indeed,

there may well be no such person because the case settled in 2020 and, as the district

court noted, the 2004 model year was the first in which some types of Class Vehicles had 590 Mars Red paint, whereas the great majority were manufactured later. D.E.125/2 n.1; D.E.70-1/10.

As the district court explained, and the Settlement Agreement makes clear, repairs for the paint damage at issue will normally only require repainting the affected section or panel of the Vehicle. D.E.125/33 (noting that "'qualified' repairs are limited to 'refinishing of affected areas only,'" citing Settlement Agreement §§ 1.26, 1.27 (D.E.70-1/8)). However, as the district court also explained, "[t]here is no limit to the number of claims or total amount of money that Mercedes-Benz will pay to reimburse qualified past repairs, except for the per claim cap on claims performed by Independent Service Providers." D.E.125/8. Hence, for example, if different areas of the Vehicle are affected at different times, the same Vehicle is entitled to multiple repairs.

As noted, Objectors do not prove there were Class Members who purchased their Vehicles after they were already 15 years old or had 150,000 miles on them, but even if there were, any claim that their old and/or well-used Vehicles first suffered paint damage caused by a latent defect rather than environmental factors, including long exposure to weather and wear, would be speculative at best. *See, e.g.*, D.E.92-2/8 (expert Bowron noting that paint damage is common on vehicles more than 15-years-old); *see also* D.E.116/7/13/34-35. Any such person purchased his or her

- 7 -

Vehicle long after the original warranties expired and would have no reasonable expectation that Defendants (or anyone else) would pay for repainting.

## C.    The *Ponzio* Objectors' Involvement

While this matter was pending in the Northern District of Georgia, another group of plaintiffs and their counsel were pursuing a parallel class action against Defendants in the District of New Jersey.  *Ponzio v. Mercedes-Benz USA, LLC*, No. 1:18-CV-12544 (D.N.J.).  D.E.125/26-27; D.E.89/3.  That action was filed around the same time, and it was premised on the same allegations.  *Id.*  Despite efforts by the two sets of plaintiffs' counsel to coordinate, including encouragement from both courts, they were unable to do so.  D.E.89/3-4.  The reason is not hard to understand: as Objectors admit, their counsel insisted that *Pinon* counsel dismiss this action and re-file it in New Jersey and allow *Ponzio* counsel to take the lead on both matters. IAB at 11-12.  That obviously was a non-starter.

Once *Ponzio* counsel learned there was a proposed Settlement in this case, they moved to intervene.  D.E.72.  One of their primary arguments for intervention was that the proposed Settlement was inadequate because it did not include diminution-in-value damages.  D.E.72/9-10/27-29; D.E.81/9-10/29-30.  On March 29, 2021, the district court issued a lengthy order denying the motion to intervene, explaining why it was not required to allow intervention and did not choose to exercise its discretion to do so, noting it was transparent that the *Ponzio* plaintiffs

were merely trying to undo the Settlement and assume control of the class litigation. D.E.89/10 ("In fact, it is precisely the unraveling of the proposed settlement that Movants seek."). The district court found the putative class was adequately represented by the *Pinon* Plaintiffs and their counsel. D.E.89/14-16.

**D.    Preliminary Approval, Class Notice, and Claims for Reimbursement**

On the same day that it denied the *Ponzio* plaintiffs' motion to intervene, the district court granted the parties' Motion for Preliminary Approval. D.E.90. That order explained in detail why the proposed Settlement Class met the requirements for certification and why the proposed Settlement was fair, reasonable, and adequate under Rule 23 and this Circuit's precedent. *Id*.

The parties then prepared and disseminated Notice of the Settlement. Notice was sent to 168,817 potential Settlement Class Members. D.E.125/10-13; D.E.100-1. There is no issue on appeal as to the adequacy of this class notice. Only 10 persons timely opted out, and another 12 objected, including two who were untimely but were considered anyway. D.E.125/24-25/27-28. Everyone else is apparently prepared to accept this generous settlement regardless of the age and mileage on their Class Vehicles.

Following notice, Class Members began filing claims for reimbursement for past repairs. D.E.125/39-40; D.E.100-1/9. Defendants will not begin actually paying those claims, however, until the "Effective Date" of the Settlement, which

requires favorable resolution of these appellate proceedings.  D.E.70-1/6/24.  Class Members who experience paint damage after the Effective Date of the Settlement can submit claims to have their Vehicles repainted at authorized, but independent, service centers.  D.E.70-1/14-17.  If the Settlement fails to become effective, "the Settling Parties will be restored to their respective positions in the Litigation as of November 9, 2020."  D.E.70-1/24.

### E.    The Fairness Hearing, Final Order, and Judgment

All of the timely objections were filed either by the *Ponzio* plaintiffs or with the apparent assistance of *Ponzio* counsel.  D.E.125/26-28.  The *Ponzio* Objectors presented the district court with voluminous documents objecting to the Settlement.  *See* D.E.96 plus 20 declarations and exhibits numbered D.E.96-1 through D.E.96-20.  Both sides submitted expert reports and opinions.  *Id*.; D.E.90-2.

On August 30, 2021, the district court held a fairness hearing on the objections.  D.E.116.  The district court considered all of the written materials and oral testimony and posed pointed questions to all sides at the fairness hearing.  D.E.116/6, *passim*.  The district court ultimately suggested that the Plaintiffs' actuarial expert rework some of his numbers valuing the Settlement, and offered Objectors an opportunity to file their own supplemental papers in response.  D.E.116/18-20/145.  Both did so.  D.E.117; D.E.121.

On November 30, 2021, after taking into consideration this supplemental information, the district court issued its Final Order certifying the Settlement Class and approving the Settlement as fair, reasonable, and adequate. D.E.125. The 58-page Final Order once again worked through all of the required factors for evaluating certification and approval, and then devoted a substantial portion to analyzing, and ultimately rejecting, Objectors' arguments against the Settlement. D.E.125/1-44. The final section of the Order analyzed and ultimately approved the requested Class Counsel attorneys' fees and costs (which Objectors do not challenge on appeal). D.E.125/44-54. The court denied without prejudice the requested service awards to the Representative Plaintiffs under *Johnson v. NPAS Solutions, Inc.*, 975 F.3d 1244 (11th Cir. 2020), with the possibility of granting such awards if *Johnson* were to be reversed *en banc*. D.E.125/54-56.

Retaining authority to administer the ongoing claims process, which was already underway, the district court entered Judgment under Rule 54(b). D.E.126.

### F.    This Appeal

The *Ponzio* Objectors filed this appeal. Because there are no other objectors appealing the Judgment, this Brief will simply refer to them as "Objectors." The district court's well-reasoned Final Order speaks for itself, and Defendants will not summarize it further here. The substance of the Order, as well as the court's

reasoning in collateral orders and at the fairness hearing, will be discussed in more detail below as necessary to address Objectors' attacks on appeal.

## IV.   STANDARD OF REVIEW

As this Court held just a year ago: "We review an order approving a class action settlement for abuse of discretion.  And because determining the fairness of the settlement is left to the sound discretion of the trial court, we will not overturn its decision absent a clear showing of abuse of that discretion."  *In re Equifax Inc. Customer Data Security Breach*, 999 F.3d 1247, 1273 (11th Cir.) (internal quotation marks omitted), *cert. denied*, 142 S. Ct. 431 (2021).

The Court went on to explain: "This degree of deference to a decision approving a class action settlement makes sense.  Settlements resolve differences and bring parties together for a common resolution.  Settlements also save the bench and bar time, money, and headaches.  As such, there is a strong judicial policy favoring settlement."  *Id.*

In addition, while Objectors' Statement of Issues does not challenge the district court's certification of the Settlement Class, to the extent their arguments can be read to suggest such a challenge, and the Court is willing to entertain it, the Court will "review a class certification ruling for abuse of discretion."  *Id*. at 1275.

