# United States Court of Appeals

*for the*

# Eleventh Circuit

---

ROBERT PONZIO, ALEX ACUNA, BRIAN MADSEN, VANESSA M. MONTGOMERY, ROBERT MULL, HADIYA NELTHROPE, SAMUEL SALGADO, FREDERICK J. PARKER, On behalf of themselves and all others simiarly situated, Interested Parties,

*Interested Parties/Appellants,*

– v. –

EMILY PINON, GARY C. KLEIN, KIM BROWN, JOSHUA FRANKUM, TODD BRYAN, DINEZ WEBSTER,

*Plaintiffs/Appellees,*

DAIMLER AG AND MERCEDES BENZ USA, LLC,

*Defendants/Appellees,*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
CASE NO: 1:18-cv-03984-MHC
(Hon. Mark Howard Cohen)

# REPLY BRIEF OF APPELLANTS

MARK J. DEARMAN
ALEXANDER C. COHEN
DOUGLAS S. WILENS
ROBBINS GELLER RUDMAN &
    DOWD, LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
(561) 750-3000

JAMES E. CECCHI
JAMES A. O'BRIEN III
CARELLA BYRNE CECCHI OLSTEIN
    BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

*Counsel for Interested Parties/Appellants*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Cir. R. 28-1(b) and Fed. R. App. P. 26.1, Interested Parties/Appellants Robert Ponzio et al. declare that they are individuals and, as such, they are not subsidiaries or affiliates of publicly-owned corporations and there is no publicly-held corporation that owns ten percent or more of any stock issued by the Interested Parties/Appellants.

Pursuant to Eleventh Circuit Rule 26.1-1 and 26.1-2, counsel for Interested Parties/Appellants hereby certify, to the best of their knowledge, and reaffirming the disclosures already filed in the official forms, that the following trial judges, attorneys, persons, association of persons, firms, partnerships, and corporations are believed to have an interest in the outcome of this case or appeal:

1. Acuna, Alex (Objector-Class Member/Appellant)

2. Barlett, Taylor C. (Counsel for Plaintiffs/Appellees)

3. Blum, Joseph H. (Counsel for Defendants/Appellees)

4. Brown, Kim (Plaintiff/Appellee)

5. Bryan, Todd (Plaintiff/Appellee)

6. Calamusa, Steven G. (Counsel for Interested Parties/Appellants)

7. Caplan Cobb LLP (Counsel for Interested Parties/Appellants)

8. Caplan, Michael A. (Counsel for Interested Parties/Appellants)

9. Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. (Counsel for Interested Parties/Appellants)

10. Carr, Scott Jefferson (Counsel for Defendants/Appellees)

11. Cecchi, James E. (Counsel for Interested Parties/Appellants)

12. Cohen, Alexander C. (Counsel for Interested Parties/Appellants)

13. The Honorable Mark H. Cohen, District Judge, United States District Court for the Northern District of Georgia

14. Daimler AG (Defendant/Appellee)

15. Davidson, Stuart A. (Counsel for Interested Parties/Appellants)

16. Dearman, Mark J. (Counsel for Interested Parties/Appellants)

17. Devereaux, Stephen B. (Counsel for Defendants/Appellees)

18. Dwoskin, Eric (Counsel for Interested Parties/Appellants)

19. Earley, LaCresha (Plaintiff/Appellee)

20. Frankum, Joshua (Plaintiff/Appellee)

21. Garrison, W. Lewis, Jr. (Counsel for Plaintiffs/Appellees)

22. Gordon & Partners, P.A. (Counsel for Interested Parties/Appellants)

23. Gordon, Robert E. (Counsel for Interested Parties/Appellants)

24. Heninger Garrison Davis, LLC (Counsel for Plaintiffs/Appellees)

25. Jackson & Tucker, PC (Counsel for Plaintiffs/Appellees)

26. Jackson, K. Stephen (Counsel for Plaintiffs/Appellees)

27.   King & Spalding LLP (Counsel for Defendants/Appellees)

28.   Kitchens, Madison H. (Counsel for Defendants/Appellees)

29.   Klein, Gary C. (Plaintiff/Appellee)

30.   Knapp, Eric Jonathan (Counsel for Defendants/Appellees)

31.   Lynch, Travis E. (Counsel for Plaintiffs/Appellees)

32.   Lyons, John M. (Counsel for Defendants/Appellees)

33.   Madsen, Brian (Objector-Class Member/Appellant)

34.   Mann, Dara D. (Counsel for Defendants/Appellees)

35.   McDonough, James F. (Counsel for Plaintiffs/Appellees)

36.   Mercedes-Benz USA, LLC (Defendant/Appellee)

37.   Miller, Jonathan R. (Counsel for Plaintiffs/Appellees)

38.   Montgomery, Vanessa M. (Objector-Class Member/Appellant)

39.   Mull, Robert (Objector-Class Member/Appellant)

40.   Nelthrope, Hadiya (Objector-Class Member/Appellant)

41.   Parker, Frederick J. (Objector-Class Member/Appellant)

42.   Pearsall, Nancy (Plaintiff/Appellee)

43.   Pinon, Emily (Plaintiff/Appellee)

44.   Ponzio, Robert (Objector-Class Member/Appellant)

45.   Reinke, Adam (Counsel for Defendants/Appellees)

46.   Robbins Geller Rudman & Dowd LLP (Counsel for Interested Parties/Appellants)

47. Salgado, Samuel (Objector-Class Member/Appellant)

48. Sawyer, Maxwell H. (Counsel for Interested Parties/Appellants)

49. Shook, Hardy & Bacon, L.L.P. (Counsel for Defendants/Appellees)

50. Squire Patton Boggs (US) LLP (Counsel for Defendants/Appellees)

51. Sullivan, Thomas J. (Counsel for Defendants/Appellees)

52. Waddell, T. Brandon (Counsel for Interested Parties/Appellants)

53. Wilens, Douglas (Counsel for Interested Parties/Appellants)

54. Williams, Daniel G. (Counsel for Interested Parties/Appellants)

55. Yoshino, Troy Masami (Counsel for Defendants/Appellees)

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................i

TABLE OF AUTHORITIES .....................................................ii

ARGUMENT .......................................................................... 1

    A.    Most Class Members Receive No Consideration for
          Releasing Their Claims............................................... 1

