# CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.

### COUNSELLORS AT LAW

_____

| | | | |
|---|---|---|---|
| CHARLES C. CARELLA | DONALD F. MICELI | PETER G. STEWART | RAYMOND J. LILLIE |
| JAN ALAN BRODY | CARL R. WOODWARD, III | FRANCIS C. HAND | GREGORY G. MAROTTA |
| JOHN M. AGNELLO | MELISSA E. FLAX | JAMES A. O'BRIEN, III | KEVIN G. COOPER |
| CHARLES M. CARELLA | DAVID G. GILFILLAN | JOHN G. ESMERADO | MARYSSA P. GEIST |
| JAMES E. CECCHI | G. GLENNON TROUBLEFIELD | STEVEN G. TYSON | JORDAN M. STEELE** |
| | BRIAN H. FENLON | MATTHEW J. CERES | ZACHARY A. JACOBS*** |
| | LINDSEY H. TAYLOR | MARC D. MORY | MICHAEL K. BELOSTOCK |
| | CAROLINE F. BARTLETT | | BRIAN F. O'TOOLE** |
| | ZACHARY S. BOWER+ | | SEAN M. KILEY |
| | DONALD A. ECKLUND | OF COUNSEL | MICHAEL B. SIMONE |
| | CHRISTOPHER H. WESTRICK* | | ROBERT J. VASQUEZ |
| | STEPHEN R. DANEK | *CERTIFIED BY THE SUPREME COURT OF | |
| | MICHAEL A. INNES | NEW JERSEY AS A CIVIL TRIAL ATTORNEY | |
| | MEGAN A. NATALE | +MEMBER FL BAR ONLY | |
| | | **MEMBER NY BAR ONLY | |
| | | ***MEMBER IL BAR ONLY | |

**5 BECKER FARM ROAD**
**ROSELAND, N.J. 07068-1739**
**PHONE (973) 994-1700**
**FAX (973) 994-1744**
**www.carellabyrne.com**

April 25, 2023

VIA ECF

Hon. David J. Smith
Clerk of the Court
United States Court of Appeals
    for the 11th Circuit
56 Forsyth Street, N.W.
Atlanta, GA 30303

      Re:    No. 21-14503
             *Ponzio v. Pinon*
             Fed. R. App. P. 28(j): Notice of Supplemental Authority

Dear Mr. Smith:

    Appellants respectfully submit this letter to present new authority in support of points presented in their briefs and oral argument, and to address questions raised by the Court regarding the burden under Fed.R.Civ.P. 23(e) in responding to objections to a class settlement. The attached Fourth Circuit decision was issued on March 15, 2022, six days after Appellants filed their opening brief.

    The Fourth Circuit held that "an objector to a class settlement must state the basis for its objection with enough specificity to allow the parties to respond and the court to evaluate the issues at hand." *1988 Trust for Allen Children v. Banner Life Ins. Co.*, 28 F.4th 513, 520 (4th Cir. 2022). "[T]the parties seeking approval of a class settlement also ***bear the burden of demonstrating fairness, reasonableness, and adequacy*****."** *Id*. at 520-21 (emphasis added). Then "the parties propounding the settlement***, in addition to bearing the initial burden to show that the proposed class meets the Rule 23(a) requirements for certification and that a proposed settlement is fair, reasonable, and adequate, must show that the objection does not demonstrate that the proposed settlement fails one of those requirements*****.**" *Id*. at 521 (emphasis added). The Fourth Circuit further held that "the district court, at all times, remains a fiduciary of the class" and must "protect the class's interests from parties and counsel overeager to settle (who may deny absent class

April 25, 2023
Page  2

members relief that they would otherwise receive) and frivolous objectors (who may impede or delay valuable compensation to others)."  *Id.*

       This decision is consistent with this Court's precedent holding that settlement proponents bear the burden of proving its fairness, adequacy, and reasonableness, *Faught v. Am. Home Shields Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011), and that district courts assume a "fiduciary role" "to ensure the settlement is noncollusive in nature," and "to exercise careful scrutiny in order to guard against settlements that may benefit the class representatives or their attorneys at the expense of absent class members."  *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1265 (11th Cir. 2021) (citations omitted).


                    Sincerely,


                    /S/ JAMES E. CECCHI
                    James E. Cecchi, Esq.

                    *Counsel for Appellants*


cc:  Counsel of Record (via Email and ECF)


CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

# EXHIBIT 1

28 F.4th 513
United States Court of Appeals, Fourth Circuit.

1988 TRUST FOR ALLEN CHILDREN DATED
8/8/88 - Marianne E. & Laurie L. Allen and Nora V.
Gitz, as Trustees, Third Party Plaintiff – Appellant,
v.
BANNER LIFE INSURANCE COMPANY;
William Penn Life Insurance Company
of New York, Defendants – Appellees,
and
Richard Dickman; Kent Alderson, Plaintiffs – Appellees,
and
Legal & General America, Inc.; Legal
& General Group, PLC, Defendants.

No. 20-1630
|
Argued: December 7, 2021
|
Decided: March 15, 2022

**Synopsis**
**Background:** Former policyholders brought class action
against life insurers to recover for allegedly misleading or
fraudulent statements or omissions about cost of insurance
for universal life policies. Settlement was reached, and
policyholder objected as it, unlike other class members, faced
future balloon payment in year 21. The United States District
Court for the District of Maryland, Richard D. Bennett, J.,
2020 WL 13094954, certified class action and approved
settlement. Objecting policyholder appealed.

**Holdings:** The Court of Appeals, Motz, Circuit Judge, held
that:

[1] as a matter of first impression, objector must state basis for
objection with enough specificity to allow parties to respond
and court to evaluate the issues at hand;

[2] as a matter of first impression, parties propounding
settlement must show that objection does not demonstrate
failure to satisfy requirements of fairness, adequacy, and
reasonableness;

[3] finding that common questions predominated was not
abuse of discretion;

[4] alleged need of objecting policyholder to make a year-21
balloon payment if insured reached age 96 was entirely
speculative and did not give rise to conflict defeating
adequacy requirement;

[5] District Court did not abuse discretion in approving
settlement.

Affirmed.

Rushing, Circuit Judge, concurred in part, concurred in
judgment, and filed opinion.

**Procedural Posture(s):** On Appeal; Request or Application
for Class Certification; Motion for Final Approval of Class
Action Settlement.

