DOCKET NO. 21-14503

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

EMILY PINON, GARY C. KLEIN, KIM BROWN, JOSHUA FRANKUM,
DINEZ WEBSTER, and TODD BRYAN,
On Behalf Of All Others Similarly Situated
Plaintiffs-Appellees

v.

DAIMLER AG and MERCEDES-BENZ USA, LLC,
Defendants-Appellees

v.

ROBERT PONZIO, ALEX ACUNA, BRIAN MADSEN,
VANESSA M. MONTGOMERY, ROBERT MULL, HADIYA NELTHROPE,
SAMUEL SALGADO, and FREDERICK J. PARKER,
Interested Parties - Appellants

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Case No. 1:18-cv-03984-MHC

**SUPPLEMENTAL BRIEF OF
PLAINTIFFS-APPELLEES EMILY PINON *et al.***

W. Lewis Garrison, Jr.
Taylor C. Bartlett
**HENINGER GARRISON DAVIS, LLC**
2224 1ˢᵗ Avenue North
Birmingham, Alabama 35203
Telephone: (205) 326-3336
Email: lewis@hgdlawfirm.com
Email: taylor@hgdlawfirm.com

James F. McDonough, III
**ROZIER HARDT MCDONOUGH PLLC**
3621 Vinings Slope, Suite 4300
Atlanta, Georgia 30339
Telephone: (470) 480-9505
Email: jim@rhmtrial.com

Attorneys for Plaintiffs/Appellees Emily Pinon, *et al.*

May 31, 2023

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. Proc. 26.1 and Local Rules 26.1-1, 26.1-2 and 26.1-3 and to enable the Judges of the Court to evaluate conflicts that might require their disqualification or recusal, Plaintiffs-Appellees Emily Pinon, Gary C. Klein, Kim Brown, Joshua Frankum, Dinez Webster, and Todd Bryan (hereinafter, "Pinon") state that they are not corporations.

The undersigned counsel of record for Pinon certify that the following is a complete list of the trial judge, attorneys, persons, associated persons, firms, partnerships, or corporations that have an interest in the outcome of this case:

1. Acuna, Alex (Interested Party-Appellant)

2. Bartlett, Caroline F. (Counsel for Interested Parties-Appellants)

3. Bartlett, Taylor C. (Counsel for Plaintiffs-Appellees)

4. Blum, Joseph H. (Counsel for Defendants-Appellees)

5. Brown, Kim (Plaintiff-Appellee)

6. Bryan, Todd (Plaintiff-Appellee)

7. Calamusa, Steven G. (Counsel for Interested Parties-Appellants)

8. Caplan Cobb LLP (Counsel for Interested Parties-Appellants)

9. Caplan, Michael A. (Counsel for Interested Parties-Appellants)

10. Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. (Counsel for Interested Parties-Appellants)

