No. 21-14503

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

ROBERT PONZIO, ALEX ACUNA, BRIAN MADSEN, VANESSA M.
MONTGOMERY, ROBERT MULL, HADIYA NELTHROPE, SAMUEL
SALGADO, FREDERICK J. PARKER,

Interested Parties/Appellants,

v.

EMILY PINON, GARY C. KLEIN, KIM BROWN, JOSHUA FRANKUM,
TODD BRYAN, DINEZ WEBSTER,

Plaintiffs/Appellee,

DAIMLER AG, MERCEDES-BENZ USA, LLC,

Defendants/Appellees.

---

On Appeal from the United States District Court for the
Northern District of Georgia, Case No. 1:18-cv-03984-MHC
Hon. Mark Howard Cohen, U.S. District Judge

---

## SUPPLEMENTAL BRIEF OF APPELLEES
## MERCEDES-BENZ USA, LLC AND DAIMLER AG

---

| | |
|---|---|
| Stephen B. Devereaux | Troy Masami Yoshino |
| Madison H. Kitchens | WINSTON & STRAWN LLP |
| J. Franklin Sacha, Jr. | 101 California Street |
| KING & SPALDING LLP | San Francisco, California 94111 |
| 1180 Peachtree Street N.E. | (415) 954-0200 |
| Suite 1600 | |
| Atlanta, Georgia  30309 | |
| (404) 572-4600 | |

*Counsel for Appellees Daimler AG and Mercedes-Benz USA, LLC*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1 and 28-1(b), counsel for Defendants-Appellees Mercedes-Benz USA, LLC and Daimler AG (now known as Mercedes-Benz Group AG) hereby certifies that the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case on appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. All those listed in the Certificate of Interested Persons and Corporate Disclosure Statement in the Brief of Appellees Mercedes-Benz USA, LLC and Daimler AG; and

2. Winston & Strawn LLP, Counsel for Defendants-Appellees.

Dated: May 31, 2023

Respectfully Submitted,

*/s/ Troy Masami Yoshino*
Troy Masami Yoshino

*Counsel for Appellees*
*Mercedes Benz USA, LLC and Daimler AG*

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ..................... i

Table of Contents ................................................................................................... ii

Table of Authorities ............................................................................................... iii

Introduction ............................................................................................................ 1

Argument ................................................................................................................ 3

I.   A class action settlement can be "fair, reasonable, and adequate" if it includes class members who are categorically ineligible to benefit from the settlement, and the limit on such members is necessarily case-specific. ........................................... 3

II.  Objectors bear the burden of substantiating their objections with evidence of the size of the categorically excluded group. .......................................................... 13

III.   The precise number of categorically ineligible class members, as defined by the Court, cannot be determined or reasonably estimated based on the information in the record.  Plaintiffs' counsel represented the entire settlement class, including the "categorically ineligible" class members, during settlement negotiations. ....... 19

IV.   The Court should not remand for further proceedings because the district court did not abuse its discretion.  In any event, remand to determine how many class members were ineligible would be futile. ..................................................... 21

Conclusion ............................................................................................................ 24

# TABLE OF AUTHORITIES

## Cases

*1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*,
  28 F.4th 513 (2022) ........................................................................ 16

*Amin v. Mercedes Benz, USA, LLC*,
  2020 WL 5510730 (N.D. Ga. Sept. 11, 2020) ............................ 4, 5, 12

*Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002) ...................................................... 14

*In re AT&T Fiber Optic Cable Installation Litig.*,
  2003 WL 22080739 (S.D. Ind. Aug. 21, 2003) ................................ 11

*Ault v. Walt Disney World Co.*,
  692 F.3d 1212 (11th Cir. 2012) .......................................................... 4

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981) .......................................................... 2

*Boyd v. Coventry Health Care, Inc.*,
  299 F.R.D. 451 (D. Md. 2014) .................................................. 8, 9, 23

*Careccio v. BMW of North America LLC*,
  2010 WL 1752347 (D.N.J. Apr. 29, 2010) ................................ 6, 7, 10

*Carr v. Ocwen Loan Serv., LLC*,
  2014 WL 12860083 (N.D. Ga. Apr. 25, 2014) ................................. 14

*In re CertainTeed Fiber Cement Siding Litig.*,
  303 F.R.D. 199 (E.D. Pa. 2014) ........................................................ 16

*Chess v. Volkswagen Grp. of Am., Inc.*,
  2022 WL 4133300 (N.D. Cal. Sept. 12, 2022) ................... 1, 4, 11, 12

*City of Miami. Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*,
  331 F.3d 834 (11th Cir. 2003) .......................................................... 16

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ............................................................ 21

*Corzine v. Whirlpool Corp.*,
  2019 WL 7372275 (N.D. Cal. Dec. 31, 2019)......................................................7

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ....................................................................18, 24

*DeHoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex. 2007) ........................................................................17

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ......................................................................11

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  999 F.3d 1247 (11th Cir. 2021) ..................................................................*passim*