## V.    SUMMARY OF ARGUMENT

Objectors' central premise – that most of the Settlement Class receives no benefit from the Settlement – is incorrect.  As the district court recognized, the Settlement offers an extended warranty on all Class Vehicles for paint issues applicable to anyone who ever owned a Class Vehicle during the warranty period – in the past, present, or future.  A warranty, like any insurance coverage, has independent value because it provides an enforceable right to recover if alleged paint issues develop and eligibility requirements are otherwise met.  As a consequence, Class Members benefitted from this Settlement through the right to seek reimbursement for past repairs or future repairs, even if they did not or do not ever actually make a warranty claim.

The extended warranty expires at 15 years or 150,000 miles, and the record does not reflect there is anyone who did not receive the warranty because they bought a car that was already outside the warranty period.  And even if there is, the district court did not abuse its discretion in concluding that, while such persons were properly included as Class Members because all their claims alleged the exact same defect, those individuals with old and well-used cars would not merit any significant legal remedy for their paint issues.  Nor did the court abuse its discretion in approving the Settlement even though some Class Members who experienced paint issues might nonetheless be ineligible because they chose not to seek repairs.

- 13 -

Objectors concede that every class member need not benefit equally – *or at all* – from a class settlement, and they have abandoned their argument that a 50% or 25% recovery for older Vehicles was inadequate. Objectors' authority involving large groups of class members who truly "received no benefit" from a class settlement is inapplicable. And as the district court pointed out, those who might disagree with any aspect of this Settlement can opt out. Only 10 did so here (and only 10 more timely objected), out of 168,817 individuals who were sent notice.

Nor did the district court abuse its discretion in rejecting Objectors' remaining arguments as to the adequacy of the Class Representatives and their Counsel. There were no indicia of collusion or reverse auction between Class Counsel and Defendants; Objectors' real beef is that they were shut out of settlement negotiations after insisting that their parallel action in New Jersey become the lead case and they, instead of Class Counsel, become lead counsel. Objectors' contention that this was a "coupon" settlement is also without merit; Class Members with paint damage received either full or partial reimbursement for past repairs or the full or partial cost of future repairs at an authorized but independent body shop.

Finally, the district court did not abuse its discretion in rejecting Objectors' argument that the Class Representatives and Counsel were inadequate because they had conflicts of interest. There were no conflicts of interest here pertinent to this Settlement because every Class Vehicle was alleged to have the same inherent

- 14 -

defect, and the same extended warranty offered by the Settlement applied to every Class Vehicle. Accordingly, that some paint claims might only be covered at 50% or 25%, or in some cases not at all because the warranty had expired, was equally true for every Class Vehicle. In addition, a single Class Member might make multiple claims, presumably involving different sections of his or her Vehicle. Hence, that Class Representatives had Vehicles currently covered at 100% does not mean they are atypical or inadequate to negotiate this Settlement, because, among other things, they could have later, additional claims covered at less than 100%, or possibly not at all, by the time they made such claims.

Objectors refuse to accept that "compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Here, Defendants agreed to pay for paint damage even though they steadfastly denied there was a defect, pointed out the extreme difficulty Class Members would have attributing the cause of paint damage in older vehicles to any such defect (as opposed to environmental factors), and prevailed against many of Plaintiffs' claims on the pleadings. By the same token, Class Members compromised some of their remaining claims and settled for less than 100% of everything they sought. This included wisely abandoning diminution-in-value claims, which is what Objectors criticized most vociferously below. But those claims, of dubious value especially where paint is concerned, and almost impossible to prove on a classwide basis, were

reasonably exchanged for the very real benefits of an extended warranty designed to address the primary concern of most Class Members – getting peeling paint repaired.

All the same arguments apply to the *Amicus Curiae* Brief of Professor Simona Grossi, which will not otherwise be addressed separately in this Brief. Professor Grossi's brief for the most part mimics the arguments of Objectors because it too relies on the same false premise that most of the Class Members received no benefit from this Settlement. Her conclusion that the district court approved this Settlement for improper reasons is therefore not only incorrect as a matter of fact and law, but it also disrespects the thoughtful effort district courts must devote to evaluating classwide resolutions of consumer product disputes.

The district court did not abuse its discretion in certifying this Settlement Class and approving the Settlement as fair, reasonable, and adequate. Its judgment should be affirmed in full.

## VI.    ARGUMENT

### A.    Objectors' Concession Leaves Them with Little to Argue on Appeal

Objectors have conceded away much of their challenge below. Objectors' core argument was that the Settlement was inadequate because it imposed age and mileage restrictions, including reduced payments for repainting older Vehicles at 50% or 25%, and an eventual cutoff for the extended warranty, depending on the age and mileage of the Vehicle. *See* D.E.96. Among other things, Objectors and their

experts focused heavily on the argument that it would be "irrational" for Class Members to repaint their cars if Defendants did not pay 100% of the cost. *See, e.g.*, D.E.125/31-35; D.E.116/52-55/65-70/81-82/143-44.

By contrast, Objectors now state: "Contrary to the district court's suggestion [D.E.34, 36-37], the *Ponzio* objectors do not object in general to the usage of age or mileage restrictions – or any other tiered approach – that allocate settlement benefits to class members based on the perceived strength of their claims. *See, e.g.*, *Amin* [*v. Mercedes-Benz USA, LLC*], 17-cv-01701-AT, [2020 U.S. Dist. LEXIS 167395 (N.D. Ga. Sept. 11, 2020)], D.E.63/18/19-21; D.E.112/11-13." IBA at 34. They now complain only that too many Class Members "received nothing." *Id.*

At a minimum, Objectors have by this concession abandoned their objection below that payment or reimbursement at less than 100% of the cost of repainting is inadequate. This concession was necessitated by the case they cite, *Amin v. Mercedes-Benz USA, LLC*, which approved an extended warranty settlement with similar age and mileage limitations. IAB at 34. As noted *infra* at pp. 26-27, many other courts have now approved similar settlements. Consistent with Objectors' concession, their Brief nowhere seriously attempts to resurrect the argument that every Class Member should be reimbursed at 100%. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an

appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

Moreover, Objectors' counsel conceded at the fairness hearing: "I don't think that 100 percent have to receive something" from a class settlement.  D.E.116/45.  Given these concessions, it is not clear how much Objectors have left to argue on appeal, especially given the district court's broad discretion here.

### B.    Objectors' Core Argument That Most of the Class "Received Nothing" Misunderstands the Nature of Extended Warranty Settlements

Objectors' core argument is that "[t]he settlement is fatally flawed because it releases claims for 100% of the class even though 80% are ineligible for any benefits."  IBA at 28.  This argument misunderstands the nature and value of extended warranty settlements for consumer product claims.

### 1.    An Extended Warranty Is a Benefit

Under this Settlement, every Class Vehicle received what the district court recognized "is effectively an extended warranty" to cover alleged paint issues.  D.E.125/18.  That warranty provided a benefit to every Class Member who ever owned or leased a Class Vehicle while the warranty was in effect, even if the Class Member does not currently own or lease that Class Vehicle and never needed or chose to repaint it.  Objectors never established that there were any Class Members whose Vehicles were never covered by this warranty, and the fact 590 Mars Red

- 18 -

paint was only used for about 15 years before the Settlement suggests they might have difficulty finding such persons, and especially such persons who would honestly complain about this Settlement. *See* D.E.125/2 n.1 (identifying Class Vehicles by model year). This Settlement was fair, reasonable, and adequate, regardless of whether it offered diminution-in-value damages to everyone, which is what Objectors really insist is wrong with the Settlement.