    B.    The District Court Order's Rote and Boilerplate
          *Bennett* Analysis Was Insufficient ........................ 13

    C.    The Appellees and the District Court Ignore Strong
          Indicia of Collusion, Reverse Auction, and Lack of an
          Arms-Length Negotiation ....................................... 17

    D.    Fundamental Conflicts of Interest Demonstrate
          Inadequacy of Representation ................................ 22

    E.    The Coupon Nature of the Settlement is Additional
          Indicia of Collusion and Required Heightened Scrutiny ..... 29

CONCLUSION ........................................................................ 32

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arkin v. Pressman, Inc.*, No. 21-11019, __ F.4th __, 2022 WL
2352522 (11th Cir. June 30, 2022) .................................................. 22

*Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*,
637 F.3d 827 (7th Cir. 2011) ............................................................ 28

*Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*,
238 F.R.D. 679 (S.D. Fla. 2006), *aff'd*, 582 F.3d 1227 (11th
Cir. 2009) .......................................................................................... 24

*Bonner v. City of Prichard*,
661 F.2d 1206 (11th Cir. 1981) ........................................................ 11

*Bowe v. Pub. Storage*,
318 F.R.D. 160 (S.D. Fla. 2015) ...................................................... 29

*Carriuolo v. Gen. Motors Co.*,
823 F.3d 977 (11th Cir. 2016) .......................................................... 10

*Carter v. Forjas Taurus, S.A.*,
701 F. App'x 759 (11th Cir. 2017) ..................................................... 6

*Carter v. Forjas Taurus S.A.*,
Case No. 1:13-CV-24583-PAS, 2016 U.S. Dist. LEXIS
96054 (S.D. Fla. July 22, 2016) ......................................................... 6

*Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) ....................................... 4

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. 1982) ...................................................... 10, 24

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981), The 11th ...................................... 11, 24

*Day v. Persels & Assocs., LLC*,
729 F.3d 1309 (11th Cir. 2013) .......................................................... 7

*Dewey v. Volkswagen Aktiengesellschafte*,
681 F.3d 170 (3d Cir. 2012) ........................................................ 25, 26

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021) ..................................... *passim*

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod.*
*Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ............................. 11

*Holmes v. Cont'l Can Co.*,
706 F.2d 1144 (11th Cir. 1983) ................................... 5, 8, 9

*Huyer v. Van de Voorde*,
847 F.3d 983 (8th Cir. 2017) ................................................ 13

*Johnson v. NPAS Sols., LLC*,
975 F.3d 1244 (11th Cir. 2020) ............................ 13, 17, 18

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
2018 WL 1617696 (D.N.J. Apr. 3, 2018) ................... 4, 6, 9

*Managed Care Advisory Grp., LLC v. CIGNA Healthcare,*
*Inc.*, 939 F.3d 1145 (11th Cir. 2019) .................................. 18

*McKinney-Drobnis v. Oreshack*,
16 F.4th 594 (9th Cir. 2021) ................................................ 21

*Med. & Chiropractic Clinic, Inc. v. Oppenheim*,
981 F.3d 983 (11th Cir. 2020) ............................................ 27

*Mirfasihi v. Fleet Mortg. Corp.*,
356 F.3d 781 (7th Cir. 2004) .............................................. 10

*Molski v. Gleich*,
318 F.3d 937 (9th Cir. 2003) ................................................ 8

*In re Nissan Radiator / Transmission Cooler Litigation.*,
No. 10 CV 7493 VB, 2013 WL 4080948 (S.D.N.Y. May 30,
2013) .................................................................................... 4

*In re Oil Spill by Oil Rig Deepwater Horizon*,
295 F.R.D. 112 (E.D. La. 2013) ............................................ 4

*Pearson v. NBTY, Inc.*,
   772 F.3d 778 (7th Cir. 2014) ................................................................ 6

*Piambino v. Bailey*,
   757 F.2d 1112 (11th Cir. 1985) ............................................................ 5

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ........................................... 18, 20, 21, 30

*Rollins v. Dignity Health*,
   336 F.R.D. 456 (N.D. Cal. 2020) ........................................................ 27

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs.*
   *& Prod. Liab. Litig.*,
   997 F.3d 1077 (10th Cir. 2021) ............................................... 6, 21, 22

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) .............................................................. 13

*Slade v. Progressive Sec. Ins. Co.*,
   856 F.3d 408 (5th Cir. 2017) .............................................................. 28

*In re Subway Footlong Sandwich Mktg. & Sales Pracs.*
   *Litig.*, 869 F.3d 551 (7th Cir. 2017) ................................................. 23

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod.*
   *Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018) .............................................................. 21

*Williams v. Rohm & Haas Pension Plan*,
   658 F.3d 629 (7th Cir. 2011) .............................................................. 11

## Rules

Fed. R. Civ. P. 23(a) ................................................................................ 22

Fed. R. Civ. P. 23(b)(3) .......................................................................... 11

Fed. R. Civ. P. 23(e) ............................................................................... 19

Fed. R. Civ. P. 23(e)(2)...............................................19, 23

Fed. R. Civ. P. 23(e)(2)(A)........................................... 22

Fed. R. Civ. P. 23(e)(2)(B)........................................... 18

Fed. R. Civ. P. 23(e)(5)(A)........................................... 12

Fed. R. Civ. P. 28(a)(6) ............................................... 1

Fed. R. Civ. P. 28(a)(8)(A) ........................................... 1

Fed. R. Civ. P. 28(b) .................................................. 1

Fed. R. Civ. P. 28(e) .................................................. 1

Fed. R. Civ. P. 30(a)(1) ............................................... 1

11th Cir. R. 28-1(i) ................................................... 1

11th Cir. R. 28-1(ii) .................................................. 1

11th Cir. R. 30-1(a) ................................................... 1

11th Cir. R. 30-1(a)(15) ............................................... 1

11th Cir. R. 30-1(b) ................................................... 1

## Other Authorities

4 NEWBERG ON CLASS ACTIONS (5th ed. 2021 Suppl.).............................. 23

# ARGUMENT

## A. Most Class Members Receive No Consideration for Releasing Their Claims[1]

*Ponzio* Plaintiffs' Opening Brief ("OB") establishes that the settlement approved by the district court was unfair, inadequate, and unreasonable because most Class Members receive no consideration for a release of their claims. Using Appellees' own data,[2] *Ponzio* Plaintiffs demonstrated to the district court and this Court that 80% of the class