West Headnotes (27)

[1]    **Federal Civil Procedure** 🔑 Evidence;
       pleadings and supplementary material
       Insofar as the decision to certify the class is
       at issue, burden lies upon parties seeking class
       certification. 📁 Fed. R. Civ. P. 23(a).

[2]    **Compromise, Settlement, and
       Release** 🔑 Adequacy of representation
       **Compromise, Settlement, and
       Release** 🔑 Negotiation at arm's length; fraud
       or collusion
       In its role as fiduciary of the class, district
       court has fiduciary responsibility to ensure that
       class action settlement is fair and not product of
       collusion, and that class members' interests were
       represented adequately. 📁 Fed. R. Civ. P. 23.

       2 Cases that cite this headnote

[3]    **Compromise, Settlement, and
       Release** 🔑 Views of parties, claimants, or
       class members; opposition or approval

Objector to class settlement must state basis for objection with enough specificity to allow parties to respond and court to evaluate issues at hand.

🚩 Fed. R. Civ. P. 23(e)(5)(A).

3 Cases that cite this headnote

**[4]    Compromise, Settlement, and Release** 🔑 Presumptions, inferences, and burden of proof

Parties propounding class action settlement, in addition to bearing the initial burden to show that the proposed class meets the requirements for certification and that a proposed settlement is fair, reasonable, and adequate, must show that the objection does not demonstrate that the proposed settlement fails one of those requirements. 🚩 Fed. R. Civ. P. 23(a), 23(e)(2).

2 Cases that cite this headnote

**[5]    Compromise, Settlement, and Release** 🔑 Court as fiduciary

District court as fiduciary of the class must protect the class's interests from parties and counsel overeager to settle, who may deny absent class members relief that they would otherwise receive, and frivolous objectors, who may impede or delay valuable compensation to others. 🚩 Fed. R. Civ. P. 23.

2 Cases that cite this headnote

**[6]    Federal Courts** 🔑 Class actions

Court of Appeals reviews district court's certification of class for abuse of discretion.

**[7]    Federal Civil Procedure** 🔑 Evidence; pleadings and supplementary material

Proponents of class certification must affirmatively demonstrate compliance with class action requirements of numerosity, commonality, typicality and adequacy. 🚩 Fed. R. Civ. P. 23(a).

**[8]    Federal Courts** 🔑 Failure to mention or inadequacy of treatment of error in appellate briefs

Objector to class action settlement did not waive arguments on commonality by failing to include in objection a separate section for commonality, where objector engaged in lengthy discussion of typicality and adequacy, and those requirements tended to merge. 🚩 Fed. R. Civ. P. 23(a).

**[9]    Federal Civil Procedure** 🔑 Common interest in subject matter, questions and relief;  damages issues

In a class action based on predominance of common questions of law or fact and superiority of class action, the commonality requirement is subsumed under, or superseded by, the more stringent requirement that questions common to the class predominate over other questions.

🚩 Fed. R. Civ. P. 23(a)(2), 23(b)(3).

**[10]    Federal Civil Procedure** 🔑 Common interest in subject matter, questions and relief;  damages issues

The mere fact that the defendants engage in uniform conduct is not, by itself, sufficient to satisfy the commonality requirement for certification of class action based on predominance of common questions of law or fact and superiority of class action. 🚩 Fed. R. Civ. P. 23(a)(2), 23(b)(3).

**[11]    Federal Civil Procedure** 🔑 Common interest in subject matter, questions and relief;  damages issues

The predominance inquiry for class certification focuses not only on the existence of common questions, but also on how those questions relate to the controversy at the heart of the litigation.

🚩 Fed. R. Civ. P. 23(b)(3).

1988 Trust for Allen Children Dated 8/8/88 v. Banner Life..., 28 F.4th 513 (2022)

112 Fed.R.Serv.3d 1

**[12]**    **Federal Civil Procedure** 🔑 Time for proceeding and determination

**Federal Civil Procedure** 🔑 Consumers, purchasers, borrowers, and debtors

Finding that common questions predominated in policyholders' class action challenging insurers' increases in cost of insurance under universal life policies was not abuse of discretion as to objector required to pay cost of insurance and expense charges as balloon payment in year 21, rather than over course of first 21 years as other class members had done; the different claims involved two sides of the same coin turning on when policyholders would have to pay the allegedly unlawful charges, and district court made finding after granting discovery to objector. 🚩 Fed. R. Civ. P. 23(b)(3).

**[13]**    **Federal Civil Procedure** 🔑 Representation of class; typicality; standing in general

**Federal Civil Procedure** 🔑 Common interest in subject matter, questions and relief; damages issues

Commonality and typicality requirements for class action tend to merge. 🚩 Fed. R. Civ. P. 23(a).

**[14]**    **Federal Civil Procedure** 🔑 Consumers, purchasers, borrowers, and debtors

District court in policyholders' class action alleging insurers' fraud concerning cost of insurance for universal life policies did not abuse its discretion in determining that objecting policyholder's year-21 balloon payment turned on unlawful cost of insurance charges, just like claims by policyholders who allegedly had paid those charges over first 20 years, and that typicality requirement was satisfied. 🚩 Fed. R. Civ. P. 23(a).

**[15]**    **Federal Civil Procedure** 🔑 Representation of class; typicality; standing in general

The adequacy inquiry for class action serves in part to uncover conflicts of interest between named parties and the class they seek to represent. 🚩 Fed. R. Civ. P. 23(a)(4).

1 Case that cites this headnote

**[16]**    **Federal Civil Procedure** 🔑 Representation of class; typicality; standing in general

Although an incompetent lawyer is not adequate, class counsel's competence is merely necessary, not sufficient, for adequacy of class representatives to fairly and adequately protect the interests of the class. 🚩 Fed. R. Civ. P. 23(a)(4).

1 Case that cites this headnote

**[17]**    **Federal Civil Procedure** 🔑 Representation of class; typicality; standing in general

Conflict of interest will not defeat adequacy requirement for class certification if it is merely speculative or hypothetical. 🚩 Fed. R. Civ. P. 23(a)(4).

**[18]**    **Federal Civil Procedure** 🔑 Consumers, purchasers, borrowers, and debtors

Alleged need of objecting policyholder to make a year-21 balloon payment to keep its universal life insurance policy in effect after insured reached age 96 was entirely speculative and did not give rise to conflict defeating adequacy requirement in class action including policyholders not facing requirement of balloon payment. 🚩 Fed. R. Civ. P. 23(a)(4).