11. Carr, Scott Jefferson (Counsel for Defendants-Appellees)

12. Cecchi, James E. (Counsel for Interested Parties-Appellants)

13. Cohen, Alexander C. (Counsel for Interested Parties-Appellants)

14. The Honorable Mark H. Cohen, District Judge, United States District Court for the Northern District of Georgia

15. Daimler AG (Defendant-Appellee)

16. Davidson, Stuart A. (Counsel for Interested Parties-Appellants)

17. Dearman, Mark J. (Counsel for Interested Parties-Appellants)

18. Devereaux, Stephen B. (Counsel for Defendants-Appellees)

19. Dwoskin, Eric (Counsel for Interested Parties-Appellants)

20. Frankum, Joshua (Plaintiff-Appellee)

21. Garrison, W. Lewis, Jr. (Counsel for Plaintiffs-Appellees)

22. Gordon & Partners, P.A. (Counsel for Interested Parties-Appellants)

23. Gordon, Robert E. (Counsel for Interested Parties-Appellants)

24. Heninger Garrison Davis, LLC (Counsel for Plaintiffs-Appellees)

25. Jackson & Tucker, PC (Counsel for Plaintiffs-Appellees)

26. Jackson, K. Stephen (Counsel for Plaintiffs-Appellees)

27. King & Spalding LLP (Counsel for Defendants-Appellees)

28. Kitchens, Madison H. (Counsel for Defendants-Appellees)

29. Klein, Gary C. (Plaintiff-Appellee)

30. Knapp, Eric Jonathan (Counsel for Defendants-Appellees)

31. Lynch, Travis E. (Counsel for Plaintiffs-Appellees)

32. Lyons, John M. (Counsel for Defendants-Appellees)

33. Madsen, Brian (Interested Party-Appellant)

34. Mann, Dara D. (Counsel for Defendants-Appellees)

35. McDonough, James F., III (Counsel for Plaintiffs-Appellees)

36. Mercedes-Benz USA, LLC (Defendant-Appellee)

37. Miller, Jonathan R. (Counsel for Plaintiffs-Appellees)

38. Montgomery, Vanessa M. (Interested Party-Appellant)

39. Mull, Robert (Interested Party-Appellant)

40. Nelthrope, Hadiya (Interested Party-Appellant)

41. O'Brien, James A. (Counsel for Interested Parties-Appellants)

42. Parker, Frederick J. (Interested Party-Appellant)

43. Pinon, Emily (Plaintiff-Appellee)

44. Ponzio, Robert (Interested Party-Appellant)

45. Reinke, Adam (Counsel for Defendants-Appellees)

46. Robbins Geller Rudman & Dowd LLP (Counsel for Interested Parties-Appellants)

47. Rozier Hardt McDonough, PLLC (Counsel for Plaintiffs-Appellees)

48. Salgado, Samuel (Interested Party-Appellant)

49. Sawyer, Maxwell H. (Counsel for Interested Parties-Appellants)

50. Shook, Hardy & Bacon, L.L.P. (Counsel for Defendants-Appellees)

51. Squire Patton Boggs (US) LLP (Counsel for Defendants-Appellees)

52. Sullivan, Thomas J. (Counsel for Defendants-Appellees)

53. Waddell, T. Brandon (Counsel for Interested Parties-Appellants)

54. Webster. Dinez (Plaintiff-Appellee)

55. Wilens, Douglas (Counsel for Interested Parties-Appellants)

56. Williams, Daniel G. (Counsel for Interested Parties-Appellants)

57. Yoshino, Troy Masami (Counsel for Defendants-Appellees)

*/s/ James F. McDonough, III*

W. Lewis Garrison, Jr.
Taylor C. Bartlett
**HENINGER GARRISON DAVIS, LLC**
2224 1st Avenue North
Birmingham, Alabama 35203
Telephone: (205) 326-3336
Email: lewis@hgdlawfirm.com
Email: taylor@hgdlawfirm.com

James F. McDonough, III
**ROZIER HARDT MCDONOUGH PLLC**
3621 Vinings Slope, Suite 4300
Atlanta, Georgia 30339
Telephone: (470) 480-9505
Email: jim@rhmtrial.com

Attorneys for Plaintiffs-Appellees *Emily Pinon, et al.*

*Emily Pinon, et al. v. Robert Ponzio, et al.* - Docket No.: 21-14503

## TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT** ............................................................. **CIP-1**

**TABLE OF CITATIONS** ........................................................................................ **ii**

**INTRODUCTION** ................................................................................................ **1**

**ARGUMENT** ....................................................................................................... **2**

    **I.**   **BACKGROUND AND CONTEXT** ..................................................... **2**

    **II.**  **RESPONSES TO THE COURT'S QUESTIONS.** ............................... **8**

        **A.**  **QUESTION 1.** ......................................................................... **8**

        **B.**  **QUESTION 2.** ....................................................................... **12**

        **C.**  **QUESTION 3.** ....................................................................... **12**

        **D.**  **QUESTION 4.** ....................................................................... **13**

**CONCLUSION** .................................................................................................. **13**

**CERTIFICATE OF COMPLIANCE** ................................................................. **16**

**CERTIFICATE OF SERVICE** .......................................................................... **17**

## <u>TABLE OF CITATIONS</u>

### <u>Cases</u>

*Holmes v. Continental Can Co.,* 706 F.2d 1144 (11th Cir. 1983) .................................8

*In re: Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021)..........................................................................................................................13