*Faught v. Am. Home Shield Corp.*,
  668 F.3d 1233 (11th Cir. 2011) ....................................................................14, 15

*Freebird, Inc. v. Cimarex Energy Co.*,
  264 P.3d 500 (Kan. 2011) ....................................................................................17

*Gokare v. Fed. Express Corp.*,
  2013 WL 12094870 (W.D. Tenn. Nov. 22, 2013)...............................................17

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...............................................................................9

*Hugo v. Levan*,
  2011 WL 13173025 (S.D. Fla. July 12, 2011) ...................................................14

*In re Liberty Nat'l Ins. Cases*,
  2006 WL 8436814 (N.D. Ala. Mar. 31, 2006) ....................................................24

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)......................................................................................13, 14

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  2007 WL 4526593 (S.D.N.Y. Dec. 20, 2007) ......................................................8

*Morgan v. Fam. Dollar Stores, Inc.*,
  551 F.3d 1233 (11th Cir. 2008) ..........................................................................22

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y.*
   *Teachers' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) ..........8, 10, 12

*In re Netflix Priv. Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...................................................17

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006) ......................................................................17

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ............................................................................22

*Sadowska v. Volkswagen Group of America, Inc.*,
   2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ....................................5, 6, 9, 12

*Seifi v. Mercedes Benz USA, LLC*,
   2015 WL 12964340 (N.D. Cal. Aug. 18, 2015) ...........................................7, 12

*New Mexico ex rel. State Eng'r v. Aamodt*,
   582 F. Supp. 2d 1313 (D.N.M. 2007) ...............................................................17

*Stolicker v. Muller*,
   2007 WL 9230595 (W.D. Mich. Apr. 10, 2007) ...............................................17

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) .......................................................................8, 10

*In re Telectronics Pacing Sys., Inc.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) .............................................................15

*In re Terazosin Hydrochloride Antitrust Litig.*,
   2005 WL 2451960 (S.D. Fla. July 8, 2005) ......................................................14

*In re U.S. Bancorp Litig.*,
   291 F.3d 1035 (8th Cir. 2002) ...................................................................15, 16

*United States v. City of Miami, Fla.*,
   614 F.2d 1322 (5th Cir. 1980) ..................................................................*passim*

*Vaughn v. Am. Honda Motor Co.*,
   627 F. Supp. 2d 738 (E.D. Tex. 2007).................................................................9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  895 F.3d 597 (9th Cir. 2018) ...............................................................9

*Whitford v. First Nationwide Bank*,
  147 F.R.D. 135 (W.D. Ky. 1992) ......................................................17

*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) ............................................................16

**Rules**

Fed. R. Civ. P. 23 .......................................................................1, 3, 13, 14

**Other Authorities**

*Carfax Vehicle History Data Sources*, CARFAX, https://www.carfax.com/
company/vhr-data-sources#:~:text=CARFAX%C2%AE%20receives%20data%
20from,%2C%20auto%20auctions%2C%20and%20more)...................................23

## INTRODUCTION

The Court asked for supplemental briefing on four questions. Mercedes-Benz USA, LLC ("MBUSA") and Daimler AG (collectively, "Mercedes") answer those four questions as follows.

1. A class action settlement can be "fair, reasonable, and adequate" even if it includes class members who are "categorically ineligible" (as that term has been defined by the Court) to benefit from the settlement. Indeed, courts have found settlements to be "fair, adequate[,] and reasonable" given their benefits to the class as a whole even though the "vast majority of class members will not receive any payment." *Chess v. Volkswagen Grp. of Am., Inc.*, 2022 WL 4133300, at *5 (N.D. Cal. Sept. 12, 2022). There is no legal "limit" on the number or percentage of class members who can be ineligible to make a claim, nor should this Court be the first to impose such a "limit." Instead, Federal Rule of Civil Procedure 23 calls for a case-specific inquiry into the overall fairness of the settlement—a task squarely within the district court's discretion. In exercising that discretion, district courts should consider the nature of the claims and the benefits provided to the class as a whole. That is precisely what happened here, and the district court reasonably concluded that the settlement—which directly addresses the claimed defect—was fair, reasonable, and adequate.

2. To the extent it was necessary to know the number of "categorically ineligible" class members, Objectors would bear the burden of establishing that number. *United States v. City of Miami, Fla.*, 614 F.2d 1322, 1334 (5th Cir. 1980).[1] While the Parties bear a general burden of showing—as they did here—that the settlement is "fair, reasonable, and adequate," Objectors bear the burden of substantiating their objections to convince the court to disapprove the settlement. Since Objectors' arguments rely on the number of categorically ineligible class members, they bore the burden of putting forth evidence supporting their objection.