Hence, Objectors' core legal premise for attacking this Settlement is inapplicable because their core *factual* premise – that 80% of the class "received no benefit" – is simply incorrect. According to Objectors, "a settlement that releases an entire class and makes the vast majority ineligible for benefits is fundamentally flawed." IBA at 28. Even assuming this is a valid statement of law, that is simply not what this Settlement does because having an extended warranty is a benefit regardless of whether a claim is ever made against it.

For example, in *Carter v. Forjas Taurus, S.A*., 701 Fed. Appx. 759 (11th Cir. 2017), this Court affirmed the district court's approval of a class settlement in a consumer product case involving allegedly defective handguns. In describing the settlement, which offered either a cash payment under a capped fund or an extended warranty, the Court stated: "Here, we have a $30 million fund for any claims made under the cash option, as well as *the enhanced warranty, which is itself a significant tangible benefit*." *Id.* at 767 (emphasis added). The Tenth Circuit similarly

- 19 -

described the benefits of providing an extended warranty to settle class allegations concerning allegedly defective washing machines in *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077, 1094 n.20 (10th Cir. 2021), explaining: "Although the warranties may not have ultimately required payments from Samsung, warranties, like insurance, carry with them actuary value and provide consumers peace of mind. Had Samsung sold the washing machines with the now extended warranty provided as a result of the Settlement Agreement, the list price for the machines likely would have been higher." In approving settlement of a class action involving alleged defective motor vehicles by providing extended warranty coverage, the district court in Massachusetts explained: "[F]rom a consumer's perspective, a warranty against repair has value even when no repairs are claimed during the period of coverage. The fact of coverage is its own benefit…." *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 169 (D. Mass. 2015); *see also Shafer v. Timmons,* 283 So. 2d 609, 612 (Ala. Civ. App. 1973) ("We think it can be said with equal conviction that an automobile warranty has value").

As a consequence, as the district court explained in rejecting Objectors' argument that most Class Members "received nothing," every Class Member who owned or leased a Class Vehicle with this extended warranty received a benefit from this Settlement because that person was "eligible for reimbursement for qualified past

- 20 -

repairs" and "eligible for a qualified future repair."    D.E.125/33-34; *see also* D.E.116/137/139-40; *Berman v. GM LLC*, 2019 U.S. Dist. LEXIS 200947, at \*22 (S.D. Fla. Nov. 15, 2019) (consideration for the release of class members' claims under extended warranty was that "[e]very Class Member receives a new opportunity to submit claims for reimbursement of covered expenses"); *Marshall v. National Football League*, 787 F.3d 502, 509 (8th Cir. 2015) ("*All* class members receive a direct benefit from the settlement: the *opportunity* to license their publicity rights through the established Licensing Agency, as well as the payments by the NFL to the Licensing Agency.") (first emphasis in original, second added), *cert. denied,* 577 U.S. 1139 (2016); *cf. Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) ("[Class members'] right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.").

Objectors' contention that "80% [of Class Members] are ineligible for any benefit" (IAB at 28), and the numbers they use to support that contention, are therefore at best misleading.  For example, Objectors claim that, of the 168,817 people sent Notice of the Settlement, "99,702 are ineligible for future repainting because they are former owners and lessees who no longer possess their Subject Vehicles."  IAB at 13, n.3; *see also* IAB at 30-31.  Regardless of the validity of this number, Objectors' assertion ignores that the former owners and lessees were all

- 21 -

offered the opportunity to submit qualified claims for reimbursement, even if they no longer own or lease their Class Vehicle. That they chose not to repair their damaged Vehicle, or that their deadline to make claims under the terms of the Settlement (set out in the class notice) has now expired, means they have no eligible claims to make, but they received the right to make eligible claims nonetheless. D.E.125/7-8/33-34; D.E.70-1/12-14.

Objectors also assert that "another 35,397 are ineligible due to the age and mileage restrictions of the sliding scale." IAB at 13 n.3. But again, regardless of how Objectors derived this number, it ignores the likely fact that most, if not all, of these Class Members acquired their Class Vehicle *before* these Vehicles were outside of extended warranty coverage. *See* D.E.125/2 n.1 (identifying Class Vehicles by dates of production, with 2004 being the first model year for any Class Vehicle). That a Class Member might be ineligible to make a claim because their Vehicle exceeded the age or mileage limit *after* they bought it or they chose not to repaint their damaged Vehicle, or even because they did not retain proof of their repairs, does not mean they never received extended warranty coverage on their Class Vehicle covering qualified claims. Put another way, every Class Member was offered the right to make a claim for repairs as long as they met the eligibility requirements for doing so.

Tellingly, Objectors do not contend they did not receive the extended warranty. Only Objector Samuel Salgado claimed to have a vehicle beyond the extended warranty period as of 2020, because it had been driven 180,000 miles, but he bought his 2012 model vehicle in 2014, almost certainly while it was still within the extended warranty period. D.E.96-5. Nor do Objectors identify any other Class Members who failed to receive this benefit. Objectors' focus on hypothetical categories of Class Members to which they do not belong and who they cannot even prove to exist highlights the weakness of their objections. As the district court explained, "the examples offered by the *Ponzio* Objectors as to their own purported losses undercut their own objections." D.E.125/35.

In any event, the district court did not abuse its discretion in concluding that the hypothetical group of individuals who bought a 15-year-old or 150,000-mile car did not release any significant consumer claims if their paint first begins to peel after that purchase. D.E.125/34; *see, e.g.*, *Aarons v. BMW of N. Am., LLC*, 2014 U.S. Dist. LEXIS 118442, at *30 (C.D. Cal. Apr. 29, 2014) ("Age and mileage limitations are common in automotive defect cases, and reflect manufacturers' strong arguments that vehicles ordinarily fail after a number of years or miles due to wear and tear."); *accord Alin v. Honda Motor Co.*, 2012 U.S. Dist. LEXIS 188223, at *15 (D.N.J. Apr. 12, 2012) ("It was reasonable to exclude older, more traveled vehicles from coverage" in class settlement). Of course, if the paint began to peel before the

purchase and was never repaired, they presumably took that fact into account in the purchase price.

The law has long been clear, in this Circuit and elsewhere, that a class action settlement can be fair, adequate, and reasonable even if some class members obtain no monetary recovery from the settlement. *See Kincade v. General Tire & Rubber Co.*, 635 F.2d 501, 503 (11th Cir. 1981) (approving settlement providing payments to only 100 out of 500 class members); *Cotton v. United States Pipe & Foundry Co. Code By-Products Plant*, 559 F.2d 1326, 1334 (5th Cir. 1977) (rejecting "objection that the compromise must fall … because it does not insure that each class member will receive some back pay")[3]; *Carter*, 701 Fed. Appx. at 763 (approving settlement where cash payments to class members available only until cap reached); *Marshall*, 787 F.3d at 509 ("[W]e have never required that a settlement agreement specifically provide for a direct financial payment to each class member, and the mere fact that some members of a class may not receive a direct payment is not dispositive."), *cert. denied*, 577 U.S. 1139 (2016); *In re Samsung Top-Loan Washing Mach. Mktg., Sales Practices & Prods Liab. Litig.*, 997 F.3d at 1083 (approving payments to class members experiencing drain-pump failures with the washing machines only if failure occurs). *But see Day v. Persels & Assocs.* 729 F.3d 1309, 1326-28 (11th Cir.

---

[3] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981).