---

[1] Portions of Pinon Plaintiffs' statement of facts and arguments in their brief fail to provide record references and incorporate by reference district court pleadings and briefs, in violation of FRAP 28(a)(6), 28(a)(8)(A), 28(b), 28(e), and 11th Cir. R. 28-1(i) & (ii). *See* Opposition Brief of Plaintiffs-Appellees Emily Pinon *et al.* ("PB"), at 6-22, 45. In addition, the Pinon Plaintiffs' Supplemental Appendix includes numerous documents not filed in the district court, in violation of FRAP 30(a)(1), 11th Cir. R. 30-1(a), R. 30-1(a)(15), and 30-1(b). *See* Pinon Supplemental Appendix, Range Appx1001-Appx1056 (documents filed in *Ponzio*). Accordingly, the Court should strike or disregard those portions of the Pinon Plaintiffs' Brief and Supplemental Appendix. *See Prieto v. Total Renal Care, Inc.*, 843 F. App'x 218, 226 n.5 (11th Cir. 2021); *Matthews v. State Farm Fire & Cas. Co.*, 817 F. App'x 731, 732 n.1 (11th Cir. 2020); *United States v. Kapordelis*, 569 F.3d 1291, 1312 (11th Cir. 2009).

[2] Throughout their briefs, Appellees feign ignorance regarding the numbers used by *Ponzio* Plaintiffs to make their calculations. PB32-33;Brief of Appellees Mercedes-Benz USA, LLC & Daimler AG ("DB") 21. *Ponzio* Plaintiffs obtained these numbers from *Pinon* Plaintiffs' settlement filings, which were based on information received from Defendants through discovery.

are ineligible for any future benefits under the settlement's terms, and that less than 1% will receive backwards looking benefits.[3]

Specifically, of the estimated 168,817 Class Members bound by the settlement, 99,702 are former owners and lessees who cannot obtain future repainting benefits because they no longer possess class vehicles. Of the remaining 69,115 current owners or lessees, 35,397 cannot receive any future benefits due to the settlement's age and mileage restrictions for class vehicles. Thus, taken together, roughly 135,099 of the 168,817 Class Members (or 80.03%) are ineligible for any future benefits under this settlement. OB30-31.

Appellees offer no meaningful response to these undisputed facts. Rather than grapple with *Ponzio* Plaintiffs' appellate contentions directly, *Pinon* Plaintiffs simply parrot the court's flawed rulings, and promise that appropriate responses can be found in unidentified "record evidence" contained in filings below. PB26-30; *see Kapordelis*, 569 F.3d

---

[3] *Pinon* Plaintiffs wrongly claim that *Ponzio* Plaintiffs never argued to the district court that most Class Members will receive nothing under the settlement. PB25. *Ponzio* Plaintiffs made this argument in their objection, at the fairness hearing, and again in their post-fairness hearing supplement. DE96/13-20;DE116/41:14-42:-24;DE121/10-11. ("DE" denotes district court docket entries).

at 1312 ("[This Court has] rejected the practice of incorporating by reference arguments made to the district courts.") (citations omitted).

At most, *Pinon* Plaintiffs complain that *Ponzio* Plaintiffs' "math" calculations are "wrong" based on the "number of class vehicles for which a benefit is provided." PB32-33. But they conflate Class Members with Class Vehicles. Class Members—encompassing "all current owners, former owners, current lessees, and former lessees," DE125/6—purportedly receive benefits under the settlement; class vehicles do not. Here, *Pinon* Plaintiffs expressly defined the class to include all **former** owners and lessees (totaling 99,702 class members), yet ignore that none of them can receive future benefits under the settlement, regardless of how many "class vehicles [are] in service today." PB32-33.

Accounting for this majority of the class, who largely receive nothing for their compromised claims, the "math" indisputably works. If *Pinon* Plaintiffs wished to limit the class to those current owners and lessees who possess a class vehicle and, consequently, "benefit[] from the settlement," *id.*,33, they could have easily done so. What *Pinon* Plaintiffs cannot do, however, is lump those former owners and lessees into the

class and then provide them with no consideration for their released claims. At a minimum, they should have been excluded from the Class.[4]

Even under *Pinon* Plaintiffs' myopic calculations, the settlement remains woefully inadequate. As noted, for the 69,115 current owners or lessees of class vehicles, 35,397 (or 51%) are ineligible for future benefits due to age and mileage restrictions—a point they ignore.[5] In reality, only 4,574 current owners or lessees are eligible for 100% coverage on future repainting; those remaining 29,144 current owners or lessees must come

---

[4] *See Charron v. Wiener*, 731 F.3d 241, 251-52 (2d Cir. 2013) (settlement not unfair where terms do not release or extinguish claims that are excluded from any relief); *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 158 (E.D. La. 2013) (same); *In re Nissan Radiator/Transmission Cooler Litigation.*, No. 10 CV 7493 VB, 2013 WL 4080948, at *11 (S.D.N.Y. May 30, 2013) (settlement deemed fair where it did not release claims of "Class members with more than 100,000 miles on their vehicles").

[5] Cherry-picking *Ponzio* Plaintiffs' authorities, *Pinon* Plaintiffs vigorously attempt to distinguish *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2018 WL 1617696 (D.N.J. Apr. 3, 2018). PB29-30. But *Pinon* Plaintiffs ignore the court's main holding in that case: "the settlement terms do not appear to be 'fair, reasonable, and adequate'" because "Class Members outside of the year and mileage requirements would receive nothing except the possible deterrent benefit that would accrue to them as general members of the public, and satisfaction that the Defendant had to pay for its alleged misconduct." *Id.* at *4-5. In other words, plaintiffs cannot provide a "phantom benefit" in exchange for a full release of claims—precisely what happened here. *Id.* at *5.

out-of-pocket for thousands of dollars to claim discounted future benefits. In short, the settlement impermissibly benefits the few at the expense of the many. *See Piambino v. Bailey*, 757 F.2d 1112, 1140 (11th Cir. 1985) (class settlement "invalid because of its highly prejudicial treatment" of absent class members); *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147–48 (11th Cir. 1983) ("We agree that 'where representative plaintiffs obtain more for themselves by settlement than they do for the class for whom they are obligated to act as fiduciaries, serious questions are raised as to the fairness of the settlement to the class.'").[6]