**[19]**    **Federal Courts** 🔑 Failure to mention or inadequacy of treatment of error in appellate briefs

Policyholder objecting to class certification in suit against life insurers waived any argument that it had a claim based on inability to sell its universal life insurance policy, which allegedly required a balloon payment in year 21, on the

secondary market, where opening appellate brief made only an oblique mention of "diminution of value." 🚩Fed. R. Civ. P. 23(a)(4).

**[20]    Federal Courts    🔑 Class actions**

Because district court possesses greater familiarity and expertise than Court of Appeals in managing practical problems of class action, its certification decision is entitled to substantial deference, especially when court makes well-supported factual findings supporting its decision. 🚩Fed. R. Civ. P. 23.

**[21]    Compromise, Settlement, and Release    🔑 Court as fiduciary**

**Compromise, Settlement, and Release    🔑 Class actions, claims, and settlements in general**

When court reviews proposed class-action settlement, it acts as fiduciary for class; in fulfilling this role, district court must conclude that proposed settlement is fair, reasonable, and adequate. 🚩Fed. R. Civ. P. 23(e)(2).

6 Cases that cite this headnote

**[22]    Compromise, Settlement, and Release    🔑 Nature of Relief Provided and Method of Distribution**

District court did not abuse discretion in approving fairness of class action settlement requiring life insurer to refund to class members a portion of the money they had paid in cost of insurance charges for universal life policies, with a minimum of $100 per class member; settlement was reached after extensive motions practice, extensive discovery, and investigation by counsel and multiple settlement discussions and negotiations, it resulted from non-collusive arm's-length negotiations conducted in good faith, co-lead counsel had over 55 years of experience in complex litigation and class actions, and plaintiffs litigated the claims through motions practice, discovery, dispositive

motions, and protracted mediation. 🚩Fed. R. Civ. P. 23(e)(2).

1 Case that cites this headnote

**[23]    Compromise, Settlement, and Release    🔑 Negotiation at arm's length; fraud or collusion**

Fairness analysis for class action settlements is intended primarily to ensure that a settlement is reached as a result of good-faith bargaining at arm's length, without collusion. 🚩Fed. R. Civ. P. 23(e)(2).

**[24]    Compromise, Settlement, and Release    🔑 Nature of Relief Provided and Method of Distribution**

District court did not abuse discretion in approving adequacy of class action settlement requiring life insurer to refund to class members a portion of money they had paid in cost of insurance charges for universal life policies, with a minimum of $100 per class member, and did not abuse discretion as to objecting policyholder facing balloon payment to continue policy if insured lived into year 21 at age 96; district court noted defenses and comprehensively addressed costs and risks of litigation and opposition to settlement, and since objecting policyholder never paid and might never pay the allegedly unlawful charges for cost of insurance, district court believed that its asserted harm was too speculative to render settlement inadequate. 🚩Fed. R. Civ. P. 23(e)(2).

1 Case that cites this headnote

**[25]    Compromise, Settlement, and Release    🔑 Class actions, claims, and settlements in general**

As a general matter, a settlement agreement may be inadequate if it forces class members to release valuable claims for nothing in return. 🚩Fed. R. Civ. P. 23(e)(2).

**[26]**  **Compromise, Settlement, and Release** 👈 **Range of possible recovery**

District court did not abuse discretion in approving reasonableness of class action settlement requiring life insurer to refund to class members a portion of money they had paid in cost of insurance charges for universal life policies, with a minimum of $100 per class member; court carefully weighed the size of the proposed settlement of roughly $40 million against claims at issue and found that settlement compared favorably to other similar settlements.

🚩 Fed. R. Civ. P. 23(e)(2).

2 Cases that cite this headnote

**[27]**  **Compromise, Settlement, and Release** 👈 **Class actions, claims, and settlements in general**

To the extent that reasonableness does any work not already performed by one of the fairness and adequacy requirements for approval of class action settlement, it at least ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial. 🚩 Fed. R. Civ. P. 23(e)(2).

2 Cases that cite this headnote

**\*517** Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, Senior District Judge. (1:16-cv-00192-RDB ; 1:17-cv-02026-GLR)

**Attorneys and Law Firms**

ARGUED: Jeven Robinson Sloan, LOEWINSOHN FLEGLE DEARY SIMON LLP, Dallas, Texas, for Appellant. George Walton Walker, III, BOLES HOLMES WHITE LLC, Auburn, Alabama; Timothy J. O'Driscoll, FAEGRE DRINKER BIDDLE & REATH LLP, Philadelphia, Pennsylvania, for Appellees. ON BRIEF: W. Ralph Canada, Jr., David R. Deary, LOEWINSOHN FLEGLE DEARY SIMON LLP, Dallas, Texas; Michael J. Baxter, BAXTER, BAKER, SIDLE, CONN & JONES, P.A., Baltimore, Maryland, for Appellant. W. Daniel "Dee" Miles, III, Rachel N. Boyd,

Paul W. Evans, BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C., Montgomery, Alabama; Geoffrey R. McDonald, Frank H. Hupfl, III, GEOFF MCDONALD & ASSOCIATES, P.C., Richmond, Virginia; Christopher T. Nace, PAULSON AND NACE, PLLC, Washington, D.C., for Appellees Richard Dickman and Kent Alderson. Christopher F. Petillo, Philadelphia, Pennsylvania, Justin O. Kay, Chicago, Illinois, Brian A. Coleman, FAEGRE DRINKER BIDDLE & REATH LLP, Washington, D.C., for Appellees Banner Life Insurance Company and William Penn Life Insurance Company of New York.

Before MOTZ and RUSHING, Circuit Judges, and FLOYD, Senior Circuit Judge.

**Opinion**

Affirmed by published opinion. Judge Motz wrote the opinion, in which Senior Judge Floyd joined. Judge Rushing wrote an opinion, concurring in part and concurring in the judgment.

DIANA GRIBBON MOTZ, Circuit Judge:

After the district court preliminarily approved a settlement of a years-long class action suit, one class member objected. The court delayed approval of the settlement and permitted the objector substantial discovery. Upon completion of that discovery, the court overruled the objection and approved the settlement. The sole objector now appeals. Because the district court did not abuse its discretion either in **\*518** certifying the class or approving the settlement, we affirm.