*Kincade v. General Tire & Rubber Co.*, 635 F.2d 501 (5th Cir.1981) ........................8

*United States v. City of Miami, Fla.*, 614 F.2d 1322 (5th Cir. 1980) ..........................12

### <u>Rules</u>

Fed. R. Civ. P. 23(e)(2).................................................................................................13

# <u>INTRODUCTION</u>

The Court has requested supplemental briefing to answer four questions about "class members who are 'categorically ineligible' to benefit from the settlement …." April 26, 2023 Letter - Dkt. No. 64 at p. 1.  Plaintiffs-Appellees Emily Pinon, Gary C. Klein, Kim Brown, Joshua Frankum, Dinez Webster, and Todd Bryan (hereinafter, "Pinon") will provide answers to those questions.  However, the undersigned have significant concerns about the direction the Court seems to be headed (based on the questions it is posing), including the overarching concern that, by tailoring the class to exclude alleged "categorically ineligible" class members, the Court would be cutting the legs out from the class members who were actually diligent in pursuing their rights. Put differently, upending the Settlement would put class members back into a position where those class members could now never recover a dime in a lawsuit—the first TSB disclosing the alleged defect occurred back in June of 2014 and this lawsuit was brought in August of 2018, putting most class members far outside any statute of limitations.  The District Court, after an exhaustive review, found this settlement to be fair and adequate to the class, and the answers to these questions about class members who fall into this Court's definition of "categorically ineligible" should not be a basis to disturb that decision.

Pinon are also troubled by the absence of any mention, thus far, of the history of the objectors and their counsel in this case, how a vengeful reaction to the

settlement brought us to this point, and how the objection can be squared with the court ordered settlement offer objector's counsel made to Mercedes which is in the record. Moreover, how the objector's counsel can endorse the *Amin* settlement yet demonize this settlement, which has the same type of sliding scale of relief, cannot be reconciled. The shenanigans perpetrated by the objector's counsel greatly troubled the District Court and they should trouble this Court as well.

Further, with regard to determining the fairness of this settlement, this Court should not focus on the unknown, rather, it should focus on the known and what can reasonably be anticipated for those who will benefit from the settlement and those who were diligent in their actions.

## **ARGUMENT**

The Court has its questions, but there are several issues that should provide context to the answers to these questions and we will set them out below:

### I. BACKGROUND AND CONTEXT

*First*, the Mars Red paint has a latent defect. It *may* bubble, peel, or flake at some point. *It may never bubble, peel, or flake.* In other words, this latent defect may never manifest.

*Second*, there is a responsibility that comes with the ownership or leasing of any vehicle. That responsibility is to take the vehicle to someone who is in the business of repairing vehicles if a significant problem occurs. Responsible vehicle owners address

problems when they arise.  We must presume that class members will exert common sense if their Mars Red latent defect did in fact manifest.  Responsible Mercedes owners or lessees would have these problems addressed.  These vehicles are not cheap, generic vehicles, but instead, they are luxury vehicles with owners that were able to afford a Mercedes (and presumably any issues that came with it).  If a class vehicle had a defect that manifested, and these people are not entitled to relief under the settlement, then either: (1) we have an irresponsible Mercedes owner who failed to address a problem with the vehicle; or (2) the issue was so minor that it did not merit a visit to a dealer to have it checked out.  As stated earlier, one of the areas to focus on with respect to this settlement is the *known*.  **We know that 1690 vehicles were presented to have paint issues repaired because the claims administrator has received that number of claims for past repairs.**  This is not an insignificant number, more than 2.3% of the number of total vehicles in the class.

So, if this Court wishes to focus on the number of people who are "categorically ineligible" as it is defined, shouldn't this Court also focus on how many of these class members failed to act as responsible owners and thus have no one but themselves to blame for not being entitled to any of this settlement's benefits?  The Court would label these class members "categorically ineligible," while we would label them as "outliers."  Class counsel had every right to believe that people would be diligent if these problems arose.  If they had, there would be no "categorically ineligible" class

members; that group would not exist.  The objectors comprise a group that is a creature of certain class member's unwillingness to act as responsible car owners.