3. The materials in the record do not reveal, nor do the Parties have information that would show, the number of "categorically ineligible" class members. The record does not establish, and Mercedes is aware of no reasonably available source of information to ascertain: (1) the mileage of class vehicles at the time of settlement; (2) the number of repairs done at unaffiliated repair shops; (3) the number of unreported or unrepaired paint defects; or (4) the number of vehicles that experienced no defect to report or repair. All this information would be required to calculate the number of categorically ineligible class members. Plaintiffs' counsel

---

[1] *City of Miami* is binding precedent in this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) ("We hold that the decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.").

represented the entire settlement class, including the "categorically ineligible" class members, during settlement negotiations.

4. Because the district court did not abuse its discretion in finding that the settlement was fair, reasonable, and adequate, remand is unnecessary. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("[This Court] will not overturn [the district court's] decision 'absent a clear showing of abuse of that discretion.'"). No law required the district court to determine the number of "categorically ineligible" class members because the settlement—which provided significant relief directly tied to the claimed defect—was fair, reasonable, and adequate as a whole. In any event, remanding for further factual development would be futile because neither Appellants nor Appellees have information allowing for a determination of the number of "categorically ineligible" class members (or a reasonable, fact-based estimate of that number). Objectors have not raised legitimate concerns about the fairness, reasonableness, or adequacy of the settlement, which appropriately and efficiently matches the relief to the core harm alleged.

## ARGUMENT

I. **A class action settlement can be "fair, reasonable, and adequate" if it includes class members who are categorically ineligible to benefit from the settlement, and the limit on such members is necessarily case-specific.**

Courts assess whether a class settlement is fair, reasonable, and adequate by considering the settlement's benefits to the class *as a whole*. Fed. R. Civ. P. 23(e)(2);

*see also, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1277 & n.21 (11th Cir. 2021) (district court appropriately focused on whether settlement structure would "benefit the class as a whole"). A corollary is that class settlements do not have to benefit every class member equally. *See, e.g.*, *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1218 (11th Cir. 2012); *In re Equifax*, 999 F.3d at 1258. The court "is charged not with ensuring each class member receives the exact remedy they prefer, but that the settlement as a whole is fair, reasonable, and adequate." *Chess*, 2022 WL 4133300, at *7. Likewise, when "objectors are present, they might simply seek to be treated differently than the class as a whole, rather than advocat[e] for class-wide interests." *Judicial Role in Reviewing a Proposed Class Action Settlement*, MANUAL FOR COMPLEX LIT. § 21.61 (4th ed. May 2023).

Following these principles, courts across the country, including courts in the Eleventh Circuit, have approved settlements when members of the settlement class—in some cases a known number, and in some cases an *unknown* number—are ineligible for benefits. A district court within the Eleventh Circuit recently approved such a settlement, over objections, in *Amin v. Mercedes Benz, USA, LLC*, 2020 WL 5510730 (N.D. Ga. Sept. 11, 2020). In fact, Appellants/Objectors' counsel here represented one of the named plaintiffs in that settlement. *See* Opp'n Br. of Pls.–Appellees Emily Pinon *et al.* at 21–22. In *Amin*, the settlement provided—like the settlement here—for sliding-scale reimbursements for past and future repairs on

vehicles up to 10 years old or with up to 125,000 miles. *Id.* at *2; Class Action Settlement Agreement and Release, ¶¶ 4.2–4.5.4, *Amin*, No. 1:17-CV-01701 (N.D. Ga. Aug. 5, 2020), ECF No. 112-3 Ex. A ("*Amin* Settlement"). Vehicles beyond the 10-year/125,000-mile mark were "not eligible for reimbursement." *Amin* Settlement ¶¶ 4.3.4, 4.5.4. Thus, just as in this case, an unknown number of class members were "categorically ineligible" for benefits. *Amin* nonetheless correctly concluded that "the Settlement treats Class Members equitably by providing *the same durational period of coverage* for every Class Vehicle and *the same sliding scale of reimbursement or coverage percentage* based on the Vehicle's age/mileage." 2020 WL 5510730, at *2 (emphases added).

Courts in other jurisdictions have reached the same conclusion. For example, *Sadowska v. Volkswagen Group of America, Inc.*, 2013 WL 9600948, at *3 (C.D. Cal. Sept. 25, 2013), approved a settlement that reimbursed class members for past and future repairs up to 10 years or 100,000 miles. The court expressly rejected the argument that such time and mileage restrictions were unreasonable simply because some class members necessarily would not directly benefit:

> The majority of objectors are dissatisfied because their car is beyond the 10 year or 100,000 miles eligibility requirement. Three of the nine objectors are dissatisfied they will not benefit from the extended warranty provision of the Settlement Agreement. Four of the nine objectors are dissatisfied because they chose not to repair a previously diagnosed transmission problem within the 10 year or 100,000 mile period. Other courts have upheld similar class action settlement agreements which place age and mileage restrictions, finding that

5

> "generally, transmissions often experience issues after 100,000 miles."
> Similarly, the Court finds the eligibility requirements for the extended
> warranty to be reasonable.