2013) (vacating class settlement where class members received no recovery but only because of clear error in determination that "the defendants would be unable to satisfy a judgment"). Hence, even if Objectors are correct that some Class Members received no benefit from this Settlement (or not the benefit they wanted, *e.g.*, recovery for paint damage they chose not to repair), that alone would not be a basis for rejecting it. Nor does this authority hold that those individuals must be excluded from the Settlement Class, as Objectors suggest, especially where, as here, all Class Members are making the same type of claim. *See* IAB at 34.

Finally, it does not matter to the adequacy of this type of Settlement what the current claims rate is. *See, e.g.*, IAB at 31. Defendants would have predicted it not to be very high, as they deny the alleged defect even exists. Claims rates, at least standing alone, will often not be very revealing when evaluating an extended warranty class action settlement of disputed claims. That is because claims will only be made if the alleged defect *actually manifests*. Every Class Member still benefits from the warranty because it provides them with, as Objectors themselves put it, "potential eligibility" to make a claim. IAB at 14. Objectors' mistake is in limiting that "potential eligibility" to 20 percent of the Class, rather than to all, or virtually all, Class Members. *See Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("[E]ven if 97 percent of the class did not exercise their right to share in the fund, their opportunity to do so was a benefit to them.").

> **2.    Courts Regularly Approve Similar Class Action Settlements That Provide Extended Warranties for Consumer Product Defect Claims**

Numerous courts have now approved similar extended warranty settlements for motor vehicles and other products, recognizing that, among other things, because settlements are a result of compromise, "there must be reasonable limits in any settlement, and those will vary from case to case." *Berman*, 2019 U.S. Dist. LEXIS 200947, at \*22; *see also, e.g.*, *Amin v. Mercedes-Benz USA, LLC*, 2020 U.S. Dist. LEXIS 167395, at \*6 (N.D. Ga. Sept. 11, 2020) (approving settlement that "provid[ed] the same durational period of coverage for every Class Vehicle and the same sliding scale of reimbursement or coverage percentage based on the Vehicle's age/mileage"); *Milligan v. Toyota Motor Sales, USA, Inc.*, 2012 U.S. Dist. LEXIS 189782, at \*26 (N.D. Cal. Jan. 6, 2012) ("Of course, settlement involves some line-drawing, and full compensation is not a prerequisite for a fair settlement.") (internal quotation marks omitted); *Eisen v. Porsche Cars N. Am, Inc.*, 2014 U.S. Dist. LEXIS 14301, at \*21 (C.D. Cal. Jan. 30, 2014) (rejecting objection to 10-year/130,000-mile limitation on claims and finding that "negotiations on issues such as these must by their nature include reasonably negotiated eligibility limitations."); *Henderson v. Volvo Cars of N. Am., LLC*, 2013 U.S. Dist. LEXIS 46291, at \*8, \*24-28 (D.N.J. Mar. 22, 2013) (approving settlement covering "current and former owners and lessees" and rejecting objection to the 8-year/100,000-mile cut-off for obtaining

reimbursements); *Alin*, 2012 U.S. Dist. LEXIS 188223, at \*44 (approving settlement covering "current and previous owners and lessees" and rejecting objection to 8-year/96,000-mile limitation).

These decisions make sense. Objectors acknowledge that class settlement benefits can vary among class members "based on the perceived strength of the claims." IAB at 34. And as this Court has explained, "there is no rule that settlements benefit all class members equally." *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983).

And as noted, Objectors' counsel had no choice but to admit at the fairness hearing: "I don't think that 100 percent have to receive something." D.E.116/45. As support for their arguments, they cite *Amin v. Mercedes-Benz USA, LLC*, 2020 U.S. Dist. LEXIS 167395 (IAB at 34), where the court approved an extended warranty settlement with terms very similar to those in the present Settlement. Their attempt to distinguish *Amin* as involving fewer class members who "received nothing" because of age and mileage limitations (34%, according to Objectors) concedes that some class members "receiving nothing" from a class settlement can be acceptable, in the discretion of the court. IAB at 44-45.

The law in this Circuit and elsewhere undermines Objectors' constant refrain that this Settlement is unique, and it firmly supports the district court's discretion to approve the type of settlement at issue here.

- 27 -

### 3.    Plaintiffs' Legal Authority Is Distinguishable

Because the Settlement benefits every Class Member who owned a Class Vehicle within the extended warranty period, Objectors' cases involving settlements where large numbers of class members receive nothing are easily distinguishable. Indeed, most do not involve consumer class actions.

For example, *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003), involved a Rule 23(b)(2) consent decree settling allegations that ARCO gas stations in California did not provide appropriate facilities for disabled people as required by federal and California disability laws.  The consent decree defined the settlement class as essentially every California ARCO customer who could pursue disability claims against ARCO under federal and state disability laws, and yet it offered those individuals no monetary recovery, instead requiring improvements to ARCO facilities, and *cy pres* payments to certain non-profit disability organizations.  *Id.* at 943-44. The Ninth Circuit reversed on multiple grounds, including not only because absent class members got no compensation, but also because of the lack of opt-out rights, constitutionally inadequate notice, and possible collusion where "the named plaintiff and defendants reached an agreement regarding the primary components of the consent decree within four months."  *Id.* at 951-56.

This decision is distinguishable on multiple grounds.  Most importantly for Objectors' argument regarding adequacy of this Settlement, the consent decree in

- 28 -

*Molski* provided the putative class members with no individual benefits at all, while recognizing that each class member had arguments for substantial damages. Here, the Class Members received an extended warranty on their Class Vehicles. The Ninth Circuit's other concerns with the class settlement in *Molski* are simply inapplicable here given the drastically different factual and procedural scenarios.

Objectors also cite two, similarly distinguishable Seventh Circuit decisions, both arising from the same district court action, *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781 (7th Cir. 2004), and *Mirfasihi v. Fleet Mortgage Corp.*, 450 F.3d 745 (7th Cir. 2006). That class action alleged that the defendant improperly transmitted personal information of mortgage applicants to telemarketing companies, which then used that information to sell certain of those individuals financial services they did not want. 356 F.3d at 782. The district court approved a settlement in which the latter individuals, comprising the "telemarketing class," received small monetary payments, while the larger "information-sharing class" of persons who did not buy any proffered financial services got no individual monetary recovery. *Id.* at 783. Finding numerous procedural and substantive problems with the settlement, the Seventh Circuit reversed and remanded for further consideration by the district court. *Id.* at 784-87. On remand, the district court approved a modified settlement, which the Seventh Circuit reversed and remanded once again because the "information-

sharing class" members continued to receive no individual monetary benefit. *Id.* at 750-51.

Like *Molski*, *Mirfasihi* is distinguishable because the settlement benefits inured to third parties. In the present case, by contrast, the settling parties have in fact provided a benefit directly to Class Members in the form of an extended warranty.

What the weight of authority in fact establishes, as explained above and contrary to Objectors' arguments, is that courts have routinely found it fair, reasonable, and adequate to settle consumer product defect cases by offering an extended warranty applicable to the claimed issues.

### 4. The District Court Did Not Abuse Its Discretion in Rejecting Objectors' Argument That This Settlement Had to Provide for Alleged Diminution-in-Value

Ultimately, the Objectors' real complaint about this Settlement is that it should have included recovery for diminution-in-value. IAB at 35. Indeed, this was one of the primary arguments Objectors raised against the Settlement in the district court, along with their now abandoned arguments about 50% or 25% recovery not being adequate. *See, e.g.,* D.E.72/9-10/27-29; D.E.81/9-10/29-31; D.E.96/33-36; D.E.116/52-55/65-70/81-82/143-44. Much of the district court's analysis of this Settlement was therefore necessarily devoted to those objections, as opposed to Objectors' focus now on the assertion that most of the Class received no benefit.