Defendants' responsive arguments fare no better. They maintain that providing an "extended warranty is a benefit regardless of whether a claim is ever made against it." DB19. This, quite frankly, makes no sense. Putting aside their *ipse dixit*, DB18-19, Defendants never really explain how former owners or lessees derive any benefit from an "extended warranty" for future repainting when they no longer possess a

---

[6]  Defendants contend that *Ponzio* Plaintiffs "abandoned their objection below that payment or reimbursement at less than 100% of the cost of repainting is inadequate." DB17. Not true. *Ponzio* Plaintiffs expressly argued that the 25% and 50% discounts on possible future repairs, which may cost Class Members thousands of dollars to redeem, constitute a disfavored "coupon settlement." OB63-64.

class vehicle.[7] That benefit is, by definition, illusory for those class members, regardless of whether they technically (and retroactively) "received" the extended warranty. DB20; *see Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (value of benefit provided by settlement depends upon class members' eligibility for it); *see also Majdipour*, 2018 WL 1617696, at *5 (rejecting settlement that provided "phantom benefits" for many class members).

Perhaps recognizing that problem, Defendants disingenuously expand the meaning of "extended warranty" to include reimbursement for past repairs, and then suggest *Ponzio* Plaintiffs "ignore[] that the former owners and lessees were all offered ***the opportunity*** to submit qualified claims for reimbursement, even if they no longer own or lease

---

[7] Defendants' "extended warranty" cases do not support their position, and in fact illustrate why the settlement must be rejected. For example, the "enhanced warranty" benefit available in *Carter v. Forjas Taurus, S.A.*, 701 F. App'x 759, 763 (11th Cir. 2017), allowed for "present owners" to participate, and the class definition ***did not include former owners or purchasers*** who did not own their guns on the date of preliminary approval. *See Carter v. Forjas Taurus S.A.*, Case No. 1:13-CV-24583-PAS, 2016 U.S. Dist. LEXIS 96054, at *9-10 (S.D. Fla. July 22, 2016). Defendants' other authorities suffer from the same problem. *See In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077 (10th Cir. 2021) (defining class as "original purchasers").

their Class Vehicle." DB21-22.  But offering a former owner or lessee "the opportunity" to submit a claim that they do not qualify for, and cannot retroactively qualify for, is worthless, and they know as much.[8]

In the end, Defendants' main premise is that "a class action can be fair, adequate, and reasonable even if *some* class members obtain no monetary recovery from the settlement."  DB24.  *Ponzio* Plaintiffs do not dispute that general principle.  What they challenge is that *most* Class Members bound by the settlement in this case are *ineligible* for any benefit at all, since an "extended warranty" for a non-qualifying product, or a product that you no longer own, is worthless.  And try as they might to distinguish *Ponzio* Plaintiffs' authorities as limited to their facts, DB28-30, Defendants cannot refute the commonsense rule set forth in each that settlements in which the class or a significant subclass will receive no benefits are not fair, adequate, and reasonable for all class members.  OB1,28-29; *see also Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1326-28 (11th Cir. 2013) (vacating approval of a class action

---

[8]  And of course, this attempted semantic misdirection underscores that Defendants cannot seriously defend the fact that former owners and lessees receive no future benefits under the settlement either.

settlement as an abuse of discretion where absent class members receive no monetary recovery because it was based on a clearly erroneous factual finding that defendants would be unable to satisfy a judgment); *Holmes*, 706 F.2d at 1147-48 ("the court should not allow a majority, no matter how large, to impose its decision on the minority. In such circumstances, objection by a few dissatisfied class members should trigger close judicial scrutiny to ensure that the burden of settlement is not shifted arbitrarily to a small group of class members."); *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) (settlements that "release[] almost all of the absent class members' claims with little or no compensation . . . [are] unfair and [do] not adequately protect the interests of the absent class members.").

For similar reasons, Defendants' cases approving settlements with age and mileage restrictions are largely inapposite. DB26-27. Obviously, age and mileage restrictions are irrelevant guideposts for former owners and lessees who no longer possess class vehicles. Moreover, as *Ponzio* Plaintiffs asserted, while certain settlement "line-drawing" is appropriate, the age and mileage restrictions imposed in this case are unreasonable because they render a majority of current owners and lessees ineligible to receive any future benefits. OB34. Specifically,

35,397 of 69,115 current owners and lessees are ineligible to obtain the settlement's future benefits. *See Holmes*, 706 F.2d at 1148 ("Courts have refused to approve settlements on the ground that a disparity in benefits evidenced either substantive unfairness or inadequate representation."); *Majdipour*, 2018 WL 1617696, at *5 ("Class Members outside of the year and mileage requirements would receive nothing except the possible deterrent benefit that would accrue to them as general members of the public, and satisfaction that the Defendant had to pay for its alleged misconduct.").

Unsurprisingly, Appellees attempt to justify the sell-out of the class by attacking diminution-in-value claims as a basis for providing class-wide damages. DB30-34; PB26, 29. But this straw man argument misses the point for two reasons. First, *Ponzio* Plaintiffs have never argued that the settlement must include diminution-in-value remedies. Rather, their argument is "the settlement needed to offer ***some*** consideration to class members in exchange for releasing their claims." OB35; *see In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1259 (11th Cir. 2021) (affirming settlement that allowed class members to choose between credit monitoring or $125 "alternative cash compensation").

Second, and relatedly, this ignores other potential avenues for remedies that *Ponzio* Plaintiffs also suggested, including statutory claims (consumer fraud) and fraud claims, which offered statutory treble damages and punitive damages. OB40;DE121/15-17&nn.12-14/26n.29.

In any event, even assuming *arguendo* such claims are difficult to prove,[9] they are certainly not "worthless" such that they should be released for nothing. *See Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 783 (7th Cir. 2004) ("A colorable claim may have considerable settlement value (and not merely nuisance settlement value) because the defendant may no more want to assume a nontrivial risk of losing than the plaintiff does."); *Chicken Antitrust*, 669 F.2d at 238 (recognizing that class members with "colorable legal claims" may "share in the settlement fund" if defendants "required releases" to obtain "total peace"); *see also*

---

[9] Appellees similarly denigrate benefit-of-the-bargain damage claims, ignoring that such claims—where class-wide injury occurs ***at the point of sale***—are well-accepted in this Circuit. OB35 n.12. *See, e.g.*, *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 987 (11th Cir. 2016) ("The plaintiffs may show that a vehicle presented with three perfect safety ratings is more valuable than a vehicle presented with no safety ratings. General Motors received the same benefit of the bargain from the sale or lease to each class member—even if individual class members negotiated different prices—because a vehicle's market value can be measured objectively.").

*Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011).

Finally, Defendants suggest that *Ponzio* Plaintiffs should have opted-out of the settlement if they were unhappy with the terms. DB34-37. In so doing, they place too much weight on the number of objectors, "for a low level of vociferous objection is not necessarily synonymous with jubilant support." *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217-18 (5th Cir. 1981).[10]

As this Court recently recognized, "objectors play a beneficial role in opening a proposed settlement to scrutiny and identifying areas that need improvement." *See Equifax*, 999 F.3d at 1257. Consequently, the ability to opt-out, which is available in every Rule 23(b)(3) settlement, cannot foreclose a rigorous examination of a settlement nor salvage one that is unfair. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 809 (3d Cir. 1995) ("[T]he right of parties to opt out does not relieve the court of its duty to safeguard the interests

---

[10] The 11th Circuit adopted as binding precedent all 5th Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

of the class and to withhold approval from any settlement that creates conflicts among the class.").

There are at least three separate reasons that it does not matter, as Appellees insist, that certain *Ponzio* Plaintiffs may be eligible for future benefits. DE23;PB31-32. First, Rule 23(e)(5)(A) specifically provides that "[a]ny class member may object to the proposal if it requires approval[.]" Fed. R. Civ. P. 23(e)(5)(A); *see also Equifax*, 999 F.3d at 1257 ("class members who oppose the settlement have the right to object.") (citing Fed. R. Civ. P. 23(e)(5)(A)). Second, *Ponzio* Plaintiffs validly represent a class in a parallel action pending in the District of New Jersey, and have their own duties to the class arising from this representation.[11] And third, in any event, *Ponzio* Plaintiffs may properly object to the release of their benefit-of-the-bargain claims for no

---

[11] *Pinon* Plaintiffs' argument that *Ponzio* Plaintiffs "lack an interest in their argument for class members they say are ineligible for any benefits" because *Ponzio* Plaintiffs purportedly receive benefits perfectly illustrates the misalignment of interests between the members of the (sole) class. If true that *Ponzio* Plaintiffs have different interests than class members who are ineligible for any benefits, then *Pinon* Plaintiffs likewise have different interests than class members who are ineligible for any benefits, and failed to adequately represent them.

consideration, even if they receive other benefits under the settlement. *See Equifax*, 999 F.3d at 1257.[12]

Accordingly, the Court should reject *Pinon* Plaintiffs' veiled standing challenge, consider *Ponzio* Plaintiffs' arguments on the merits, and reverse the settlement as unfair, inadequate, and unreasonable.

## B.    The District Court Order's Rote and Boilerplate *Bennett* Analysis Was Insufficient

"When a class member objects to a settlement, 'the trial judge must assume additional responsibilities" – most notably, to 'examine the settlement in light of the objections raised and set forth on the record a reasoned response to the objections including findings of fact and conclusions of law necessary to support the response.'" *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1262 (11th Cir. 2020).   *Ponzio* Plaintiffs'

---

[12] *Pinon* Plaintiffs' reliance on *Huyer v. Van de Voorde*, 847 F.3d 983, 986-87 (8th Cir. 2017), is misplaced.   There, the court found that an objector lacked standing to challenge the adverse treatment of subclass of which she was not a member, and her objection, if successful, would have harmed her own subclass.   But there are no subclasses in this case, and *Ponzio* Plaintiffs' meritorious objections would benefit the class as a whole.   The same goes for *Pinon* Plaintiffs' citation to *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956 (7th Cir. 2013), where the reason the objecting class member "lack[ed] any interest in the outcome" was because they were solely objecting to the amount of attorneys' fees and did not file a claim.

illustrated in painstaking detail how the analysis in the order approving the settlement was insufficient, due to, among other things, its failure "to adequately address objections as to the *Bennett* factors." OB37-44.

*Pinon* Plaintiffs do nothing to rebut the argument, merely stating in conclusory fashion that the order was sufficient and copying the six *Bennett* factors into their brief. PB34-35. Defendants do not fare much better, and resort to scouring the record for any tiny thread they can string together that might suggest the court engaged in a more fulsome discussion. DB38.

Defendants first argue in a single sentence that "a reading of the headings alone makes clear" the order's discussion of *Bennett* on pages 21-25 was adequate. *Id.* But a careful reading of the order beyond the headings reveals only two mentions of *Ponzio* Plaintiffs' *Bennett* objections, DE125/24-25, despite such making up 6 pages of their Objection, DE96/49-54, and just over 5 pages of their Supplemental Briefing. DE121/14-19.

The first mention was where the court **deferred** discussing *Ponzio* Plaintiffs' arguments, disparaging the objectors and saying "[m]any of the objections to the Settlement Agreement raised by only a miniscule

number of objectors revolve around failure to provide damages for the diminution of value of the Subject Vehicles. However, **as further discussed** in this Order, an award of such damages is far from likely." DE125/24.

The second mention was solely with respect to the fifth *Bennett* factor, *id.*,24-25, which is "the substance and amount of opposition to the settlement." *Bennett*, 737 F.2d at 986. The first paragraph of this portion of the order simply counts the number of objectors, and does not address the substance of *Ponzio* Plaintiffs' argument at all. DE125/24-25. The second paragraph **again defers** on discussing *Ponzio* Plaintiffs' objections, stating "***[a]s will be discussed in this Order***, the Court has carefully considered the contentions of the individuals who filed objections to the Settlement Agreement, and has determined that none of the objections are sufficient to overcome the fairness of the Settlement Agreement." *Id.*,25.

No matter, Defendants argument continues, because "some of the district court's analysis relating to these tests and factors appears elsewhere in the Final Order; specifically where it addresses Objectors'

arguments in detail and rejects them." DB38 (citing DE125/26-44). However, actually looking to the order again reveals its deficiency.