I.

A.

In 2016, a proposed class of life insurance policyholders (the *Dickman* class) sued Banner Life Insurance Company and the William Penn Life Insurance Company of New York (together, "Banner") in the District of Maryland. The *Dickman* class representatives are former policyholders who allege that they paid "an excess premium ... to accrue a higher cash value" in their account. Dickman Compl at 6–7. The *Dickman* plaintiffs allege that "Banner is cash strapped" because its parent company has been squeezing dividends out of the insurer for years. *Id.* at 50. Faced with these liquidity problems, they claim, "Banner has decided to take that

cash from policyholders through a fraudulent COI increase." *Id.* Specifically, they assert that Banner "dramatically" increased their cost-of-insurance ("COI") charges to prompt policyholders to move more money into their accounts, then "raid[ed the policyholders'] policies' cash values and attempt[ed] to force them to surrender their policies." *Id.* at 8.

After years of contentious litigation involving protracted discovery, the *Dickman* parties agreed to a settlement in October 2019. The settlement agreement requires Banner to refund to class members a portion of the money they had paid, with a minimum of $100 per class member, and provides some nonmonetary benefits, with a total value of roughly $40 million. The settlement agreement releases Banner from liability for

> [a]ny and all claims ... arising out of or relating to the implemented or not implemented COI Rate Increases or any claims or causes of action that were or could have been alleged in the Consolidated Actions Complaints based on the same factual predicate, including ... any alleged false, misleading, and/or fraudulent statements or omissions made in Policy Statements, Policy communications, marketing materials, Corporate Reports, and websites relating to the Class Policies' COI charges, [or] account value.

After a hearing, the district court preliminarily certified the class for settlement purposes and preliminarily approved the settlement agreement on October 17, 2019. The parties then sent notices of the proposed settlement and the upcoming final fairness hearing to class members.

In response, eighty-nine policyholders (less than one percent of the class) opted out. Only one policyholder, the 1988 Trust for Allen Children Dated 8/8/88 ("the Allen Trust") filed an objection to the proposed settlement. [1]

[1]   In August 2019, the Allen Trust had filed its own proposed class action against Banner (and other defendants not involved in this case) in the

Northern District of California. Banner moved to transfer the Allen Trust's suit to the District of Maryland, arguing that the Northern District of California was not as well-positioned to consider its argument that the *Dickman* settlement agreement precludes the Allen Trust's claims. The Northern District of California granted that motion on January 14, 2020. The Allen Trust's suit, No. 1:20-cv-00175-RDB, remains pending in the District of Maryland.

B.

The Allen Trust alleged that it bought the same kind of life insurance policy as the *Dickman* plaintiffs. According to the Allen Trust, Banner marketed these policies as "universal," that is, policies that would "keep the death benefit ... in place for the remainder of the Insured's life." Under these policies, the policyholder **\*519** could pay a constant minimum "guaranteed" premium for twenty years — in the Allen Trust's case, $24,220 annually — regardless of how much it cost Banner to provide that insurance. *Allen* Compl. at 2. And so, unlike the *Dickman* plaintiffs who had paid Banner's allegedly unlawful COI charges on a rolling basis, the Allen Trust paid only this minimum guaranteed premium.

Under the terms of the policies that Banner sold both to the *Dickman* plaintiffs and the Allen Trust, the policyholder could keep the policy in force after those twenty guaranteed years by paying additional premiums until the insured's 100th birthday, at which point the death benefit would be "lock[ed] in ... for the remainder of the insured's life." *Allen* Compl. at 3. The policy provided that post-year-20 premiums could vary with COI, so that if the cost of providing insurance went up, the policyholder would have to pay more to keep the policy in force until the insured reached 100 or passed away. Nevertheless, the Allen Trust apparently did not expect the year-21 payment to increase over the years. This is so, the Allen Trust contends, because each year Banner sent the Allen Trust an account statement showing no negative balance on its account, suggesting that COI had not increased enough to render the $24,220 yearly premium insufficient to cover Banner's costs. *Id.* at 4.

But the Allen Trust alleges that in reality, Banner kept "a separate, undisclosed set of books" carrying a "Deficit Account" that would become due as a massive payment in year 21 if the insured chose to continue the policy. *Id.* When the Allen Trust discovered this discrepancy, Banner told the

1988 Trust for Allen Children Dated 8/8/88 v. Banner Life..., 28 F.4th 513 (2022)

112 Fed.R.Serv.3d 1

Trust that it would need to pay upwards of $5.8 million when the twenty-year guarantee period ended, all to preserve a death benefit of only $1 million.[2] *Id.* at 5. This balloon payment would thus make it irrational, if not impossible, for a policyholder to keep a policy in force after the twenty-year guarantee period. In short, according to the Allen Trust, this supposedly "universal" life insurance policy was a mirage: as the policyholder approaches year 21, the lifetime benefit shimmers and disappears, leaving only a twenty-year term policy in its place. The gist of the Allen Trust's objection is that the *Dickman* parties did not give sufficient weight to its claim in negotiating the *Dickman* settlement agreement.

[2]    Later, when pressed on the source of this $5.8 million charge, Banner reversed its response, telling the Allen Trust that its balloon payment would actually be only $2.4 million.

C.

The district court held a final fairness hearing in February 2020, where it considered the Allen Trust's objection to the proposed *Dickman* settlement agreement. The court decided to continue the final hearing, "grant[ing] discovery to determine whether the parties' settlement contemplated a deficit account harm" as a "courtesy [ ] extended to the Allen Trust." This, we note, was an extremely unusual occurrence. Objectors "do not have an 'absolute right' to discovery," and courts are especially likely to deny such discovery when, as here, "there is extensive prior discovery" available from the underlying litigation. 4 Newberg on Class Actions § 13:32 (5th ed. 2014) (hereinafter "Newberg") (collecting cases). Nevertheless, the district court granted that extraordinary relief, which it recognized "literally stopped the music" to permit the Allen Trust to take depositions and serve interrogatories. The court also granted the *Dickman* parties some reciprocal discovery.

**\*520** During this interim discovery, the Allen Trust served four interrogatories and deposed a Banner employee. Banner served seven interrogatories on the Allen Trust and deposed a trustee. The district court also permitted the Allen Trust to present a videotaped deposition of its expert witness, William Mountain, an insurance specialist who had previously worked with the Allen Trust.