Who are these "categorically ineligible" people?  When did their defects manifest?  How significant was the peeling, flaking, or bubbling?  How many panels on the vehicles were affected?  How can former owners of these vehicles who had problems but never had them addressed be identified?  If a former owner had an issue with the paint and never had it addressed, how can this Court assume that the former owner suffered a loss of value when the vehicle was sold?  Why did these people fail to take their vehicles to an authorized dealer?  This group of *unknowns* will never be *known.*  There is no methodology to determine who these people are.  Class members who failed to act responsibly and who did not exercise common sense to have them addressed by an authorized dealer are those within this Court's definition of "categorically ineligible."

What type of damage claim would this group of "categorically ineligible" class members have in any event?  This group would have immense hurdles to overcome. This settlement includes full or partial relief to vehicles **that are 15 years old, which is an 11 year extension of the warranty.**  Statute of limitations problems abound for this group of vehicles more than 15 years old, as well as vehicles that have more than 150,000 miles based on the average miles driven per year.  The only claim this group would have would be some version of a "loss of value" claim.  How valuable could

that claim be on a vehicle older than 15 years or one that had more than 150,000 miles when the owner of the vehicle never sought to have the paint issue repaired?

The Court is concerned with lessees. It is hard to envision how a lessee could be damaged. The lessee would not be responsible for repairing a problem inherent with the paint on the vehicle. If a problem manifested, Mercedes should be responsible for repairing the problem, and even if the lessee failed to communicate the problem to Mercedes, what would the lessee's damages be? If there is an unlikely former lessee out there somewhere who, rather than reporting the paint issue to Mercedes, paid to have it repaired himself, then in addition to being an extreme anomaly, that person could have requested to be excluded from the settlement and his legal rights, whatever they may be, would be preserved.

At oral argument, the Court was completely dismissive of the opportunity for class members to opt out of the settlement. Very few did, but we cannot presume that they failed to read and understand the plain language on the postcard notice, or that they did not thereafter follow up with a visit to the class settlement web site. In fact, this class was incredibly engaged and sought to learn their rights under the settlement. The claims administrator reported that 7,749 telephone calls were received and that an additional 3,412 emails were received from class members. Moreover, **there were 29,722 unique visitors to the settlement web site, which is a stunning 17% of the class.** This group of "categorically ineligible" class members that the Court is

concerned about received the notice and had an opportunity to learn about the settlement in detail. Thousands of class members did just that. If a class member believed that they were not protected by the settlement, they could have opted out and preserved their rights. At oral argument, the Court did not think the *de minimis* number of opt outs proved anything, but we beg to differ. The statistics prove that this class was engaged and acted diligently to learn about the settlement, and the Rule 23 requirement of a 23(b)(3) settlement and attendant opt out rights exist for a reason. That reason is to protect the rights of those who believe the settlement is inadequate as to them. If the Objector's position that 80% of the class members got *zero* relief from the settlement, then it is quite odd that the settlement was so overwhelmingly approved by the class.

This Court should likewise keep in mind that there are likely thousands of class members who will seek the future repair relief which this settlement provides. Those figures as derived by the Plaintiffs' expert were submitted to the District Court and are in the record. So, this settlement provides not only valuable benefits to those who did present their vehicle for repairs, or had the repairs done at their own cost who can now seek reimbursement. The benefits this settlement provides on an ongoing basis are valuable, and are uncapped. While these people are not "categorically ineligible", they are a group that this Court should pay attention to because these paint problems will continue to manifest in some vehicles and relief will be available under the settlement.

Moreover, if the class had been limited as the objectors suggest, it is likely that diligent class members would be excluded. Here, vehicles back to 15 years old were included not to EXCLUDE and create a group of "categorically ineligible" persons; no, they were INCLUDED because of the "presentment" clause to give more owners an opportunity to recover if they were diligent and actually experienced the defect. In other words, using objector's definition would likely exclude more owners than it would re-capture, and would certainly exclude some who were proactive in pursuing repairs. Adopting objector's position would cut the legs out from the class members who were actually diligent and put them back into a position where they now, namely without the ability to recover anything due to the applicable statute of limitations.