*Id.* \*6 (internal citations omitted) (quoting *Henderson v. Volvo Cars of N. Am., LLC*,
2013 WL 1192479, at \*8 (D.N.J. Mar. 22, 2013)).  Because the settlement was fair
to the class as a whole, providing reimbursement to those class members who had
been or would be impacted by the alleged defect during a reasonable time period,
*Sadowska* approved the settlement.  2013 WL 9600948, at \*6 (noting that it is
reasonable to "exclude older, more traveled vehicles from coverage") (quoting *Alin
v. Honda Motor Co.*, 2012 WL 8751045, at \*15 (D.N.J. Apr. 13, 2012)) (rejecting
objection "from objectors ineligible for any relief" because the defendant "cannot
act as perpetual insurer").

Counsel for Appellants here (Carella Byrne Cecchi Olstein Brody & Agnello)
proposed a similar settlement in *Careccio v. BMW of North America LLC*, 2010 WL
1752347 (D.N.J. Apr. 29, 2010).  The settlement class in *Careccio* included "all
current and former owners and lessees" of certain BMW vehicles with run-flat tires.
*Id.* at \*1.  As in this case, the class settlement was based on an extended warranty
providing for a certain percentage of past reimbursement or future coverage
depending on mileage; in *Careccio*, up to 30,000 miles.  *Id.* at \*2–3.  The settlement
class thus included "categorically ineligible" class members, and the settlement
released their claims.  *Id.*  Various objectors argued that there were class members

6

who would not benefit because of the mileage "cut-off for replacement reimbursement." *Id.* at *6. The court rejected these objections and approved the settlement, noting that the sliding-scale extended warranty coverage was appropriate, based on "common-sense factors," and would "avoid a costly, speculative and bootless comparison of the merits of Class Members' claims." *Id.*

Similarly, *Seifi v. Mercedes Benz USA, LLC*, 2015 WL 12964340 (N.D. Cal. Aug. 18, 2015), approved an automotive defect settlement reimbursing members on a sliding scale up to a time and mileage cut-off. The court expressly considered the fact that some class members would be ineligible to receive direct benefits and still deemed the settlement fair, reasonable, and adequate. *Id.* at *2 ("Only class members whose vehicles did not experience the alleged defect within the time and mileage restrictions will be prevented from recovering under the Settlement, a result which the Court finds to be fair."). Again, the district court assessed the fairness of the settlement to the class as a whole. *Id.*; *see also, e.g.*, *Corzine v. Whirlpool Corp.*, 2019 WL 7372275, at *7 (N.D. Cal. Dec. 31, 2019) (approving class settlement, even though half of all objectors were "dissatisfied because their refrigerator repairs were outside the five-year eligibility requirement to receive settlement benefits," which "effectively" was "an extended warranty program" with lesser reimbursement as refrigerators aged).

7

Courts have reached similar results outside the automotive-defect context. In securities-fraud cases, for example, courts have approved settlements over objections to minimum-payment thresholds and proof-of-loss requirements that render some class members ineligible for compensation. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) (en banc); *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240–41 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. Teachers' Ret. Sys.*, 2017 WL 6398014, at *241 (6th Cir. Nov. 27, 2017); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2007 WL 4526593, at *12 (S.D.N.Y. Dec. 20, 2007) (objection that class members will receive nothing if they are entitled to less than $50 under formula in settlement did "not weigh against approval of the proposed Settlement as fair and reasonable"). These are not outliers—such limitations are "typical" and "standard" in similar class actions. *N.Y. State Teachers' Ret. Sys.*, 315 F.R.D. at 240–41.

As another example, in *Boyd v. Coventry Health Care, Inc.*, a class of employees alleged ERISA violations arising from their employer knowingly investing in its own overvalued stock. 299 F.R.D. 451, 456 (D. Md. 2014). The parties reached a settlement that released the claims of the whole class and offered no opt-out. *Id.* at 457. Class members whose proportionate share of the net settlement fund fell below $50 would receive nothing. *Id.* at 457, 461. The district court did not know "how many class members will get nothing because their *pro*

*rata* share falls below the $50 *de minimis* amount." *Id.* at 463. Even so, it concluded that "[w]hile the unknowns as to individual recoveries make it difficult to assess degree of success in one respect, the recovery for the class *in the aggregate* crosses the threshold of success." *Id.* (emphasis added).

Underlying these cases is an essential principle: "Settlement is the offspring of compromise." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), quoted in *Sadowska*, 2013 WL 9600948, at *5. In the class action context, that compromise sometimes means allocating a settlement's benefits in a way that favors those with the clearest evidence of harm tied to the plaintiffs' claims. That makes sense—any class of significant size is bound to include members who suffered greater or lesser or no actual harm. *Cf. In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 609 (9th Cir. 2018) ("Any settlement value based on averages will undercompensate some and overcompensate others."). Similarly, many class action complaints will include stronger claims and weaker claims. Diminution-in-value claims—such as those pressed by the Objectors here—often "face[] significant hurdles" of proof. *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 749 (E.D. Tex. 2007) (first citing *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627–29 (8th Cir. 1999); and then citing *Martin v. Ford Motor Co.*, 914 F. Supp. 1449, 1455 n.7 (S.D.Tex. 1996)). It is perfectly reasonable, and by no means necessarily unfair to the class as a whole, to limit or even omit compensation

for weak claims to "avoid[] the dilutive effect of distributing settlement proceeds to [class members] who suffered no" demonstrable harm.  *N.Y. State Teachers' Ret. Sys.*, 315 F.R.D. at 241.[2]