To begin with, Objectors' contention that the Settlement is inadequate because it arguably could have been better is not a valid basis for objecting to a class settlement. As this Court has pointed out, "[c]ompromise is the essence of settlement." *Bennett*, 737 F.2d at 986. As the Ninth Circuit elaborated: "[T]hat the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate. Settlement is the offspring of compromise." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also In re Equifax*, 999 F.3d at 1274 (though an objector "might wish for longer credit monitoring and identity theft restoration services, such quibbling with a settlement's terms is not a part of an abuse of discretion review"); *In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1318 (11th Cir. 2009) (rejecting objection to settlement "that foreign class members have potential for a greater recovery in the Canadian Actions" because, among other things, "[r]ecovery in the Canadian action remains speculative"); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 65 (S.D.N.Y. 2003) ("Contrary to the objectors' expectations, the settlement is not a wish-list of class members that the [defendant] must fulfill") (internal quotation marks omitted).

The district court did not abuse its discretion in concluding that Class Plaintiffs reasonably chose to compromise problematic diminution-in-value claims in exchange for the substantial benefits afforded by this extended warranty. D.E.125/36-37/42. Most importantly, Objectors never demonstrated how they could

possibly have proven diminution-in-value on a class-wide basis.   Among other things, myriad factors influence a vehicle's price, meaning each Class Member would need to provide evidence of his or her damages attributable solely to the alleged defect, as opposed to other variables such as environmental factors.   In addition, a settlement based on diminution-in-value would have to take into account that the Class Vehicles included many different vehicle models of very different value sold new and used in different markets across the country.   And even if Objectors could prove diminished value damages on a class-wide basis, they still could not show that the Settlement's failure to include such damages renders it unfair or inadequate given the reasonable compromise afforded by the extended warranty.

As the district court recognized, D.E.125/36-37, numerous courts approving extended warranty class action settlements reasonably have "rejected the notion that class action settlements must provide compensation for diminished value." *Eisen*, 2014 U.S. Dist. LEXIS 14301, at *22-*23 (collecting cases); *see also, e.g.*, *Milligan*, 2012 U.S. Dist. LEXIS 189782, at *27 (rejecting objection to settlement and holding that "it was reasonable for the parties to focus on enhanced warranty benefits and the provision of monetary compensation for class members who could document out-of-pocket repair costs"); *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 749 (E.D. Tex. 2007) (explaining that "plaintiffs in diminution in value cases have faced significant hurdles when attempting to prove such claims," and as a result it

"does not make the settlement unfair or unreasonable that the class has to release speculative claims for diminution in value"); *Asghari v. Volkswagen Group of Am., Inc.*, 2015 U.S. Dist. LEXIS 188824, at \*74-\*76 (C.D. Cal. May 29, 2015) (rejecting objection that the "settlement is unfair because it does not compensate class members for the diminution in value of the vehicles attributable to the purported oil consumption defect"); *Warner v. Toyota Motor Sales, U.S.A., Inc.*, 2017 U.S. Dist. LEXIS 77576, at \*26 (C.D. Cal. May 21, 2017) (pointing out that objections to automotive settlements based on lack of diminished value damages "fail to take into account the difficulties of establishing classwide diminution in value damages") (internal quotation marks omitted).  The district court here similarly rejected the need to include such claims, noting, among other things, the practical challenges of trying to convince jurors to award diminution-in-value damages for paint that never failed.  D.E.116/137-38.

In short, this type of extended warranty settlement is not unfair or inadequate because it does not compensate Class Members for the allegedly diminished value of their Vehicles caused by an alleged latent defect that never manifests.  The district court did not abuse its discretion in concluding "that the proposed Settlement Agreement provides the best practical means of providing relief to the Class," and that "[t]he fact that the amount of damages is less than the damages that some

members of the Class might hope to recover at trial does not present an obstacle to approval of the Settlement Agreement." D.E.125/21/24.

> ### 5. The District Court Correctly Pointed Out That Class Members Who Truly Thought They Could Do Better Than This Well-Received Settlement Could Opt Out

The district court properly noted that "only a miniscule number of objectors" – only 10 timely, all apparently assisted by *Ponzio* counsel – complained about the Settlement, and only 10 Class Members opted out. D.E.125/24. Notice was sent to 168,817 potential Class Members. D.E.125/11. The district court did not abuse its discretion in concluding that this Settlement gave virtually the entire Class what most Class Members really wanted – a promise to pay for all or a portion of those damages *actually* suffered if they paid for (or were denied) repairs or needed repairs in the future. *See Kincade*, 635 F.2d at 506 n.4 (small number of objectors is "some indication that the class members as a group did not think the settlement was unfair"). In other words, while the Settlement obviously met with broad approval of the Class, Objectors seek to upend the Settlement and leave the entire Class with nothing in hand and only the prospect of a hard-fought battle with Defendants in the district court. *See* D.E.70-1/24 (if Settlement not approved, case will be restored to its status as of November 9, 2020). It is entirely understandable why few have agreed with this strategy.

Nonetheless, as the district court pointed out, in agreement with numerous courts in this Circuit and elsewhere, to the extent Class Members were unhappy with this negotiated Settlement, they were free to opt out of the Settlement and pursue claims in separate actions.  D.E.116/139; D.E.125/36; *see, e.g.*, *Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1241-42 (11th Cir. 2012) (objections that "the settlement is unreasonable because it strips class members of their class rights while failing to resolve their individual claims" and "that the settlement does not adequately compensate them" deemed "unconvincing" since class members were "free to opt out of the class and still have the option of . . . filing an individual suit"); *In re CP Ships Ltd. Sec. Litig.*, 578 F.3d at 1318 (rejecting objection to settlement "because foreign class members have potential for a greater recovery in the Canadian Actions," noting "[a]ny class member wishing to pursue the Canadian Actions could opt out of the instant settlement"); *Eisen*, 2014 U.S. Dist. LEXIS 14301, at *20 ("Federal courts routinely hold that the opt-out remedy is sufficient to protect class members who are unhappy with the negotiated class action settlement terms.") (internal quotation marks omitted).

If, for example, someone with a 16-year-old Class Vehicle truly thought she might have a viable claim for more from Defendants, she could have opted out and pursued that claim.  The same holds for Objectors' examples of the lessee who experienced peeling paint but returned his Vehicle, the former owner who sold his

Vehicle without repainting it, someone who thinks a 50% or 25% reimbursement just isn't enough, or someone who truly thinks he or she can recover diminished value. As with anyone dissatisfied with a Rule 23(b)(3) class action settlement, and who has received adequate notice (which Objectors do not challenge here), exercising opt-out rights will afford Class Members the opportunity to seek what they might consider a better outcome. While not dispositive, as the district court recognized, this ability to opt out was a legitimate, and indeed important, "factor to consider" in approving this Settlement. D.E.116/142.

Finally, when, as here, an objector is pursuing a parallel class action, "[t]he district court [may] properly consider[] that [the objector] (or his counsel) may have had an ulterior motive in objecting to the settlement, rather than opting out," including "seeking control of the litigation." *Greco v. Ginn Development Co.*, 2015 Fed. Appx. 628, 633 (11th Cir. 2015) (citing *In re Prudential Ins. Litig.*, 148 F.3d 283, 318 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1995)). The district court did so here, noting that all who filed objections in the district court were either represented or apparently assisted by *Ponzio* counsel. D.E.125/26-28. Objectors make perfectly clear at the end of their Brief that "seeking control of the litigation" is their goal, when they ask this Court to "replace *Pinon* counsel and the *Pinon* class representatives with adequate counsel and representatives." IAB at 65. The district

- 36 -

court was entitled to conclude this was the real reason Objectors did not exercise their right to opt out of this Settlement.