The order begins by discussing the factual and procedural history of the objections, DE125/26-31, and concludes by categorizing *Ponzio* Plaintiffs' objections into five categories, the last being "objections that the proposed settlement fails to satisfy the Bennett factors." *Id.*,30. Understandably, the next several pages do not discuss *Bennett* or *Ponzio* Plaintiffs' *Bennett* objections, and instead address the other four categories of arguments *Ponzio* Plaintiffs raised. *Id.*,31-43.

The order finally purports to discuss *Bennett* and *Ponzio* Plaintiffs' *Bennett* objections on page 43. *Id.*,43. There, in a single sentence, the order states that "[t]he Court has considered the Settlement Agreement in light of all of the six Bennett factors and finds that those factors are satisfied. See III. B., *supra*." *Id.* The problem here is that there is no actual discussion of *Ponzio* Plaintiffs' eleven pages of *Bennett* objections, because Part III.B. of the order was the portion just discussed above where the district court **deferred** on discussing *Ponzio* Plaintiffs' *Bennett* objections until later in the order. *Id.*,24-25.

And finally, Defendant concludes by saying if all else fails, "the district court addressed some of Objectors' arguments in its order denying their motion to intervene, and at the fairness hearing." DB38 (citing DE89;DE116). But this is untrue and misunderstands the requirements of Rule 23.

The purpose of requiring the district court to record a reasoned response to *Ponzio* Plaintiffs' objections are several: (1) to satisfy an objector's Due Process rights; (2) to satisfy the requirements of Rule 23; and (3) to create a record that allows for "meaningful appellate review" of the settlement. *Johnson*, 975 F.3d at 1261-63. The order contains virtually no analysis of *Ponzio* Plaintiffs' *Bennett* objections, except for a circularly referencing back to itself. As such, it does not satisfy *Ponzio* Plaintiffs' Due Process rights, provide for meaningful appellate review, or satisfy the hard look that is required under *Bennett*, *Equifax*, and recently-amended Rule 23(e), and the Settlement must be vacated.

## C. The Appellees and the District Court Ignore Strong Indicia of Collusion, Reverse Auction, and Lack of an Arms-Length Negotiation

Defendants argue that the district court properly held that the events leading up to the Settlement were not indicative of collusion or a

reverse auction.[13] DB43-44. But the court did not *analyze* these issues. Instead, it short-circuited them by incorporating by reference its order denying *Ponzio* Plaintiffs' motion for intervention. DE125/43. In so doing, the court abdicated its duty at the settlement approval stage "'as a fiduciary' and 'guardian for the unrepresented class members.'" *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1162 (11th Cir. 2019). The court was obligated to, but did not (1) carefully examine the record with heightened scrutiny, (2) meaningfully address or substantively investigate all the concerns of the objectors and set forth reasoned responses, (3) ensure that its decision rested upon an evidentiary record adequately developed by the parties demonstrating the fairness and adequacy of the settlement, and (4) ensure it was not the product of collusion. OB26/28/37-38/40-41/51-57/n.17; *See Johnson*, 975 F.3d at 1248-49, 1261-63; *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1052 (9th Cir. 2019). The court, in focusing on its inapposite ruling

_____

[13] Other than a conclusory sentence, *Pinon* Plaintiffs have no response on the issues of collusion, reverse auction, and arms-length negotiation. PB34. The Defendants do not address the Rule 23(e)(2)(B) element of "arms-length negotiation." DB43-45 (addressing only collusion and reverse auction). Such omissions do not suffice to meet their burden of showing that the settlement is fair, reasonable, and adequate.

issued under standards for intervention, ignored the heightened standard of review, its fiduciary role here, and specific factors courts must apply in reviewing class settlements. OB19/n.6/26-27/28/37-46/51-52; Fed. R. Civ. P. 23(e)(2).

Defendants argue that the records before the district court when it resolved the motion for intervention and when it approved the Settlement were no different. DB44. Not so. The record concerning settlement approval contained substantial additional evidence and arguments that were not before, or considered by, the court on the motion to intervene. OB51-57. That record included: (1) detailed declarations from Professors Brian Fitzpatrick and Robert Klonoff, and *Ponzio* experts, Richard Eichmann and Garrett Glasgow, DE96-10;DE96-11;DE96-12;DE96-13; (2) a detailed declaration setting forth facts concerning the collusion, reverse auction and arms-length negotiations issues from Ponzio counsel, DE121-1; (3) deficient motions for preliminary approval and final approval of the settlement, DE70;DE100; (4) a motion for a disproportionate amount of attorney's fees, DE92; (5) Ponzio Plaintiffs' detailed objections, including facts and arguments relating to collusion, a reverse auction, and lack of an arms-length

negotiation, DE96/13-21/40/47/50-68;DE121/43-49; (6) a fairness hearing, DE116; and (7) post-fairness hearing supplementary filings, DE121;DE121-2;DE117;DE117-2. The court did not meaningfully address any of this evidence in addressing the issues of collusion and reverse auction.

For example, the court stated in conclusory fashion that the Settlement "is reasonable," "provides adequate relief to the class," and is not a reverse auction, DE89/17/19-22. But it failed to address the above-cited evidence, submitted in opposition to the Settlement, including evidence showing that 80% of the Class Members receive zero relief under the Settlement, DE121/21-23/32;OB/23-24, among other numerous other factors amounting to indicia of collusion and a reverse auction. OB12/51-56; *Ponzio*, No. 18-civ.-12544, DE81-82;DE88/48-61 (D.N.J.). "The district court's failure to fulfill its obligation to scrutinize these areas of concern," *Roes,* 944 F.3d at 1050, and the absence of a decision based on the full record, is a clear abuse of discretion. OB26/52-57.

Mercedes' argument that the Settlement mediator "was well aware of parallel Ponzio proceedings," DB44, is supported by no evidence presented below, only attorney argument.

DE121/43&n.38;DE116/11;OB57;DE100/11.   In any event, the "'mere presence of a neutral mediator . . . is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement." *Roes*, 944 F.3d at 1050 n.13;OB57.  That is particularly so given the certainty that no one disclosed to the mediator the fact that most Class Members would receive nothing.