At the conclusion of the second part of the final fairness hearing in May 2020, the district court overruled the Allen

Trust's objection, certified the *Dickman* class for purposes of settlement, and approved the *Dickman* settlement agreement as fair, reasonable, and adequate.

The Allen Trust appeals. The Trust argues that the district court abused its discretion in two ways: first, by holding that the *Dickman* class met the Rule 23(a) requirements for class certification; and second, by approving the *Dickman* settlement as fair, reasonable, and adequate under Rule 23(e)(2). After careful review of the voluminous record, we cannot agree.

II.

We first address the burden of proof, or lack thereof, on a Rule 23(e)(5) objector. The Allen Trust strenuously argues that the district court erred in requiring that it carry that burden as the objector to the class action settlement. *See* Allen Tr. Br. at 28–33. According to the Allen Trust, because the *Dickman* parties bore the burden of demonstrating that class certification was appropriate and that the settlement agreement was fair, reasonable, and adequate, the district court abused its discretion in shifting that burden to the Trust. The Allen Trust correctly notes that we have never clearly described who bears what burdens when a class member objects to a proposed settlement. We do so now.

Rule 23(e)(5)(a) provides, in relevant part, that an "objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection." The Advisory Committee Notes further explain:

> objections must provide sufficient specifics to enable the parties to respond to them and the court to evaluate them. One feature required of objections is specification whether the objection asserts interests of only the objector, or of some subset of the class, or of all class members. Beyond that, the rule directs that the objection state its grounds "with specificity." Failure to provide needed specificity may be a basis for rejecting an objection. Courts should take care, however, to avoid unduly burdening class members who

wish to object, and to recognize that a class member who is not represented by counsel may present objections that do not adhere to technical legal standards.

Fed. R. Civ. P. 23(e)(5)(A) advisory committee's note to 2018 amendment.

[1] Of course, insofar as the decision to certify the class is at issue, the "burden [lies] upon the parties seeking class certification." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 458 (4th Cir. 2003). The principle behind this rule is that "a class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' " *Id.* (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). And because that rationale applies equally to a class settlement releasing claims beyond those of the named plaintiffs, we think it uncontroversial that in the context of a Rule 23(e)(5) objection, the parties seeking approval of a class settlement also bear the burden of demonstrating **\*521** fairness, reasonableness, and adequacy.

[2] In addition, the court "act[s] as a fiduciary of the class." *Sharp Farms v. Speaks*, 917 F.3d 276, 293 (4th Cir. 2019). In this role, "the district court has a fiduciary responsibility to ensure that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately." *Id.* at 294 (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995) (cleaned up)).

We can synthesize all this as follows:

[3] First, an objector to a class settlement must state the basis for its objection with enough specificity to allow the parties to respond and the court to evaluate the issues at hand. This requirement is somewhat analogous, though not necessarily identical, to the notice pleading required for complaints. *See* Fed. R. Civ. P. 8(a) ("[A] claim for relief must contain: ... a short and plain statement of the claim showing that the pleader is entitled to relief.").

[4] Second, the parties propounding the settlement, in addition to bearing the initial burden to show that the proposed class meets the Rule 23(a) requirements for certification and that a proposed settlement is fair, reasonable, and adequate, must show that the objection does not demonstrate that the proposed settlement fails one of those requirements. The showing necessary to prevent an objection from derailing a settlement will, of course, vary with the strength of the objection itself; frivolous objections may need very little to overcome them, while weightier objections will require more.

[5] Third, the district court, at all times, remains a fiduciary of the class. *Sharp Farms*, 917 F.3d at 293–94. The district court must protect the class's interests from parties and counsel overeager to settle (who may deny absent class members relief that they would otherwise receive) and frivolous objectors (who may impede or delay valuable compensation to others). The district court may, in its discretion, grant an objector discovery to assist the court in determining an objection's merit. *See* Newberg § 13:32 ("The touchstone for [granting an objector discovery] is that it will ultimately assist the court in determining the fairness of the settlement.").

Upon a review of the record, we do not understand the district court to have done anything different than what we have just outlined. The court required the Allen Trust to specify and support its objection, while keeping the ultimate burden on the proponents of the settlement to demonstrate its fairness. Thus, the Allen Trust's argument that the court improperly placed upon it the burden of overcoming the settlement provides no basis for reversal.

## III.

[6] [7] We next address whether the district court erred in certifying the *Dickman* class. We review for abuse of discretion. *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 233 (4th Cir. 2021). The proponents of "class certification must affirmatively demonstrate [their] compliance with" the requirements of Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). These requirements are: (1) numerosity (which no one disputes the *Dickman* class meets); (2) commonality; (3) typicality; and (4) adequacy. *See In re Zetia*, 7 F.4th. at 233–34; Fed. R. Civ. P. 23(a).

A.

**[8]** **[9]** **[10]** **[11]** We initially turn to commonality. [3] In a Rule 23(b)(3) class action like this one, "the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). So "the mere fact that the defendants engage in uniform conduct is not, by itself, sufficient to satisfy" the commonality requirement here. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 366 (4th Cir. 2014). Rather, in a Rule 23(b)(3) case, "[t]he predominance inquiry focuses not only on the existence of common questions, but also on how those questions relate to the controversy at the heart of the litigation." *Id.*

[3] The *Dickman* parties claim that the Allen Trust waived its commonality and adequacy arguments by not presenting them to the district court. Banner Life Br. at 32; Dickman Br. at 18. But the record is exceedingly clear that the Allen Trust did *not* waive these arguments. Although the Allen Trust's objection does not contain a separate section for commonality, it does contain a lengthy discussion of typicality and adequacy, and these requirements "tend[ ] to merge." *Amchem Prods.*, 521 U.S. at 626 n.20, 117 S.Ct. 2231. For this very reason, we have previously refused to hold that a party waived arguments about one of these class certification requirements where, "[a]lthough more explicit separation of the ... commonality inquir[y] would no doubt have been wise," the party's arguments "directly" raised the same points. *Brown v. Nucor Corp.*, 785 F.3d 895, 918 (4th Cir. 2015). So too here.