This Court must remember that the first public disclosures about the defect date back to a TSB issued by Mercedes in June of 2014 and this lawsuit was brought in August of 2018. The lawsuit was brought within four years of an event that Mercedes would like to argue put the class on notice, and cutting out class members from the class now would create a situation where—four years later—those former class members would likely be well outside any statute of limitations such that they would not be able to get recourse anyway. From a practical perspective, nobody is being subjected to a release that could otherwise bring a claim in Court today.

Pinon submits that the District Court did its job on this settlement and addressed all the Rule 23 requirements as well as the issues raised by the Objectors. We submit

to this Court that it should balance the *knowns (those who have submitted benefits for past repairs) and the number that can be reasonably anticipated (the number who will claim future repairs) against the unascertainable number of irresponsible class members who comprise this Court's definition,* as it embarks on its journey to determine if the District Court abused its discretion by approving this fair and adequate settlement.

## II.   RESPONSES TO THE COURT'S QUESTIONS.

Against the backdrop described above, Pinon answers the questions from the Court.

### A. Question 1.

Under the facts of this case, if these people fit the Court's definition, then they failed to act as responsible vehicle owners or lessees.  Their own conduct rendered them unable to claim any benefits from the settlement.  If these people did nothing to alert Mercedes or some authorized dealer of any paint issues, then there is no way to identify who they are, or how many there could be, or if there are any at all.  So, with respect to this settlement, the answer to the Court's first part of this question is "yes"[1] and the answer to the second part is "no."

---

[1] *See Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983) ("there is no rule that settlements benefit all class members equally." citing *Kincade v. General Tire & Rubber Co*., 635 F.2d 501, 506 n.5 (5th Cir.1981)).

That said, evidence was provided to the District Court indicating that the number of "categorically ineligible" class members was likely to be low.  In particular, the District Court was presented with the following:

1.      The defect tended to manifest itself primarily in years 3 or 4 after new, meaning that if a class member experienced a defect they most likely did so early on in the car's life so they would be entitled to repair/reimbursement.  *See* Figure A.



**FIGURE A**

Source: Appendix C (Page 1 of 3) to Supplemental Declaration of Lee M. Bowron in support of Plaintiffs' Supplement to Their Motion for

Award of Attorneys' Fees, Expenses, and Class Representative Service Awards (Dkt. No. 117-2)

2.      The "frequency" of defect for model year cars 2004-2011 was a small fraction of the "frequency" of defect for model years 2012-2016, meaning that cars with more than 15 years / 150,000 miles ("categorically ineligible") would be small in comparison to those entitled to repair/reimbursement.  *See* Figure B.



**FIGURE B**

Source: Appendix C (Page 2 of 3) to Supplemental Declaration of Lee M. Bowron in support of Plaintiffs' Supplement to Their Motion for

*Emily Pinon, et al. v. Robert Ponzio, et al.* - Docket No.: 21-14503

Award of Attorneys' Fees, Expenses, and Class Representative Service Awards (Dkt. No. 117-2)

3.     Finally, model year cars 2004-2010 had a lower "severity by model year," meaning that those cars with more than 15 years/150,000 miles ("categorically ineligible") had minor issues in comparison to those cars eligible for repair/reimbursement.  *See* Figure C.



**FIGURE C**

Source: Appendix C (Page 3 of 3) to Supplemental Declaration of Lee M. Bowron in support of Plaintiffs' Supplement to Their Motion for Award of Attorneys' Fees, Expenses, and Class Representative Service Awards (Dkt. No. 117-2)

The point is that the older model year cars were less prone to severe defects. The result of this is that the number of older model cars, which could be greater than 15 years / 150,000 miles (*i.e.,* "categorically ineligible") is minor in comparison to the number of vehicles that would be eligible under the Settlement Agreement.

### B. Question 2.

Pinon's counsel represent the class as described in this case. Within that class there may be, or there may not be, those who this Court believes are "categorically ineligible" for relief. There is no way to determine who these class members may be on the front end or, for that matter, at Preliminary Approval stage when notice to the class was approved. As stated above, counsel assume that class members acted as responsible vehicle owners with some modicum of common sense. Counsel believe it was reasonable for us to take that position in this case, even though there was no way for us to anticipate that every class member acted in a reasonable manner. Counsel likewise believe that the burden to prove that the settlement is fair and adequate is that of the Plaintiffs, and when Objectors raise issues with the settlement, that the burden shifts to them to prove their objections. *See United States v. City of Miami, Fla.*, 614 F.2d 1322, 1334 (5th Cir. 1980) ("the burden must be on the objectant to convince the court to disapprove the proposed settlement.").