The rule Objectors push for would also work at cross-purposes with the Eleventh Circuit's "strong judicial policy" favoring class-action settlements.  *See, e.g.*, *In re Equifax*, 999 F.3d at 1273.  There are often significant and intractable disputes between the parties to class-action litigation about the percentage of the class that has a compensable injury.  Yet, if a settlement is to be reached, defendants must obtain releases from the entire class to avoid further litigation.  *See Sullivan*, 667 F.3d at 310 ("Finally, were we to mandate that a class include only those alleging 'colorable' claims, we would effectively rule out the ability of a defendant to achieve 'global peace' by obtaining releases from all those who might wish to assert claims, meritorious or not.").  The parties therefore must be able to negotiate a settlement that matches the relief to the demonstrable harm, even when the number of class members

---

[2] Objectors' counsel have themselves made this point in past cases.  In *Careccio*, "plaintiffs' counsel [Carella Byrne Cecchi Olstein Brody & Agnello] acknowledge[d] that they would have 'met substantial challenges in proving damages.'"  *Id.* at *5.  On this representation, the court was "satisfied that the risks associated with litigating liability and damages are replaced by tiered relief to the class members and a straightforward means of establishing eligibility for reimbursement/replacement."  *Id.*

who had (or did not have) the alleged issue is unknown, and even if that means some class members will be not eligible for any cash payment.

"The touchstone for final approval is the effect on the class as a whole, in light of the circumstances." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 500 (E.D. Mich. 2008). If the settlement provides relief that is fair to the class as a whole, whether an acceptable percentage of the class is eligible for direct benefits is a question best left to the district court's discretion. A one-size-fits-all rule would be imprudent given the myriad factual circumstances in which class action settlements arise. Sometimes, the acceptable percentage of ineligible class members may be quite high. *See In re AT&T Fiber Optic Cable Installation Litig.*, 2003 WL 22080739, at *5 (S.D. Ind. Aug. 21, 2003) (approving settlement in which 96% and 85% of the relevant sub-classes received nothing under the settlement). In other cases, it might be lower.

In automotive settlements, the number of ineligible class members may be higher than in other cases because it is fair and reasonable to, for example, compensate class members only if they experience premature part failure. In *Chess*, the district court found that "[t]he vast majority of class members will not receive any payment under th[e] settlement," which compensated only for transmission repairs "performed prior to the Notice Date and within nine years or ninety thousand miles" of the vehicle's in-service date. 2022 WL 4133300, at *2. The time and

mileage restrictions there—"common in automotive defect cases"—were reasonable because the defendant could "not be expected to warranty all transmission problems in perpetuity when many factors can impair a vehicle's transmission performance." *Id.* at *7.[3]   Likewise, restricting reimbursement to repairs "*performed*" rather than problems "*identified*" was "an industry standard meant to avoid subjective, and possibly unverifiable, claims about when an issue first arose."   *Id.* (emphases in original).[4]   Prioritizing reimbursements for repairs performed within the eligibility period "avoids the dilutive effect of distributing settlement proceeds to [class members] who suffered no" demonstrable harm.[5]   *N.Y. State Teachers' Ret. Sys.*, 315 F.R.D. at 241.

That said, even if the number of categorically ineligible class members in automotive settlements may *generally* be high, the acceptable limit will depend on

---

[3] *Accord, e.g.*, *Sadowska*, 2013 WL 9600948, at *3, *6 (describing 10-year/100,000 mile warranty as "generous"); *Amin*, 2020 WL 5510730, at *2 (approving 10 year/125,000 mile warranty); *Amin* Settlement ¶¶ 4.3.4, 4.5.4; *Seifi*, 2015 WL 12964340, at *2 ("Age and mileage limitations are common in automotive defect cases, and reflect manufacturers' strong arguments that vehicles ordinarily fail after a number of years or miles due to wear and tear." (quoting *Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at *12 (C.D. Cal. Apr. 29, 2014))).

[4] *Accord, e.g.*, *Sadowska*, 2013 WL 9600948, at *3 (including similar "diagnosed and documented" requirement).

[5] Here, the settlement provided additional protections for class members who did not perform repairs during the extended warranty period.  Specifically, those repairs would still be covered so long as the class member sought to have the vehicle repaired during that period, even if they did not move forward with the repair.  App. 917–18 (¶¶ 4.4(d)).

case-specific factors such as the particular claims alleged (e.g., whether, as here, the claims are about premature part failure), the automotive part affected, the type of vehicle, the frequency of manifestation, etc. Ultimately, the district court is in the best position to weigh the facts, assess the relief provided by the settlement, and determine whether the settlement is fair, reasonable, and adequate to the class as a whole. The district court correctly did so here. The Court should affirm.