The district court did not abuse its discretion when it concluded the Class Plaintiffs did not act unreasonably when they decided to abandon highly challenging diminution-in-value claims for a hard-and-fast extended warranty for all Class Vehicles, with opt-out rights for those Class Members who might disagree. That very few chose to opt out – and that those few who timely objected had an ulterior motive for doing so – only reinforces the district court's conclusion that this Settlement was fair, reasonable, and adequate to the Class as a whole.

### C.  Objectors' Remaining Arguments Fall with Their Argument That the Settlement Was Inadequate

Objectors' remaining arguments are (1) that the district court did not properly consider Rule 23 criteria and this Court's *Bennett* factors; (2) the Settlement appeared collusive and the result of a reverse auction; (3) Class Representatives and Counsel had conflicts of interest; and (4) this was a coupon settlement. These arguments fail as well.

### 1.  The District Court Engaged in the Analysis Required to Determine That This Settlement Was Fair, Reasonable, and Adequate

Objectors argue that the district court abused its discretion by failing to follow the law in approving this Settlement. The record reveals otherwise.

To begin with, Objectors incorrectly claim that the district court failed to consider all of the factors required by Rule 23(e)(2) and *Bennett*, 737 F.2d 982, in approving the Settlement. Even a quick read of the court's Final Order approving the Settlement shows that the court worked through the four considerations enumerated in Rule 23(e)(2). D.E.125/16-20. As for the *Bennett* factors, Objectors appear to complain about the district court combining its consideration of certain factors, but again a reading of the headings alone makes clear it nonetheless considered all six *Bennett* factors. D.E.125/21-25. In addition, and importantly, Objectors' reading of the Final Order ignores that some of the district court's analysis relating to these tests and factors appears elsewhere in the Final Order; specifically where it addresses Objectors' arguments in detail and rejects them. D.E.125/26-44. In addition, the district court addressed some of Objectors' arguments in its order denying their motion to intervene, and at the fairness hearing. D.E.89 (*passim*); D.E.116 (*passim*).

Once again, Objectors' challenges to the district court's evaluation of specific factors largely fall with their attack on the Settlement as inadequate. For example, in contending that Class Members were not treated equitably relative to each other, as required by Rule 23(e)(2)(D), they rely on the argument that the Settlement did not benefit most of the Class. IBA at 44-45. As explained, however, and as the district court recognized, the Settlement ultimately provided a benefit to all, or at

least the great majority of, Class Members – an extended warranty on the Class Vehicles they currently own or lease, or once did. D.E.125/19-20/33-34. Moreover, as the district court pointed out, "Class members with Subject Vehicles in the various age and mileage categories are treated equally with one another." D.E.125/19.

Oddly, Objectors also argue that the amount of attorneys' fees was too high relative to the Settlement. IAB at 45-46. Yet Objectors do not actually challenge the district court's conclusion, after careful analysis, that the fees were reasonable for this Settlement. D.E.125/19/41-55.

As to the *Bennett* factors, Objectors complain that the district court did not pay enough attention in its Final Order to all of the arguments they submitted. IAB at 38. But a district court is not required to detail all of the reasons for its conclusions, and it made clear here that it thoughtfully considered all of the arguments Objectors raised in the district court, including in the 150 pages of transcript for the fairness hearing. D.E.116; D.E.125; D.E.89; *see also Sterling v. Stewart*, 158 F.3d 1199, 1204 (11th Cir. 1998) (noting "the district court carefully reviewed," among other things, "the appellants' presentations at the fairness hearing to conclude that the settlement decision was indeed fair"). That there is some disconnect between what Objectors focused on in the district court and what they focus on here – as explained above – offers some explanation why the district court might have devoted less attention to some of their current arguments than they now

claim it should have.  But in any event, the court's 58-page Final Order is not the type of 7-page "boilerplate" ruling criticized in *Johnson v. NPAS Solutions, LLC*, 975 F.3d at 1250, 1261-63.

Hence, Objectors' contention that the district court did not consider "the range of possible recovery or the value of the settlement" is inaccurate.  IAB at 38-41.  The district court was aware, as Objectors acknowledge (IAB at 41 n.13), that projections for full re-painting of all Class Vehicles or alleged diminution-in-value ranged in the many hundreds of millions of dollars.  *See* D.E.107/62 n.35 (full repainting of all Class Vehicles valued at $639 million); D.E.116/111 (diminution-in-value claims identified as being worth $550 million).  The district court found that these speculative claims had minimal relevance in this class action when compared with the concrete benefits offered by the extended warranty.  D.E.125/31-40; D.E.89/23.  Objectors also downplay that portion of the Final Order where the district court analyzed the expert evidence offered by both sides on the value of the Settlement, and ultimately agreed with the values offered by Class Plaintiffs' expert, finding them sufficient to justify the Settlement.  D.E.125/38-41.

If anything, the Settlement was undervalued rather than overvalued.  At the fairness hearing, the district court questioned the report of Plaintiffs' expert Lee Bowron on the basis that, in putting a value on the Settlement, it included amounts for administrative and marketing costs associated with issuing motor vehicle

warranties, in addition to the value of past and future claims. D.E.125/38-39; D.E.116/15-20; *see* D.E.92-2/4-5/9-10. The court's concern was that, while these amounts reflected part of the cost Defendants would have to pay to issue warranties, they did not necessarily reflect the benefit of the warranty to Class Members. D.E.116/17-20. The court was also concerned that there might be some duplicative values in Bowron's report. D.E.116/18-19. While the court suggested Mr. Bowron should revise his estimate, it did not mandate how the value should be reassessed. D.E.116/19-20/46-147. Mr. Bowron reworked his report conservatively such that its amended valuation was based solely on actual past claims data and projected future claims payments. D.E.117-2. The district court found the revised valuation of $16.2 to $17.7 million sufficient to justify the Settlement, while recognizing that the valuation could have been done in different, and still legitimate, ways. D.E.125/39-40; D.E.116/19 ("I'm not saying it's the only way of doing it."); D.E.116/121.

The district court was correct to focus on the value of the Settlement to the Class. But that is what Mr. Bowron's original valuation was trying to do when it tried to come up with the value of an extended warranty beyond the actual payment of claims. As the district court explained in *In re Volkswagen & Audi Warranty Extension Litigation*, which also involved an extended warranty settlement of an alleged motor vehicle defect, "[t]o achieve a result equivalent to this settlement

- 41 -

agreement, each car owner in the class would have had to pay a certain price out-of-pocket for an extended warranty, and each car owner would have been charged that price regardless whether she ever actually needed repairs during the relevant time period." 89 F. Supp. 3d at 169. Indeed, the district court here acknowledged that "how much … the class members would have spent for a service contract to cover that period of time, I suppose that's one way of getting to what the value is to them." D.E.116/121.

In any event, regardless of whether Mr. Bowron's originally proposed additional costs for valuing the Settlement were appropriate or too high, removing all value associated with having a motor vehicle warranty beyond the actual payment of claims resulted in, if anything, a low valuation of the Settlement. Including such costs would only have *increased* the value of the Settlement, however, as the value of actual and projected claims would be included under either approach, as the district court recognized. D.E.116/79 (expressing concern that some of Bowron's numbers were "duplicative"). The district court did not abuse its discretion in approving the Settlement as sufficiently generous even under Mr. Bowron's final, more conservative, valuation. *See* D.E.125/39-40. And there is no reason to believe a higher valuation would have done anything other than bolster the court's conclusion that the Settlement was fair, reasonable, and adequate for the Class. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("We may

affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below.").