Finally, the court paid little or no heed to other red flags of collusion, including the award of disproportionate attorney's fees despite a potential monetary distribution to only .9% of the class, the ineligibility of 80% of the class notwithstanding a release of 100% of their claims, a "clear-sailing" provision, and a de facto kicker of unclaimed settlement funds to Defendants. OB45-46;DE70-1/14-15;DE125/41;DE96/39; DE96-10/46-47&n.38; *Briseno*, 998 F.3d at 1026-27.[14] These elements alone warranted heightened scrutiny that the court failed to apply.  *See McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 608 (9th Cir. 2021); *see also*

---

[14] A "kicker" or reversion involves the return of unclaimed portions of a settlement fund to the defendant. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).  The effect of the Settlement is that Mercedes retains whatever funds are not paid out.  *See Samsung*, 997 F.3d at 1088 n.10 (looking at "kicker" effect of settlement).

*Samsung*, 997 F.3d at 1091 (where settlement contains "kicker" and "clear-sailing" agreement, "heightened scrutiny" applies); *cf. Arkin v. Pressman, Inc.*, No. 21-11019, __ F.4th __, 2022 WL 2352522, at *6, 7 (11th Cir. June 30, 2022) (attorney fees to [counsel] properly denied where "record clearly shows that [counsel] subordinated the interests of the class to its own interests throughout the . . . litigation," where terms of settlement included provisions "for a huge payout for [counsel] with little to the class" and reversion of unclaimed funds to defendant, and where "record clearly shows that [counsel] put the class at serious risk of harm with the . . . Settlement for the sake of inflated attorneys' fees and convenience"); *id*. at *7 ("selling the class out for attorneys' fees" is "ethical violation").

### D. Fundamental Conflicts of Interest Demonstrate Inadequacy of Representation

Contrary to Defendants' suggestion, DB/45, *Ponzio* Plaintiffs clearly raised "adequacy of representation." OB46-50/57-62;DE121/30n.20. It is an express element in Rule 23(e)(2)(A).

Defendants mainly argue that adequacy of representation is met because the *Pinon* Plaintiffs satisfied the Rule 23(a) element of "typicality." DB15/45-47/51. But "typicality" is not part of the adequacy-

of-representation inquiry under Rule 23(e)(2), and wasn't raised below. The flaw here is that the Class Representatives and counsel sold out the vast majority of unnamed Class Members. That is inadequacy, plain and simple. OB43-50/73-78. *See In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*, 869 F.3d 551, 556 (7th Cir. 2017); *see also* 4 NEWBERG § 13:56 (5th ed. 2021 Suppl.) ("A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit.").

*Pinon* Plaintiffs argue that no evidence is cited to show that the Class Representatives receive better treatment than the majority of Class Members. PB39-40. But the burden is on the Appellees, not Objectors, to demonstrate the Class Representatives do not receive better treatment. Nevertheless, the Settlement was structured so that the Class Representatives—who owned newer cars with low mileage (less than 7 years or 105,000 miles)—and would all be eligible for 100% reimbursement for future paint repairs, and would not be subject to exclusions that apply to 80% of the Class: former owners and lessees,

and the owners of Class Vehicles older than 15 years or that have 150,000 or more miles.  OB13/n.5;DE96-10/¶¶44-45/¶60/¶¶71-76.

Defendants argue that the court properly found adequacy of representation was satisfied because the class was "unified," in that "everyone owned or leased a Class Vehicle."  DB46;DE125/16.  But the scope of the adequacy inquiry in this Circuit more broadly examines whether economic interests and objectives of the named representatives differ significantly from those of other class members.  *See Equifax*, 999 F.3d at 1275; OB47-50/58-62.[15] The Appellees and the court fail to address that standard.

This Circuit's adequacy of representation inquiry also includes a focus on whether the interests of subclasses "conflicted at the point of *settlement negotiation*."  *Corrugated*, 643 F.2d at 208.[16]  Such a conflict exists here.  OB58-62.

---

[15] *See also Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 696 (S.D. Fla. 2006) (noting Eleventh Circuit's decisions broadly interpret class conflict rules), *aff'd*, 582 F.3d 1227 (11th Cir. 2009).

[16] *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 237 (5th Cir. 1982), recognized that the adequacy of representation factor requires a showing that, despite the uniformity of two subclasses' settlement interests, "no specific feature of the settlement sacrificed the interests of

Defendants argue that *Dewey v. Volkswagen Aktiengesellschafte*, 681 F.3d 170 (3d Cir. 2012), is distinguishable because it held in part there was no disabling conflict of interest where the class representatives all had only past claims for leakages from defective sunroofs but were sufficiently inclined to protect future claimants, because they could themselves encounter future leakages. DB48. Defendants analogize that this reasoning supports the absence of a conflict here because the Class Representatives with past claims for paint repairs "are also covered for future claims." DB49. That comparison is inapt. It ignores that the conflict here is between, on the one hand, Class Representatives who are all *current* owners or lessees of Class Vehicles and eligible to submit claims for past or future repairs and, on the other hand, *former* owners and lessees who never sought qualifying paint repairs and thus are precluded by the settlement from obtaining any cash reimbursement or a discount for future repairs and who must release their claims for nothing. At a minimum, adequate representation required that Class Members who were not entitled to covered be removed from the Class

---

some class members to those of others." It is this factor that the Settlement clearly fails to meet.

definition, so that they would not be releasing their claims. Here, there is precisely the "misalignment of interests" that, *Dewey* recognized, *Amchem* found problematic. 681 F.3d at 185; OB57-62.

Defendants also ignore that the court's reasoning—that the Class Representatives' mere ownership or leasing of the same Class Vehicles with the defective paint satisfies adequacy of representation—was rejected in *Dewey*, 681 F.3d at 178-79, 187-90; OB58. Although the Appellees respond that "all Class Vehicles receive the same extended warranty," DB50, and no Class Member "is treated differently," PB39-40/43, that ignores (1) that the focus must be on the treatment of the Class Members, not Vehicles, and (2) that the former owners and former lessees are essentially thrown under the bus, DE125/42-43, and receive nothing. As previously argued, the settlement divides a single class into different groups and reflects a disparate allocation of benefits (with the class representatives eligible for the most), thus demonstrating a fundamental intra-class conflict of interest. OB58-61; *Dewey*, 681 F.3d at 187-88. This is not a case where "no allegation is made that the rights of a definable minority group within the class were sacrificed for the benefit of the majority." *Pettway*, 576 F.2d at 1216. In this regard,

Appellees are silent as to whether the Settlement's exclusion from benefits of a significant majority of Class Members comports with the rule that class counsel owes a fiduciary "duty to the class as a whole," and not "to any group comprised of class members." *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 991 (11th Cir. 2020); OB48. The district court failed to "find that the named Plaintiffs and their attorneys were negotiating 'on behalf of the *entire* class,'" *Rollins v. Dignity Health*, 336 F.R.D. 456, 467 (N.D. Cal. 2020) (emphasis in original), resulting in a failure to "ensur[e] that the interests and rights of each class member receive consideration by the court," *Pettway*, 576 F.2d at 1176.