**[12]** At the preliminary certification hearing, the district court explained that the class included "policyholders whose standardized form policy included a uniform contractual provision that was allegedly breached by Defendants' common course of conduct in increasing these COI rates." Moreover, in examining "Plaintiffs' fraud claims, [to] determin[e] whether Defendants misrepresented the performance of the policies ... would certainly involve **\*522** resolution of an issue central to the settlement class members' claims in one fell swoop." *Id.* Therefore, pursuant to Rule 23(b)(3), the court found that these common questions "clearly ... predominate ... because the central question to be decided here is whether Banner and William Penn's implementation of the COI rate increases breached the standardized policy language." The court memorialized these preliminary findings in a subsequent written order.

After the Allen Trust objected to these preliminary findings, the district court took the unusual step of permitting discovery. The Allen Trust's expert, William Mountain, testified in his deposition that the year-21 balloon payment at issue in the Allen Trust's case appeared to consist of the unpaid COI charges at the heart of the *Dickman* litigation. [4] Similarly, in a response to the Allen Trust's interrogatories, Banner stated that the balloon payment "is comprised of unpaid COI (and expense) charges during the [20-year] Guarantee Period (as defined in the policy) and the COI (and expense) charges due in Year 21 of the policy." After reviewing the information revealed in discovery, the district **\*523** court stated at the final approval hearing: "it's clear to me that the Allen Trust is within the ambit of the class," and that "questions of law, in fact, are common to the class." Moreover, "the common questions predominate over any questions affecting only individual members." The court entered a subsequent order expressly incorporating its findings from the preliminary approval into the final approval.

[4] To the extent that the Allen Trust argues that the *Dickman* parties never proved that the so-called "deficit account" consisted *only* of COI charges, we note that the magistrate judge who oversaw discovery gave the Allen Trust the opportunity to ask for such proof by rewording an interrogatory. The Allen Trust, apparently, did not do so. Moreover, the crucial evidence before the district court was the testimony of the Allen Trust's own expert that the year-21 balloon payment was "consistent with the amount of unpaid COI charges" at issue in *Dickman* and Banner's above-quoted response to the Allen Trust's (unreworded) interrogatory.

This finding, made after the grant of discovery to the Allen Trust, did not constitute an abuse of discretion. The Trust

vigorously argues that its asserted "deficit account harm" is totally different from the "negative account value" that the *Dickman* parties considered in negotiating the settlement agreement. But upon closer examination, the Allen Trust's and *Dickman* plaintiffs' claims are two sides of the same coin. The difference, such as it is, turns on *when* the plaintiffs would have to pay the allegedly unlawful charges. The *Dickman* plaintiffs had been paying them on a rolling basis, going above and beyond the guaranteed minimum payment during the first twenty years. The Allen Trust may have to pay these charges all at once, in year 21. But the COI charges themselves are the same.

Based upon the record, and in light of our deference to the district court in the trenches of fact-intensive class action litigation, we cannot say that the court abused its discretion in holding that this temporal distinction was not substantial enough to defeat commonality, or — as we shall see — any other aspect of the *Dickman* settlement. [5]

[5]    Parties seeking Rule 23(b)(3) class certification, in addition to demonstrating that "questions of law or fact common to class members *predominate* over any questions affecting only individual members," must also show that "proceeding as a class is *superior* to other available methods of litigation." *In re Zetia*, 7 F.4th. at 234 (emphasis added). The Allen Trust does not contend that this superiority requirement has not been met.

### B.

**[13]    [14]** As to typicality, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge[,]" and so we need not tarry for long. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). At the preliminary approval hearing, the district court held "that the Plaintiffs' fraud claims are typical of [the] settlement class because their claims arise from the Defendants' same conduct." And the court reiterated that holding at the final approval hearing, concluding that the Allen Trust's claim did not defeat typicality because its asserted harm, the year-21 balloon payment, turned on unlawful COI charges — just like the *Dickman* class's claims. The district court did not abuse its discretion in doing so.

### C.

We turn to adequacy. As an initial matter, we agree with the Allen Trust insofar as it argues that the district court at the final approval hearing did not perfectly describe the requirements of the Rule 23(a)(4) adequacy standard.

**[15]** At the final approval hearing, the court stated: "[I]n terms of adequacy of representation, this has been ably presented by counsel, and obviously the lawyers here, the quality of the briefing is such that there's no question in terms of adequacy of representation." Although we too have little doubt about the competency of any of the counsel involved in this case, the world's greatest lawyers cannot adequately represent you if they are busy advocating for someone else. As the Supreme Court explained in *Amchem Prods., Inc. v. Windsor*, "[t]he adequacy inquiry under ***524** Rule 23(a)(4) serves [in part] to uncover conflicts of interest between named parties and the class they seek to represent." 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

**[16]** Thus, although an incompetent lawyer is not adequate, class counsel's competence is merely necessary, not sufficient, for Rule 23(a)(4) adequacy. At the preliminary approval hearing, however, the district court expressly recognized that "in terms of adequacy of representation, there are two requirements," lack of conflicts *and* class counsel's competency. In its final approval order, the district court incorporated its findings from the preliminary approval hearing, which included this correct statement of the law. Although the district court could perhaps have described the legal standard with more clarity, the record is quite clear that it understood that standard perfectly.

**[17]    [18]    [19]** Moreover, counsel in *Dickman* were quite clearly "adequate" for Rule 23(a)(4) purposes. That is so because a conflict of interest "will not defeat the adequacy requirement if it is 'merely speculative or hypothetical.'" *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (quoting *Gunnells*, 348 F.3d at 430). Here, the Allen Trust asserts that a conflict arises from the fact that, in the future, it may need to make a year-21 balloon payment if it wants to prolong its policy. But as the *Dickman* parties argue and as the district court found, this is entirely speculative. Before being faced with the year-21 balloon payment, Allen

Trust's insured will need to survive to the age of 96 and the Allen Trust will need to choose to keep the policy in effect until that time. That may happen, or it may not.[6] (We of course hope that the insured enjoys a long life.)

[6]    The Allen Trust also argued to the district court that in addition to a possible year-21 balloon payment, it has *already* suffered an injury because Banner's acts made it impossible for the Allen Trust to sell the policy on the secondary market. Certainly, acts that prevent a plaintiff from buying or selling certain products may give rise to a claim. *Cf. TransUnion LLC v. Ramirez*, —— U.S. ——, 141 S. Ct. 2190, 2214, 210 L.Ed.2d 568 (2021) (holding that plaintiff alleged sufficient injury for standing purposes where he asserted that defendant's misleading credit report caused car dealership to refuse to sell him a car). But the Allen Trust's only reference to this theory of harm in its opening brief before us is an oblique mention of "diminution of value." Allen Tr. Br. at 39. Thus, the Allen Trust has waived any argument that it has a claim based on this theory of injury. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to 'develop its argument — even if its brief takes a passing shot at the issue." (quoting *Brown*, 785 F.3d at 923 (cleaned up)).