### C. Question 3.

Pinon counsel have previously provided Pinon's position on this subject, and

*Emily Pinon, et al. v. Robert Ponzio, et al.* - Docket No.: 21-14503

thus answer the Court's questions succinctly:

     i.     Unknown and incapable of being determined

     ii.     Unknown and incapable of being determined

     iii.     Unknown and incapable of being determined

     iv.     Pinon counsel represented the Class as defined in the Settlement Agreement

### D. Question 4.

The answer to Question 4 is "no."  The settlement is fair and adequate to the class *as a whole* as required by Fed. R. Civ. P. 23(e)(2).  *See In re: Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1277 & n.21 (11th Cir. 2021).  There is no reason to remand the case to the District Court for this reason, because there is nothing the District Court can do to determine the number that this Court is seeking. Instead, this Court should uphold the District Court because there is a *class of eligible members who have sought and will seek in the benefits of this settlement in the future,* and an unknown number of "categorically ineligible" class members should not determine whether an otherwise fair and adequate settlement should be approved.

### CONCLUSION

For at least the reasons presented above and in Pinon's Opposition Brief, the district court's approval of the settlement and its approval of attorney fee and expense requests should be affirmed.  As approved by the District Court, the

settlement provides relief that goes back to the very first car that came off the manufacturing line with defective red paint, as long as its owner was diligent and brought it to Mercedes for repair.   Objector's position would penalize diligent owners in favor of an unascertainable number of owners that did nothing when the defect manifested itself (assuming it did, which we do not know).

Respectfully submitted,

/s/ *James F. McDonough, III*

James F. McDonough, III (GA 117088)
**ROZIER HARDT MCDONOUGH PLLC**
3621 Vinings Slope, Suite 4300
Atlanta, Georgia 30339
Telephone: (470) 480-9505
Email: jim@rhmtrial.com

W. Lewis Garrison, Jr.
Taylor C. Bartlett
**HENINGER GARRISON DAVIS, LLC**
2224 1st Avenue North
Birmingham, Alabama 35203
Telephone: (205) 326-3336
Email: lewis@hgdlawfirm.com
Email: taylor@hgdlawfirm.com

Attorneys for Plaintiffs/Appellees
EMILY PINON, *ET AL*

*Emily Pinon, et al. v. Robert Ponzio, et al.* - Docket No.: 21-14503

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that the instant brief complies with the type-volume limitation and typeface requirements set forth in Rule 32 of the Federal Rules of Appellate Procedure, as follows<u>:</u>

1.    This document complies with the type-volume limitation 32(a)(7)(B) because it contains <u>2905</u> words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO in Times New Roman 14-point font.

<u>*/s/ James F. McDonough, III*</u>
James F. McDonough, III (GA 117088)
**ROZIER HARDT MCDONOUGH PLLC**
3621 Vinings Slope, Suite 4300
Atlanta, Georgia 30339
Telephone: (470) 480-9505
Email: jim@rhmtrial.com

Attorneys for Plaintiffs/Appellees
EMILY PINON, *ET AL*

*Emily Pinon, et al. v. Robert Ponzio, et al.* - Docket No.: 21-14503

## CERTIFICATE OF SERVICE

I hereby certify that on this the 31st day of May, 2023 a complete copy of the foregoing was served on Counsel for all parties using the Electronic Case Filing ("ECF") system:

> */s/ James F. McDonough, III*
>
> James F. McDonough, III (GA 117088)
> **ROZIER HARDT MCDONOUGH PLLC**
> 3621 Vinings Slope, Suite 4300
> Atlanta, Georgia 30339
> Telephone: (470) 480-9505
> Email: jim@rhmtrial.com
>
> Attorneys for Plaintiffs/Appellees
> EMILY PINON, *ET AL*