## II. Objectors bear the burden of substantiating their objections with evidence of the size of the categorically excluded group.

Under binding Circuit precedent, "the burden must be on the objectant to convince the court to disapprove the proposed settlement, and the trial court's reasoned approval of the settlement will be entitled to much deference." *City of Miami*, 614 F.2d at 1334; *see, e.g.*, *In re Equifax*, 999 F.3d at 1276 (rejecting objector's argument that damages potentially available under different states' statutes created a conflict within the settlement class because the objector "fail[ed] to show that the two statutory damages claims were valuable"). Applying the *City of Miami* standard here, Objectors bore the burden of substantiating their objection that the settlement was unfair, unreasonable, and inadequate because too many class members were "categorically ineligible" to receive direct benefits under the settlement. The district court properly exercised its discretion in rejecting that objection.

At oral argument, Judge Newsom asked whether the allocation of burdens for a Rule 23(e) class-action-settlement approval mirrors the *McDonnell Douglas*

burden-shifting framework for Title VII claims, under which a Title VII complainant must first make out a prima facie case of discrimination and the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Oral Argument at 49:00–24 (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). While no court has expressly drawn that analogy, it is an apt one, fitting both this Circuit's and other circuits' Rule 23(e) precedent. In this Circuit, the controlling rule was set forth in *City of Miami* and has been applied by many district courts since that time: "where the settlement previously has been preliminarily approved, the settlement is presumptively reasonable and an objector must overcome a heavy burden to demonstrate unreasonableness." 614 F.2d at 1333; *Carr v. Ocwen Loan Serv., LLC*, 2014 WL 12860083, at *4 (N.D. Ga. Apr. 25, 2014) (same); *Hugo v. Levan*, 2011 WL 13173025, at *5 (S.D. Fla. July 12, 2011) (same); *In re Terazosin Hydrochloride Antitrust Litig.*, 2005 WL 2451960, at *5 (S.D. Fla. July 8, 2005) (same); *Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002) (same).

Thus, it is only in the first step that the parties asking the district court to approve a class action settlement bear a general burden of showing that it is "fair, reasonable, and adequate" to the class. Fed. R. Civ. P. 23(e)(2); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) ("The '[p]roponents of class action settlements bear the burden of developing a record demonstrating that the

14

settlement distribution is fair, reasonable and adequate.'" (quoting *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983))).

Assuming the parties meet this burden, objectors may come forward raising specific objections to the settlement. At that point, however, the burden is on objectors—they must "convince the court to disapprove the proposed settlement" by supporting their objections with evidence. *City of Miami*, 614 F.2d at 1334. As part of its broad discretion to manage class action proceedings, the district court may require specific evidence from objectors in this regard. *See In re Equifax*, 999 F.3d at 1265–66 (affirming district court's imposition of requirement that objectors, among other things, state the legal and factual bases of their objections and make themselves available for deposition). Given the strong judicial policy in favor of settlement (*see id.* at 1273), the objectors bear "a heavy burden of proving the unreasonableness of the settlement." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1008–09 (S.D. Ohio 2001). Here, since Objectors asserted that the settlement was unfair because 80% of the class received "nothing," they bore the burden of substantiating that objection with evidence.

This basic burden-shifting scheme is consistent with class-action practice throughout the country. Courts have followed *City of Miami* and its progeny and placed the burden on objectors to prove the merits of their objections. For example, in *In re U.S. Bancorp Litigation*, the Eighth Circuit held that the objectors "have not

15

shown the record establishes that the agreement was unfair." *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1037–38 (8th Cir. 2002). In particular, the objectors failed to convince the court to reject the settlement on the ground that "most class members would receive no compensation, the proposed fee award was excessive and unconscionable, its plan for distributing compensation was complicated and expensive, and the maximum amount of compensation was too low." *Id.* at 1037.

Likewise, the Sixth Circuit in *Williams v. Vukovich*, held that "[a]n individual who objects, consequently, has a heavy burden of demonstrating that the decree is unreasonable. 720 F.2d 909, 921 (6th Cir. 1983) (citing *City of Miami*, 614 F.2d at 1333). Scores of other courts have held the same.[6] *See, e.g.*, *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("'Objectors bear the burden of proving any assertions they raise challenging the reasonableness of [the]

---

[6] After briefing closed, Plaintiffs submitted as supplemental authority the Fourth Circuit case *1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513 (2022). The Fourth Circuit there parted from this Circuit, the Third, Sixth, and Eighth Circuits, and countless district courts by reducing the objectors' burden to the equivalent of "notice pleading." *Id.* at 521. *1988 Trust*, of course, cannot overturn this Circuit's binding precedent in *City of Miami*. *Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 840 n.1 (11th Cir. 2003) ("[T]he binding effect of our prior precedents in this circuit is impervious to the decisions of other circuits."). In any event, in *1988 Trust*, the court affirmed approval of the class settlement over an objection that at least the objector would "give up something for nothing." 28 F.4th at 526–28. Thus, *1988 Trust* itself instructs that the appellate court should defer to the district court's discretion to approve a settlement under which not every class member can receive benefits.