In short, the district court properly considered all of the factors necessary to determine that this Settlement was fair, reasonable, and adequate. That Objectors disagree with some of that analysis does not mean the district court did not properly exercise its discretion in conducting it. The bottom line is that the district court did not abuse that discretion in concluding that the Settlement was fair, reasonable, and adequate without crediting Objectors' speculative diminution-in-value claims.

### 2. The District Court Did Not Abuse Its Discretion in Rejecting Objectors' Arguments That There Were Indicia of Collusion and Reverse Auction

Because Objectors cannot persuasively challenge the substance of the Settlement, they resort to attacking the settlement negotiations, specifically, Defendants' choice to negotiate with the *Pinon* Plaintiffs, the parties' eventual refusal to include *Ponzio* counsel in those negotiations, and, once again, the lack of recovery for alleged diminution-in-vehicle-value. IAB at 35, 51-57. The district court responded to these arguments at length in denying the *Ponzio* plaintiffs' motion to intervene and in later approving the Settlement over their objections, and it did not abuse its discretion in doing so. *See* D.E.89/16-21; D.E.125/16-17/41-43.

The district court recognized that Defendants did not try to pick off the weaker group of plaintiffs in this litigation or pit the two groups against each other. Instead,

the *Pinon* Plaintiffs initiated settlement negotiations with Defendants – not the other way around.  D.E.70/20; D.E.116/25.  And as the district court found, those negotiations produced a settlement only after two years of active litigation, with extended discovery and protracted, hard-fought, and adversarial negotiations, with the assistance of a retired federal judge acting as a mediator.  D.E.125/4-6/26; *see also* D.E.116/11 (noting mediator was well aware of parallel *Ponzio* proceedings).

In its ruling on the *Ponzio* plaintiffs' motion to intervene, the district court specifically found that nothing about the "negotiations leading up to the Settlement," including the timing or failure to inform *Ponzio* counsel about the negotiations, "implie[d] collusion."  D.E.89/17.  In finding that there was no collusion or reverse auction, the court addressed every substantive argument that the *Ponzio* Objectors made in their opposition to the Settlement.  *See* D.E.89/16–24.  Despite their contention on appeal (IAB at 51-54), the *Ponzio* Objectors ultimately offered no new relevant evidence or arguments about the settlement negotiations that required a different conclusion in the Final Order, and this Court therefore has no basis for concluding that the district court abused its discretion in finding no indicia of collusion or a reverse auction.

And finally, even if there were indicia of collusion or a reverse auction – there were not – that would at most call for heightened scrutiny, not rejection of the Settlement, as Objectors admit.  IAB at 49, 64.  The district court's careful analysis

and reasoning meets the requirements for heightened scrutiny whether or not it expressly characterized its analysis as such. *See Sterling*, 158 F.3d at 1203-04 (noting that, although district court did not believe heightened scrutiny was required, its careful review of settlement nonetheless met heightened scrutiny standards).

### 3.    The District Court Did Not Abuse Its Discretion in Finding No Fundamental Conflicts of Interest

Objectors also argue that the Class Representatives and Class Counsel were inadequate because they had conflicts of interest. Objectors' Statement of Issues does not challenge class certification, and Objectors claim to be invoking Federal Rule of Civil Procedure 23(g)(4), which requires only that "class counsel must fairly and adequately represent the interests of the class." Yet they cite case authority involving adequacy of class representatives for purposes of class certification, and even make arguments suggesting the class representatives are atypical. This all renders their legal arguments unclear at best. In any event, there are no relevant conflicts of interest here.

Objectors' primary argument appears to be that Class Counsel were inadequate because they represented Class Members who ultimately obtained no financial benefit from the Settlement. As explained above, however, Objectors did not even establish there were any such Class Members. Nor do Objectors identify any other distinctions in this Class such that the district court abused its discretion either in certifying the Class or approving the Settlement. *See In re Equifax*, 999

F.3d at 1273, 1275 (both class certification and settlement approval reviewed for abuse of discretion).

The Class Members comprise everyone who owned or leased a Class Vehicle, essentially defined as a Mercedes-Benz vehicle painted with 590 Mars Red paint. D.E.125/2 n.1; D.E.70-1/7.    There was no evidence suggesting it made any difference to Plaintiffs' defect claims which of these Vehicles a Class Member owned or leased.  This class was therefore unified with no obvious need for or reasonable way of creating subclasses.  *Cf. In re Equifax*, 999 F.3d at 1275-76 ("There is no dispute that all these Plaintiffs' claims arise out of the same unifying event, Equifax's data privacy breach.  Likewise, all Plaintiffs seek redress for the same injury.  They all seek compensation for injuries associated with the risk of identity theft.").

Nor does it matter that some Class Members' potential recovery may differ from the recovery currently available to the Class Representatives.  "Class members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist 'a sufficient nexus … between the legal claims of the named class representatives and those of individual class members to warrant class certification.'"  *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278-79 (11th Cir. 2000)), *cert. denied*, 569 U.S. 918 (2013).

In this context of consumer products – and in particular motor vehicles – there is a sufficient nexus between all of the Class claims arising from the same paint on every Class Vehicle.  That there were gradations of potential recovery based on the age or mileage of the Vehicles merely reflected the higher likelihood of paint issues in older vehicles regardless of any defect and the diminished impact any such paint damage has on the overall value of an older vehicle.  It did not require subclassing (or hiving off certain Class Members from any settlement, as Objectors suggest), even assuming there might be Class Members who do not ultimately benefit because their particular claim to any recovery is inherently unreasonable given the age or use of their cars.  Objectors themselves essentially admit this when they acknowledge that age and mileage limitations are reasonable in this context without suggesting the need for subclassing.  IAB at 34; *see also Ault*, 692 F.3d at 1216 ("Class members' claims all stem from the same policy prohibiting the use of Segways within Walt Disney Resorts, and all claims require analysis of Title III to determine the outcome.  While each class member may have a stronger or weaker claim depending upon his or her degree of reliance, we conclude that this alone does not make class representatives' claims atypical of the class as a whole.").

The district court therefore did not abuse its discretion in determining that the Class Representatives' claims were sufficiently typical, and that they could adequately represent the Class as a whole, because, among other things, they "had

no interest antagonistic to any Class Member." D.E.125/16. Objectors purport to rely on *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012), but that decision actually supports the district court's conclusions here.

*Dewey* involved a class settlement of both past and future claims for allegedly leaking sunroofs. The Third Circuit, recognizing that, "[o]bviously, not all intra-class conflicts will defeat the adequacy requirement," rejected objectors' challenge to the settlement on the basis that the class representatives were inadequate because they all had past claims and were not incentivized to protect future claimants. *Id.* at 184-87. The Third Circuit noted that "each class member naturally derives different amounts of utility from any class-wide settlement," and explained that "the difference in valuation here is [not] sufficient to call into question representative plaintiffs' ability to adequately represent the class." *Id.* at 186-87. Importantly here, the Third Circuit also noted that "[a] class member who has already suffered a leakage, and is thus a 'past' claimant, can continue to suffer leakage into the future to the same extent as a future claimant and can continue to make future claims. As such, past claimants also have an incentive to protect the ability of class members to make claims for future damage." *Id.*

Similarly here, as the district court expressly pointed out, "[t]here is no limit to the number of claims or total amount of money that Mercedes-Benz will pay to reimburse qualified past repairs, except for the per claim cap on claims performed

by Independent Service Providers." D.E.125/8. As a result, even if, for example, Class Representatives are reimbursed 100% for their first repair, they also are covered for future claims – and there is no cap on the total amount of claims that can be paid. Hence, like the class representatives in *Dewey* discussed above, the Class Representatives here have actual or potential claims that are sufficiently similar to the rest of the Class to make them sufficiently typical for class certification and inherently capable of negotiating a fair, reasonable, and adequate settlement for the Class as a whole. This includes the ability to negotiate age and mileage limitations on an extended warranty, and an eventual cutoff, to reach a settlement acceptable to Defendants while providing substantial benefits to the Class as a whole.