Defendants' reliance on *Equifax* for the proposition that a "unif[ying]" event, such as ownership of a Class Vehicle with the same alleged defect, suffices for adequacy of representation, DB46, is flawed. *Equifax* was "'the largest and most comprehensive recovery in a data breach case in U.S. history by several orders of magnitude.'" 999 F.3d at 1256. The plaintiffs in *Equifax* "sought the same compensatory damages for" the injury they claimed, and "*all* class members [were] entitled to the *same* class benefits." *Id.* at 1277 (emphasis added); *see also id.* at 1258-59 (listing substantial settlement benefits for "each class

member," including $380.5M fund).   In the class of over 100 million people, *every class member was entitled to meaningful benefits*.  This case is the polar opposite: 80% of the Class Members are *excluded* from *any* benefits, and only .9% of the Class stands a chance of obtaining a partial cash reimbursement for a partial paint repair.   Unlike in *Equifax*, a significant percentage of "members of the class . . . ha[d] their ability to get settlement benefits reduced to zero because some other members got more relief from the settlement." *Id*.  The economic interests of a majority of Class Members were sacrificed for the interests of the Class Representatives, Class Counsel, and Mercedes.  OB58-62.

Finally, Mercedes argues that adequacy of representation is met by the adequacy of the Settlement relief.  DB51.  That ignores not only the inadequacy of the relief as discussed above, but also that *Pinon* Plaintiffs' decision to throw away substantial claims in this case, including consumer protection and fraud claims, DE55/81-107;DE96/49;DE121/25-27, created an irreconcilable conflict of interest with the Class.[17]

---

[17]  *See Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) ("When the class representative proposes waiving some of the class's claims, the decision risks creating an irreconcilable conflict of interest with the class.") (citing cases); *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830-31 (7th Cir.  2011) ("A representative

DE96/49.  Yet, the court never addressed these serious concerns in finding that the Class Representatives and Counsel were adequate.

### E. The Coupon Nature of the Settlement is Additional Indicia of Collusion and Required Heightened Scrutiny

Defendants argue the court correctly refused to characterize the settlement as a "coupon" settlement because it involves "direct cash payments" for previous repairs and "coverage for future repairs."  DB51-52.  But there are no "direct cash payments," other than possibly to the .9% of the Class Members who submitted claims for previous repairs.  Any possible "coverage for future repairs" would involve a possible discount for the small percentage (20%) of Class Members who might put in a claim for a potential future repair.  PB31.

The fact that a significant majority of Class Members receive nothing, *Pinon* Counsel likely stand to collect more in fees than the Class collect in cash reimbursements, unclaimed funds are retained by Defendants, and most of those deemed eligible for benefits are required

---

can't throw away what could be a major component of the class's recovery."); *Bowe v. Pub. Storage*, 318 F.R.D. 160, 175 (S.D. Fla. 2015) ("[C]ourts have found proposed representatives inadequate where they had strategically abandoned . . . substantial and meaningful  claims") (citing cases).

to pay a Mercedes-affiliated entity to receive the discount, are all indicia of a collusive, "coupon" settlement. OB62-64; *Roes*, 944 F.3d at 1053 ("the danger of unjustifiably inflating the settlement value of coupons is even more grave when the value of unused coupons will revert back to defendants").

*Pinon* Plaintiffs falsely inflate "the future-repairs and value of the service contract components of the Settlement," claiming it "alone has an estimated value between $37.3 and $55.9 million." PB44. In the district court they revised this figure significantly downward (to $13,129,712) DE117-2/19;DE121-2/5/14-15;OB22; DE125/39, a correction that itself raises the specter of inadequacy; and *Ponzio* Plaintiffs showed that the value of the future repairs was even significantly less than this revised figure: between less than $1 million to $3.1 million (which the district court mischaracterized as $6,264,850). DE121-2/5/14-16/n.27;DE125/40; OB23/26/41,n.13.

*Pinon* Plaintiffs contend that no "coupon" settlement exists because Class Members are not required "to do future business with the defendant in order to receive compensation,'" asserting that the "Mercedes Authorized Service Centers" that do paint work are

"independent entit[ies] not owned by Defendants." PB45. First, *Pinon* Plaintiffs cite no evidence to support this proposition. *See id*. Second, the district court found that "Mercedes-Benz Centers are MBUSA's agent for repair issues," DE25/49, and the paint is provided by a third-party business partner of the Defendants, DE121-1/2/74-77. Third, doing future business with a defendant as part of a settlement is just one of several concerns with coupon settlements. Other concerns include a requirement that class members must pay their own money to obtain a benefit, the discount or credit is valid for only select services, and the discount or credit is not freely transferable—all of which are present here. OB13-15/62-64.

* * *

In many cases, such as the *Equifax* settlement affirmed by this Court, the class action served to achieve mass justice. Here, however, the class action device was abused to the benefit of Mercedes and Class Counsel—and to the detriment of the vast majority of the Class. Striking down this Settlement is the only fair and just outcome.

# CONCLUSION

The judgment of the district court granting approving the Settlement should be reversed.

Dated: July 5, 2022

Respectfully submitted,

/s/ James E. Cecchi
James E. Cecchi
James A. O'Brien III
**CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, P.C.**
5 Becker Farm Rd.
Roseland, New Jersey 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com
jobrien@carellabyrne.com

Mark Dearman
Alexander C. Cohen
Douglas Wilens
**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Rd. Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
mdearman@rgrdlaw.com
acohen@rgrdlaw.com
dwilens@rgrdlaw.com

Steven G. Calamusa
**GORDON & PARTNERS, P.A.**
4114 Northlake Blvd., Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 799-5070
scalamusa@fortheinjured.com

*Attorneys for Interested
Parties/Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 6447 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Century Schoolbook font.

*/s/ James E. Cecchi*

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2022 a copy of the brief was served on all counsel of record via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

*/s/ James E. Cecchi*