The Allen Trust's contention is comparable to the arguments we rejected in *Ward*. That case involved insurance policyholders suing to force insurance companies to cover the "actual charges" of their cancer treatment. *Id.* at 169. The insurers asserted that the class violated Rule 23(a)(4) adequacy because the lawsuit's success "will cause premiums to increase enough to adversely affect some members of the class." *Id.* at 180. We affirmed the district court's rejection of that argument, holding that a possible future increase in insurance rates was an "uncertain prediction" that was too speculative to establish an adequacy-busting conflict. *Id.* Similarly here, because the notion that the Allen Trust does (or will ever) have a distinct claim is "merely speculative or hypothetical," it cannot defeat adequacy. *Gunnells*, 348 F.3d at 430.

### D.

**[20]**    "Because a district court possesses greater familiarity and expertise than a ***525** court of appeals in managing the practical problems of a class action, its certification decision is entitled to 'substantial deference,' especially when the court makes 'well-supported factual findings supporting its decision.' " *Ward*, 595 F.3d at 179 (quoting *Gunnells*, 348 F.3d at 434, 421). This case, chock-full of the most esoteric principles of life insurance accounting imaginable, could be the poster child for that rule. The district court did a commendably careful job in evaluating the Allen Trust's arguments and determining that they did not justify refusing to certify the class. It did not abuse its discretion in doing so.

### IV.

**[21]**    In addition to its challenge to the district court's decision to certify the *Dickman* class under Rule 23(a), the Allen Trust also argues that the court erred in approving the settlement under Rule 23(e)(2). On this second issue, our review is once again for abuse of discretion. *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020). "When the court reviews a proposed class-action settlement, it acts as a fiduciary for the class." *Id.* at 483–84 (citing *Sharp Farms*, 917 F.3d at 293–94)). In fulfilling this role, the district court must conclude that a proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

### A.

**[22]    [23]**    Under Rule 23(e)(2), "[t]he fairness analysis is intended primarily to ensure that a 'settlement is reached as a result of good-faith bargaining at arm's length, without collusion.' " *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (alteration omitted) (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)). "[W]e have identified four factors for determining a settlement's fairness, which are: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the

negotiations; and (4) the experience of counsel in the area of the class action litigation." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159).

As the district court summarized at the preliminary approval hearing, "[t]he settlement was reached after an extensive motions practice, extensive discovery and investigation of Banner and William Penn policies by Plaintiffs' counsel and multiple settlement discussions and negotiations." At the final approval hearing, after considering the arguments of the Allen Trust, the district court reiterated: "the settlement resulted from noncollusive arm's-length negotiations conducted in good faith by counsel. Collectively, co-lead counsel have over 55 years of experience in complex litigation and class actions." Paying particularly close attention to the protracted litigation preceding the settlement, the court noted that the "plaintiffs here litigated the claims against defendants, [through] motions practice, discovery, dispositive motions, and protracted mediation which was not successful." And "discovery, not even counting the discovery since February when I delayed my final approval of this settlement [for the Allen Trust to conduct its own discovery], has included some 7,500 documents consisting of countless pages."

The district court's analysis is functionally identical to previous cases in which we have upheld a class settlement approval as fair. *See, e.g., Lumber Liquidators*, 952 F.3d at 484–85 (upholding settlement as fair where parties had litigated dispositive motions, "conducted significant discovery by deposing thirteen witnesses and reviewing vast quantities of documents," "engaged **\*526** in arm's length negotiations and participated in several mediations," and were represented by counsel with "extensive experience in complex civil litigation."). Under these circumstances, we simply cannot say that the district court abused its discretion.

### B.

[24] The Allen Trust's arguments challenging the settlement sound mostly in adequacy.[7] This court has "specified the following factors for assessing" a class settlement's "adequacy":

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or

> strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*Id.* at 484.

[7]

> We note that "adequacy" for Rule 23(e)(2) settlement approval purposes is not identical to "adequacy" in the Rule 23(a)(4) class certification context, although (as we shall see) the two can overlap in some respects. The former addresses whether a *settlement* is good enough to justify extinguishing the claims of absent individual class members; the latter addresses whether the *class representatives* will do a good enough job to justify allowing the plaintiffs to proceed as a class at all.

Banner's solvency is not at issue here. As to the other factors, the district court comprehensively addressed the prongs involving the costs and risks of litigation and the opposition to the settlement. For example, the court noted the existence of "defenses ... which raised obstacles to recovery, including without limitation ... whether the plaintiffs satisfied Rule 23 by demonstrating liability and whether damages can be established by classwide proof." Given these defenses and the potential costs of litigating the case — even if successful — the court found that "[a]pproving this settlement now avoids protracted litigation costs and risks to the settlement class and provides them with immediate recovery." Because the district court had been "on the firing line" for years of motions practice and discovery, *id.* (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000)), we will not easily disregard this assessment.

[25] But that does not alone answer the thrust of the Allen Trust's objection — that the settlement agreement is inadequate *as to it* because under the agreement the Trust must give up something for nothing.[8] As a general matter, a settlement **\*527** agreement may be inadequate if it forces class members to release valuable claims for nothing in return.

*See* Newberg § 13:60 (noting that " 'red flags' [for settlement approval include] ... compromising class members' claims without providing compensation in return.").

8    It is not clear that the settlement actually *does* release any of the Allen Trust's claims against Banner. As the *Dickman* plaintiffs note, the settlement agreement only releases claims "based on the same factual predicate" as the *Dickman* complaint. Dickman Br. at 24–25; *see also* 🚩*Berry*, 807 F.3d at 616 (noting that class action settlement may release only "claims arising out of the 'identical factual predicate' " as class representatives' allegations (citation omitted)). The crux of the *Dickman* complaint is that the plaintiffs paid more than the minimum guaranteed premium. Indeed, their complaint asserts that they could have avoided many of the alleged harms if they had been able to "reduce[ ] their premium payments to the minimum required premium[,]" *Dickman* Compl. at 57 — that is, if they had done exactly what the Allen Trust did. Of course, this is not the Allen Trust's lawsuit, and so whether the settlement in this case dooms the Allen Trust's separate action (or a future action if it ever does need to make the year-21 balloon payment) is not at issue here. *See McAdams v. Robinson*, 26 F.4th 149, 161 (4th Cir. 2022) (explaining that "[w]hether the release covers claims not alleged in [a] class action complaint is for a court enforcing the release to decide" and that to opine on whether a release bars another case "would be advisory."). We note this issue only to emphasize that the Allen Trust's arguments about the release's breadth overlook an obvious limiting principle — that if its claim arises from distinct facts, then the *Dickman* settlement does not bar that claim.