16

class action settlement.'" (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995))); *In re Netflix Priv. Litig.*, 2013 WL 1120801, at *11 (N.D. Cal. Mar. 18, 2013) ("The Objectors bear the burden of proving any assertions they raise challenging the reasonableness of a class action settlement."); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 293 (W.D. Tex. 2007) ("General objections without factual or legal substantiation do not carry weight." (citing 4 NEWBERG ON CLASS ACTIONS § 11:58 (4th ed. 2002))); *New Mexico ex rel. State Eng'r v. Aamodt*, 582 F. Supp. 2d 1313, 1317 (D.N.M. 2007) ("The burden will be on the objectors to prove that the settlement is not fair, adequate or reasonable."); *Stolicker v. Muller*, 2007 WL 9230595, at *1 (W.D. Mich. Apr. 10, 2007) ("[A]n individual who objects has a heavy burden of proving the settlement is unreasonable." (quoting *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001))); *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006) ("Preliminary approval gives rise to a presumption that the settlement is fair, reasonable and adequate. Objectors, therefore, have the burden of persuading this Court that the proposed settlement is unreasonable." (quoting *Fussell v. Wilkinson*, 2005 WL 3132321, at *3 (S.D. Ohio Nov. 22, 2005))); *Gokare v. Fed. Express Corp.*, 2013 WL 12094870, at *7 (W.D. Tenn. Nov. 22, 2013) (same rule as *City of Miami*); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 138–39 (W.D. Ky. 1992) (same); *cf. Freebird, Inc. v. Cimarex*

*Energy Co.*, 264 P.3d 500, 506 (Kan. 2011) ("Objectors are not entitled to stop the settlement in its tracks without demonstrating any factual basis for their objection. To allow such disruption to the settlement on the basis of nothing more than unsupported suppositions would completely thwart the settlement process.").

The parties may then have to rebut an objection if it impinges upon the fairness, reasonableness, and adequacy of the settlement as a whole. This does not mean, however, that the proponents must "justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained." *Cotton v. Hinton*, 559 F.2d 1326, 1339 (5th Cir. 1977) (quoting *Milstein v. Werner*, 57 F.R.D. 515, 5240–25 (S.D.N.Y. 1872)). "[I]nherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Id.*

Here, the district court correctly required the Parties to establish that the settlement was fair, reasonable, and adequate. And it also correctly rejected Objectors' unsupported and "speculative" objection to the settlement. *See Cotton*, 559 F.2d at 1339. Because the district court did not abuse its discretion, the Court should affirm.

**III.    The precise number of categorically ineligible class members, as defined by the Court, cannot be determined or reasonably estimated based on the information in the record.  Plaintiffs' counsel represented the entire settlement class, including the "categorically ineligible" class members, during settlement negotiations.**

The Court's definitions of categories (a) and (b) of "categorically ineligible" class members both rely on the number of class members who did not have a paint issue, did not report a paint issue, or did not seek to address their paint issue within the relevant time and mileage periods.  There may be some class members who had a paint issue they neither reported nor fixed, but the vast majority of those who would fall into these categories would be those who simply never experienced any paint issue.  Putting aside questions about the strength of claims belonging to those who never experienced the alleged defect, this definition, based on the *absence* of a paint issue, repair, or notice makes it impossible to reliably estimate how many class members fall into either category.  No one keeps data on alleged defects that did *not* manifest, repairs that did *not* occur, or issues that were *not* reported.  Thus, absent individualized inquiry into every class member's circumstances, it is impossible to calculate or reliably estimate the number of "categorically ineligible" class members.

Specifically, Mercedes lacks (and further information reasonably available to Appellants or Appellees would not shed light on) at least four key pieces of information necessary to either determine or reasonably estimate the number of class members falling into the Court's categories (a) or (b):

19

1. The mileage of each class vehicle at the time of settlement;

2. Which vehicles had repairs outside of warranty or conducted at repair shops not affiliated with Mercedes;

3. Which vehicles experienced paint issues that went unrepaired or unreported; and

4. Which vehicles had no defect to repair or report.

Objectors may argue that they can estimate the number of "categorically ineligible" class members based on limited data points—e.g., VIN numbers of class vehicles[7] or repairs covered by warranty—but these data cannot reliably fill in the any of the gaps in information set forth in the list above.