Objectors' remaining authority fares no better. In each case, the distinction between *competing* interests left one group with a different recovery in kind from another group, in some cases resulting in no recovery, or the potential for no recovery, *e.g.*, because of a limited amount of settlement funding. By contrast, no such "limited funding" scenario exists here. For example, while the Third Circuit in *Dewey* rejected one challenge to the class representatives and counsel, it found a "fundamental" intra-class conflict between (i) those whose Vehicles were in the so-called "reimbursement group," meaning they would obtain full reimbursement, and (ii) those whose Vehicles were in the "residual group," whose recovery would be less or even nil as the settlement fund ran out. *Id.* at 187-90. The Settlement here

- 49 -

contains no such divisions, as all Class Vehicles receive the same extended warranty and there is no risk of a fund running dry. D.E.125/7-10/19-20/33-34.

Similarly, in *Amchem Prod. Inc. v. Windsor*, 521 U.S. 591 (1997), those with existing asbestos injuries were incentivized to maximize the use of the available funds, potentially leaving those who might suffer future injuries with minimal or no recovery. By contrast, the current Settlement treats past and future paint issues the same in terms of providing Class Members with a right to recovery under the extended warranty, again, with no danger of a fund exhausting. *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) (expressing similar concerns in invalidating Rule 23(b)(1) settlement); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) (fundamental conflict between individual and fleet truck owners where fleet owners could not partake in certain types of benefits offered to individual owners), *cert. denied*, 516 U.S. 824 (1995); *Sharp Farms v. Speaks*, 917 F.3d 276 (4th Cir. 2019) (fundamental conflict where, for historical and legal reasons, different groups of class member farmers had very different reasons and prospects for obtaining recovery from the U.S. Tobacco Cooperative).

Finally, Objectors' reliance on this Court's decision in *Holmes v. Continental Can Co.*, 706 F.2d 1144, is entirely misplaced. There, the Court rejected a settlement that awarded half of the settlement fund for employment discrimination claims to

the eight named plaintiffs because the district considered their claims more meritorious than the claims of the remaining 118 class members. *Id.* at 1146-47. Although recognizing "there is no rule that settlement benefit all class members equally," *id.* at 1148, this Court concluded the disparity in that case was "facially unfair," especially as the district court had failed to afford class members any opportunity to opt out of the settlement, *id.* at 1160. *Holmes* bears no similarity to the present case, where every Class Vehicle received the same extended warranty, and where all Class Members had an opportunity to opt out of the Settlement.

In short, Objectors' attack on the adequacy and typicality of Class Representatives and Counsel is really just another attack on the adequacy of the Settlement itself. For largely the same reasons that the district court did not abuse its discretion in approving the Settlement, it did not abuse its discretion in concluding that Class Representatives and Class Counsel were adequate to negotiate it and did not have any inherent conflicts of interest in doing so.

### 4. The Settlement Is Not a "Coupon Settlement"

The *Ponzio* Objectors contend that the Settlement's partial coverage for future repairs means that Class Members receive nothing more than a "coupon." IAB at 62-64. A coupon settlement offers "class members little more than the right to purchase more products from the defendant," often at a discount of "dubious" or

even nonexistent value. *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1308 (S.D. Fla. 2007) (quotation marks omitted) (collecting cases).

The district court did not abuse its discretion in rejecting this characterization of the Settlement, correctly pointing out "[t]he settlement does not involve any coupons or vouchers but direct cash payments to those Class Members who previously paid for repairs or coverage for future repairs." D.E.125/37-38 (citing cases); D.E.116/81. *See Alin*, 2012 U.S. Dist. LEXIS 188223, at *44 n.2 ("A person who has suffered harm and is provided a mechanism for receiving reimbursement for repairs, or a person who has a vehicle with a potential defect that can be repaired with a piece of equipment, *stands in a wholly different position* than a person who is provided with an unsolicited coupon.") (emphasis added).

## VII.  CONCLUSION

The district court did not abuse its discretion in concluding, after careful consideration and analysis of the Settlement as a whole as well as Objectors' arguments, that the Settlement Class should be certified and that the Settlement itself was fair, reasonable, and adequate.  No settlement offers claimants everything they seek in litigation; that is the nature of settlement.  Nor need all class members walk away with cash in their pockets or any immediately tangible benefit at all, as long as their reasonable interests were considered and addressed fairly in formulating the settlement.

This Settlement gave virtually every Class Member an extended warranty on his or her Class Vehicle covering both past and future repairs, whether or not they currently own or lease that Vehicle. That the great majority did not need to make claims under that warranty, chose not to make such claims, or could not otherwise meet eligibility requirements for making a claim, does not undermine the district court's considered conclusion, in its discretion, that the Settlement as a whole was fair, reasonable, and adequate.

For these, and all the reasons offered in this Brief, this Court should affirm in full the judgment of the district court.

Dated:  May 9, 2022                    Respectfully submitted,

*/s/ Troy Masami Yoshino*
Troy Masami Yoshino
SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111
Tel.:  +1 415 954 0200
Fax:  +1 415 393 9887
troy.yoshino@squirepb.com

Stephen B. Devereaux
Madison H. Kitchens
J. Franklin Sacha, Jr.
KING & SPALDING LLP
1180 Peachtree Street N.E., Suite 1600
Atlanta, Georgia  30309
Tel:  +1 404 572 4600
Fax:  +1 404 572 5100
sdevereaux@kslaw.com
mkitchens@kslaw.com
fsacha@kslaw.com

*Counsel for Appellees*
*Daimler AG and Mercedes-Benz USA, LLC*

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,395 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Times New Roman size 14-point font with Microsoft Word 365 ProPlus.

Date:  May 9, 2022

*/s/ Troy Masami Yoshino*
Troy Masami Yoshino

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system.

I further certify that I have served the foregoing document to the following counsel via UPS Ground, postage prepaid, for delivery within 3 calendar days, to the following:

Caroline F. Bartlett
CARELLA BYRNE CECCHI
OLSTEIN BRODY & AGNELLO PC
5 Becker Farm Rd.
Roseland, NJ 07068
(973) 994-1700

Robert E. Gordon
Steven G. Calamusa
Daniel G. Williams
GORDON & PARTNERS, PA
4114 Northlake Blvd., Ste. 200
Palm Beach Gardens, FL 33410

Mark J. Dearman
Maxwell H. Sawyer
ROBBINS GELLER RUDMAN
& DOWN, LLP
120 E. Palmetto Park Rd., Ste. 500
Boca Raton, FL 33432
(561) 750-3000

*Counsel for Interested Parties/Appellants*

K. Stephen Jackson
JACKSON & TUCKER, PC
2229 1st Ave. N.
Birmingham, AL 35203
(205) 252-3535

Travis E. Lynch
Jonathan R. Miller
HENINGER GARRISON
DAVIS, LLC
3621 Vinings Slope, Ste. 4320
Atlanta, GA 30339

*Counsel for Plaintiffs/Appellees*

*/s/ Troy Masami Yoshino*
Troy Masami Yoshino