However, the district court found that at this time, the Allen Trust did not have much of a claim at all, and so was not really giving up very much. *See* Newberg § 13:60 ("It is fine to release a claim without compensation if the value of the claim is zero."). Specifically, the district court held: "there is literally no negative account value to date which has ever been paid by the Allen Trust, and it remains totally subjective and speculative that there ever would be such damages." We noted earlier that the distinction between the Allen Trust's theory and that of the *Dickman* plaintiffs is basically temporal; because the Allen Trust has not paid,

and may never pay, the allegedly unlawful COI charges, the district court held that its asserted harm is too speculative to render the settlement inadequate. As in our discussion of 🚩Rule 23(a)(4) adequacy, we cannot say that this evaluation of the Allen Trust's theory of the case constituted an abuse of discretion.

Moreover, the ferocity of the Allen Trust's objection is not the only thing to be considered. The district court also properly noted that the Allen Trust's concerns, however strongly held, were apparently not widespread. *See Lumber Liquidators*, 952 F.3d at 484 (noting that courts considering adequacy of class settlement should consider "the degree of opposition to the settlement"). Indeed, the Allen Trust was the *only* class member to object to the settlement (although it did not opt out of the class). *See* 🚩*Berry*, 807 F.3d at 618 ("[T]he fact that only one of the approximately 200 million members of the ... Class objects ... is relevant to our decision [upholding the settlement as fair, reasonable, and adequate].").

## C.

[26]    [27]    Finally, "[a]lthough we have not enumerated factors for assessing a settlement's reasonableness," *Lumber Liquidators*, 952 F.3d at 484, we have suggested that assessing whether a class settlement is "reasonable" involves examining the amount of the settlement. *See, e.g., Sharp Farms*, 917 F.3d at 303–04. To the extent that reasonableness does any work not already performed by one of the other 🚩Rule 23(e)(2) requirements, we think it at least ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial. *See* Newberg § 13:49 ("In evaluating the value of the class members' claims, the court need not decide the merits of the case nor substitute its judgment of what the case might be worth for that of class counsel; however, 'the court must at least satisfy itself that the class settlement is within the "ballpark" of reasonableness.' " (citation omitted)).

The Allen Trust does not complain that the size of the *Dickman* settlement — valued at roughly $40 million — is itself too small. And although the Allen Trust contends that the $100 minimum settlement benefit that *it* would receive is wildly out of proportion to the harms it has suffered, that argument falls more under the adequacy inquiry, discussed above.

The record makes clear that the district court carefully weighed the size of the proposed settlement against the claims at issue and found that this settlement compares favorably to other similar settlements. **\*528** The court did not abuse its discretion.

V.

In sum, the district court did not abuse its discretion either in certifying the *Dickman* class or in approving the settlement as fair, reasonable, and adequate. Therefore, the judgment of the district court is

*AFFIRMED.*

RUSHING, Circuit Judge, concurring in part and concurring in the judgment:

I agree with the majority that the district court did not abuse its discretion in certifying the *Dickman* class or in approving the settlement. Regarding the adequacy of the class representatives, however, I reach that conclusion by a different route.

As a condition of certification, Rule 23(a)(4) requires that class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To be adequate, the named representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–626, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotation marks omitted).

On appeal, the Allen Trust argues that the *Dickman* plaintiffs, as former policyholders, cannot adequately represent the interests of current policyholders like the Allen Trust because their remedial goals are not aligned. Former policyholders seek to maximize repayments from Banner for charges already collected, whereas current policyholders' interests are largely prospective. We have held that analogous conflicts of interest can destroy adequacy. *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 339 (4th Cir. 1998); *Sharp Farms v. Speaks*, 917 F.3d 276, 307–308 (4th Cir. 2019)

(Quattlebaum, J., concurring); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) ("[I]t is obvious after *Amchem* that a class divided between holders of present and future claims ... [creates] conflicting interests of counsel.").

But the Allen Trust did not advance this argument in the district court. There, the Allen Trust contended that the class representatives were inadequate because they suffered only "COI harm" while the Allen Trust asserted an allegedly distinct injury it called "deficit account harm." As the majority correctly explains, the district court did not abuse its discretion in rejecting that argument. *See supra*, at 522–23 & n.4. It is materially different, however, from the argument the Allen Trust pursues on appeal. Nor can the Allen Trust salvage its new argument by claiming that it merely repackages its old argument about the types of harm with new temporal labels. Current policyholders may have suffered COI harm, deficit account harm, or both, just like former policyholders. The two groups' divergent remedial interests —as the Allen Trust characterizes them on appeal—raise a distinct legal issue from the supposedly different harms on which the Allen Trust based its argument below.

We ordinarily do not consider arguments raised for the first time on appeal. *See Campbell v. Bos. Sci. Corp.*, 882 F.3d 70, 80 (4th Cir. 2018); *First Va. Banks, Inc. v. BP Expl. & Oil Inc.*, 206 F.3d 404, 407 n.1 (4th Cir. 2000). And "[a]n objection in the district court on one ground does not preserve for appeal objections on different grounds." *United States v. Green*, 996 F.3d 176, 187 (4th Cir. 2021) (Rushing, J., concurring) (citing *United States v. Massenburg*, 564 F.3d 337, 342 n.2 (4th Cir. 2009)). Finding no reason to deviate **\*529** from our usual practice here, I would hold the Allen Trust's adequacy challenge forfeited and would not address its merits. Thus, with the exception of Part III-C concerning the adequacy of the class representatives, I am pleased to join the majority's opinion.

**All Citations**

28 F.4th 513, 112 Fed.R.Serv.3d 1

© 2023 Thomson Reuters. No claim to original U.S. Government Works.