The last group—the number of vehicles that experienced no paint failure—is particularly critical. As noted above, the vast majority of the "categorically ineligible" class members (as defined by the Court) would likely be those who experienced no paint issue. Indeed, Mercedes has vigorously maintained throughout this litigation that there was no defect in the Mars Red paint. And though Plaintiffs and Objectors disagree on the "defect" point, that core point of disagreement shows

---

[7] To be sure, Plaintiffs' expert used MBUSA's VIN data in part to estimate the expected mileage on vehicles across the class based on typical driving habits, but those were ultimately estimates. App. 1221–22, 1903–04. And even if those estimates were assumed to be reasonably reliable, they would not answer how many such vehicles may nonetheless either have had prior repairs or reported paint issues prior to reaching the 150,000-mile mark.

why this settlement constitutes a fundamentally fair compromise and an efficient method of distributing benefits to the alleged class—it allows class members who suffered the alleged defect to make claims directly tied to the alleged defect.

The Court also asked as part of Question 3 who represented the categorically ineligible class members during settlement negotiations. Plaintiffs' counsel did— the categorically ineligible class members were part of the class. That was perfectly appropriate. Individual class members do not have a general right to participate in class settlement negotiations, and the district court further protects their interests as a fiduciary. *Cf. In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 225 (5th Cir. 1981) (noting that the district court's fiduciary duty protects "the many absent class members who were not involved in the negotiations leading to settlement").

## IV. The Court should not remand for further proceedings because the district court did not abuse its discretion. In any event, remand to determine how many class members were ineligible would be futile.

The Court need not remand because the district court did not abuse its discretion. The "strong judicial policy favoring settlement" means that this Court will not reverse a district court's approval of a settlement "absent a clear showing of abuse of that discretion." *In re Equifax*, 999 F.3d at 1273 (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). And a district court abuses its discretion only if "it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Morgan v.*

*Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). None of those errors occurred here.

As explained in response to the Court's first question, district courts regularly and permissibly approve of settlements that categorically exclude some class members from receiving benefits under the settlement. *See supra* Part I. In automotive settlements, the time and mileage restrictions and verification requirements occur frequently and necessarily result in some amount of categorical ineligibility. *Id.* The Objectors here have not made a "clear showing of abuse of . . . discretion" by merely asserting that some portion of the class would not receive benefits because of the age or mileage of their vehicles or because they no longer own or lease their vehicles. *In re Equifax*, 999 F.3d at 1273. Nor did the Objectors substantiate the factual basis of their objection with evidence, despite their burden to do so. *See supra* Part II. The Objectors did not "convince the [district] court to disapprove the proposed settlement," and they have not overcome the deference owed to the district court's reasoned decision. *City of Miami*, 614 F.2d at 1334; *accord In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) ("Our review of the district court's decision to approve a class action settlement is extremely limited. It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998))).

22

In any event, remand for further factual finding on the number of "categorically ineligible" class members would be futile. As explained in response to the Court's third question, the Parties and Objectors have no access to evidence that would show how many owners did not repair their vehicle or report a defect within the time and mileage restrictions of the settlement, or while they owned or leased the vehicle. *See supra* Part III. This Court need not let "the unknowns as to individual recoveries" thwart a settlement beneficial to the class as a whole. *Boyd*, 299 F.R.D. at 456.

Nor is there other available data that could be collected on remand that would address these issues. For example, private groups such as Carfax have some mileage and other information, but that data—which Carfax itself states may not be reliable (*see Carfax Vehicle History Data Sources*, CARFAX, https://www.carfax.com/company/vhr-data-sources#:~:text=CARFAX%C2%AE%20receives%20data%20from,%2C%20auto%20auctions%2C%20and%20more)—does not sufficiently address the information gaps listed above.

Most importantly, no known third party collects data on the number of paint repairs that went unreported, the number of paint defects that went unrepaired, or the number of paint defects that never occurred. Those potential unreported, unrepaired, or nonexistent defects form the core group underlying the Court's

definitions of categorically ineligible class members. This hole in the potential data set renders further efforts to obtain more data futile.

"The trial court should not make a proponent of a Proposed Settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1339, quoted in *In re Liberty Nat'l Ins. Cases*, 2006 WL 8436814, at \*9 (N.D. Ala. Mar. 31, 2006). Remand would do nothing other than further cost "the bench and bar time, money, and headaches" that this settlement, which fundamentally and fairly addresses the alleged premature paint defect, should have saved. *In re Equifax*, 999 F.3d at 1273. The Court should affirm.

## CONCLUSION

The district court ably discharged its fiduciary duty to scrutinize the class settlement to ensure its fairness, reasonableness, and adequacy. The caselaw and the record support approval of the settlement. There is no need to remand because there is nothing left to do. The Court should affirm.

Dated: May 31, 2023                    Respectfully Submitted,

*/s/ Troy Masami Yoshino*
Troy Masami Yoshino
WINSTON & STRAWN LLP
101 California Street
San Francisco, California 94111
(415) 954-0200

Stephen B. Devereaux
Madison H. Kitchens
J. Franklin Sacha, Jr.
KING & SPALDING LLP
1180 Peachtree Street N.E.
Suite 1600
Atlanta, Georgia 30309
(404) 572-4600

*Counsel for Appellees*
*Mercedes Benz USA, LLC and Daimler AG*